United States Bankruptcy Court

Northern District of Georgia

Atlanta Division

Calcon Mutual Mortgage, LLC

v

LA Property Investments LLC

Case No. 20-66891-BEM

Table of Contents

1. Movant's Exhibit A: Promissory Note ............................................................................... 1
2. Movant's Exhibit B: Security Deed ................................................................................... 4
3. Movant's Exhibit C: Quitclaim Deed ............................................................................... 19
4. Movant's Exhibit D: Notice of Default, February 12th Notice of Acceleration, and April 2nd Notice of Sale.................................................................................................................... 20
5. Movant's Exhibit E: First Complaint ............................................................................... 27
6. Movant's Exhibit F: Temporary Restraining Order and order Dissolving ..................................... 92
7. Movant's Exhibit G: April 23rd Notice of Acceleration and June 4th Notice of Sale........................ 96
8. Movant's Exhibit H: July 29th Notice of Acceleration and September 4th Notice of Sale............ 100
9. Movant's Exhibit I: Second Complaint ........................................................................... 104
10. Movant's Exhibit J: Third Complaint ............................................................................. 132
11. Movant's Exhibit K: Order Denying Injunctive Relief......................................................... 160
12. Movant's Exhibit L: May 1st Acceleration and June 2nd Notice of Sale ...................................... 161
13. Movant's Exhibit M: Certified Copy of Secretary of State Records for LA Property Investments, LLC ............................................................................................................................ 165
14. Movant's Exhibit N: Fourth Complaint .......................................................................... 172

# Exhibit A

Certified to be a true copy of the original.

**CalCon Mutual Mortgage LLC**

By

LOAN #:

MIN:

# NOTE

**March 24, 2017**
**[Date]**

**San Diego,**
**[City]**

**California**
**[State]**

250 Montrose Drive, McDonough, GA 30253
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$424,100.00**     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CalCon Mutual Mortgage LLC, A Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.750 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**     day of each month beginning on **May 1, 2017.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 1, 2047,**     I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3131 Camino Del Rio North, Suite 1680**
**San Diego, CA 92108**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$2,212.31.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

Initials: _____

MULTISTATE FIXED RATE NOTE-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3200 1/01
Ellie Mae, Inc.                                                          Page 1 of 3                                              F3200NOT  0107
                                                                                                                                 F3200NOT (CLS)
                                                                                                                         03/22/2017 01:52 PM PST

Exhibit A

000001

LOAN #:

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _____

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3200 1/01
Ellie Mae, Inc.                                                         Page 2 of 3                                               F3200NOT   0107
                                                                                                                                 F3200NOT (CLS)
                                                                                                                       03/22/2017 01:52 PM PST

Exhibit A

000002

LOAN #:

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ **(Seal)**
**LEMARCUS ALLISON**

**Lender: CalCon Mutual Mortgage LLC**
**NMLS ID:**
**Loan Originator: Mathew Allen Dlugolenski**
**NMLS ID:**

**[Sign Original Only]**

Initials: _____

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3200 1/01**
Ellie Mae, Inc.                                    Page 3 of 3                              F3200NOT  0107
                                                                                            F3200NOT (CLS)
                                                                                            03/22/2017 01:52 PM PST

000003

Exhibit A

# Exhibit B

BK: 15151 PG: 282-295
Filed and Recorded Mar-27-2017 03:01:07PM
DOC#: D2017-007891
Georgia Intangible Tax Paid $1,273.50

BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

BROCHSTEIN & SANTLEY, P.C.
827 FAIRWAYS COURT
SUITE 100
STOCKBRIDGE, GA 30281

When recorded, return to:
CalCon Mutual Mortgage LLC
Attn: Post-Closing
3131 Camino Del Rio North, Suite 1680
San Diego, CA 92108
888-488-3807

RECEIVED IN OFFICE
2017 MAR 27 AM 10:09
CLERK OF SUPERIOR COURT
HENRY COUNTY

Title Order No.:
Escrow No.:
LOAN #:

————————————— [Space Above This Line For Recording Data] —————————————

## SECURITY DEED

MIN

MERS PHONE #: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  **March 24, 2017,**                together with all Riders to this document.
(B) "Borrower" is   **LEMARCUS ALLISON, AN UNMARRIED MAN.**

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   **CalCon Mutual Mortgage LLC.**

Lender is   **A Limited Liability Company,**                organized and existing under the laws of **Delaware.**                          Lender's address is  **3131 Camino Del Rio North,**
**Suite 1680, San Diego, CA 92108**

(E) "Note" means the promissory note signed by Borrower and dated  **March 24, 2017.**        The Note states that Borrower owes Lender  **FOUR HUNDRED TWENTY FOUR THOUSAND ONE HUNDRED AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *  Dollars (U.S.  **$424,100.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **April 1, 2047.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

GEORGIA - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3011 1/01
Ellie Mae, Inc.                                    Page 1 of 9

Initials:
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

000004

BK: 15151 PG: 283 LOAN #:

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider              ☒ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the  County                    [Type of Recording Jurisdiction] of   Henry
[Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #:

which currently has the address of  250 Montrose Drive, McDonough,
                                                                                          [Street] [City]

Georgia   30253        ("Property Address"):
             [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                Page 2 of 9

Initials: _____
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

BK: 15151 PG: 284 LOAN #: ▇▇▇▇▇

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items,

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                        Page 3 of 9

Initials: ▇▇
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

BK: 15151 PG: 285 LOAN #: ████████

unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                         Page 4 of 9

Initials: _L A_
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

BK: 15151 PG: 286 LOAN #: ▆

settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.

Page 5 of 9

Initials: _____

GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

000008

BK: 15151 PG: 287 LOAN #: ▮▮▮▮

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Initials: ___L A___
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

000009

BK: 15151 PG: 288 LOAN #: ▮

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.

Initials: ▮▮
GAEDEED 0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

000010

BK: 15151 PG: 289 LOAN #

Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                    Page 8 of 9

Initials: LA

GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit B

BK: 15151 PG: 290 LOAN #: ▮▮▮▮

proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_Lemus alli_            3-24-17 (Seal)
**LEMARCUS ALLISON**           DATE

**Unofficial Witness**

Notary Public, ___Georgia___
_Henry___ County

Lender: CalCon Mutual Mortgage LLC
NMLS ID ▮
Loan Originator: Mathew Allen Dlugolenski
NMLS ID: ▮

*(Notary seal: ALBERT G BANTLEY, MY COMMISSION EXPIRES MAY 11 2017, HENRY CO. GEORGIA, NOTARY PUBLIC)*

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.        Page 9 of 9

Initials: _LA_
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

**Exhibit B**

000012

BB File No.: ███

BK: 15151 PG: 291

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District,  Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

Exhibit B

000013

BK: 15151 PG: 292

LOAN #: ▮▮▮▮▮
MIN: ▮▮▮▮▮

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24th        day of
**March, 2017**           and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note
to  **CalCon Mutual Mortgage LLC, A Limited Liability Company**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at: **250 Montrose Drive, McDonough, GA 30253.**

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described
in  **COVENANTS, CONDITIONS AND RESTRICTIONS**

(the "Declaration").
The Property is a part of a planned unit development known as   **Eagles Landing**

(the "PUD"). The Property also includes Borrower's interest in the homeowners association
or equivalent entity owning or managing the common areas and facilities of the PUD
(the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration;
(ii) articles of incorporation, trust instrument or any equivalent document which creates
the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.
**B. Property Insurance.** So long as the Owners Association maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property
which is satisfactory to Lender and which provides insurance coverage in the amounts
(including deductible levels), for the periods, and against loss by fire, hazards included
within the term "extended coverage," and any other hazards, including, but not limited
to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium
installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied
to the extent that the required coverage is provided by the Owners Association policy.
What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property
insurance coverage provided by the master or blanket policy.
In the event of a distribution of property insurance proceeds in lieu of restoration or
repair following a loss to the Property, or to common areas and facilities of the PUD, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender
shall apply the proceeds to the sums secured by the Security Instrument, whether or
not then due, with the excess, if any, paid to Borrower.
**C. Public Liability Insurance.** Borrower shall take such actions as may be
reasonable to ensure that the Owners Association maintains a public liability insurance
policy acceptable in form, amount, and extent of coverage to Lender.

Initials: ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                                Page 1 of 2                                    F3150RDU  0115
                                                                                             F3150RLU (CLS)
                                                                              03/22/2017 01:52 PM PST

Exhibit B

000014

BK: 15151 PG: 293

LOAN #: ▮▮▮▮▮

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____   3-24-17   (Seal)
LEMARCUS ALLISON                                   DATE

Initials: _____

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                    Page 2 of 2                    F3150RDU  0115
                                                                  F3150RLU (CLS)
                                                                  03/22/2017 01:52 PM PST

Exhibit B

BK: 15151 PG: 294

GEORGIA -

Grantor: **Lemarcus Allison**

Date: **March 24, 2017**

Loan Number: ▇▇▇▇▇▇▇

Property Address: **250 Montrose Drive
McDonough, GA 30253**

Lender: **CalCon Mutual Mortgage LLC**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

*Lens Alli*                                                    3-24-17

**LEMARCUS ALLISON**                                              **DATE**

**Unofficial Witness**

**Notary Public,** _____ Georgia _____
Henry ____ County

ALBERT G BANTLEY
MY COMMISSION EXPIRES
MAY
11
2017
HENRY CO., GEORGIA
NOTARY PUBLIC

Ellie Mae, Inc.                          Page 1 of 2                     GABORWAV 1011
                                                                         GABORWAV (CLS)
                                                                         03/22/2017 01:52 PM PST

Exhibit B

000016

BK: 15151 PG: 295  **LOAN #:** ▓▓▓▓▓▓▓

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me _Lois Rance-Cooper_                                   on the date set forth above.

_____                                   _____
Notary Public                                                                          Closing Attorney

Exhibit B

000017

**BK:15980 PG:203-203**
Filed and Recorded
Jul-30-2018 09:23 AM
DOC# 2018 - 019953
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT
HENRY COUNTY, GA
Participant ID: 3560893135

RETURN DOCUMENT TO:
RAS Crane LLC
10700 Abbott's Bridge Rd.
Suite 170
Duluth, GA 30097
Phone: (844) 442-2033
Firm File No: 18-174021 - AnM

MIN#: ▆▆▆▆▆▆▆
MERS PH#: (888) 679-6377

### TRANSFER AND ASSIGNMENT

FOR VALUE RECEIVED, the undersigned does hereby assign, transfer, set over, and convey unto **CALCON MUTUAL MORTGAGE LLC** ("Assignee"), whose address is 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92108, its successors or assigns, of that certain Security Deed by LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC., its successors and assigns, whose address is P.O. BOX 2026 FLINT, MI 48501-2026 dated March 24, 2017 in the original principal amount of $424,100.00 and recorded in **Deed Book 15151, Page 282, Henry County,** Georgia records, together with the real property therein described, and having this day been transferred and assigned to the said Assignee together with all of the undersigned's right, title, and interest in and to the said deed, the property therein described and thereby secured.

Witness the hand and seal of the undersigned this _26_ day of _July_ , 2018 .

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR CALCON MUTUAL
MORTGAGE LLC., its successors and assigns

By: _____

Print Name: _SHANE A. ERSKINE_

Title: _PRESIDENT_

Signed, sealed, and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission Expires: _11/30/2021_

{NOTARY SEAL}

ARLENE BALTAZAR
COMM. # 2223673
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
COMM. EXPIRES NOV. 30, 2021

Exhibit B

000018

# Exhibit C

**Exhibit C**

Return Recorded Document to:
Lemarcus Allison
3034 Dogwood Dr.
Atlanta, GA 30354

Cross reference to deeds:
Book 15151, Pages 282-295

STATE OF GEORGIA

COUNTY OF HENRY

```
BK: 17211 PG: 242
Filed and Recorded
Jun-03-2020 04:08:09PM
DOC#: D2020-015915
Real Estate Transfer Tax $0.00
0752020004067
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.
```

**QUITCLAIM DEED**

THIS INDENTURE, made this 25th day of May, 2020;

BETWEEN Lemarcus Allison, a single person, "Grantor", and LA Property Investments, LLC, "Grantee".

WITNESSETH, , that said Grantor, for and in consideration of the sum of Ten Dollars ($10.00), in hand paid by said Grantee, the receipt of whereof is hereby acknowledged, has remised, released and quitclaimed, and by these presents does remise, release and quitclaim unto said Grantee and Grantee's heirs and assigns forever, all the right, title, interest, claim and demand which said Grantor has in and to the following described lot, piece or parcel of land, situate lying and being in the County of Henry, State of Georgia, to wit:

All that tract or parcel of land lying and being in Land Lot 47 of the 6ᵗʰ District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

TO HAVE AND TO HOLD the same, together with all and singular the appurtenances thereto belonging or in any wise appertaining, and all the estate, right, title, interest and claim whatsoever of said Grantor, either in law or equity, to the only proper use, benefit and behoove of said Grantee.

IN WITNESS WHEREOF, said Grantor has hereunto set their hand and seal the day and year first above written.

_____
Lemarcus Allison

Signed, Sealed and delivered in the presence of:

_____
Witness

_____
Witness

As sworn before me on this ___ day of JUNE, 2020.

_____
Notary Public

Tammie Small
(SEAL) NOTARY PUBLIC
Clayton County, GEORGIA
My Comm. Expires 09/05/2021

# Exhibit D

# RUBINLUBLIN LLC

3145 Avalon Ridge Place ✦ Suite 100 ✦ Peachtree Corners ✦ GA ✦ 30071

Phone: 770.246.3300 ✦ Fax: 404.601.5846

VICTOR KANG
PARTNER
LICENSED IN GA AND TN

DIRECT LINE: (770) 246-3305
DIRECT FAX: (404) 921-9016
EMAIL: vkang@RUBINLUBLIN.COM

December 18, 2018

***Via First Class Mail***
***Copy by Certified Mail*** *(9214 8901 4632 3500 3506 90)*
Andrew M. Stevens
Stevens, Stevens & Oliver
4167 Roswell Road
Suite A, Floor 1
Atlanta, GA 30342

## NOTICE OF DEFAULT

| | |
|---|---|
| **File No.:** | ███ |
| **Loan:** | **Note from LEMARCUS ALLISON to CALCON MUTUAL MORTGAGE, LLC (the "Note" or "Loan"), and Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CALCON MUTUAL MORTGAGE, LLC, its successors and assigns, recorded in Book 15151, Page 282, Henry County, Georgia records (the "Security Deed")** |
| **Name:** | **LEMARCUS ALLISON** |
| **Property Address:** | **250 MONTROSE DRIVE, MCDONOUGH, GA 30253 (the "Property")** |

Dear Andrew,

As you know, the undersigned and Rubin Lublin, LLC represent **CalCon Mutual Mortgage, LLC** ("CalCon") with respect to the Note and Security Deed referenced above. I am writing in response to your communications with my firm from earlier this month, as well as to provide your client, LeMarcus Allison ("Mr. Allison"), with the contractually required Notice of Default.

As part of the loan application process, Mr. Allison signed a Uniform Residential Loan Application (the "Application") and provided a bank statement dated January 25, 2017, from Bank of America, N.A., for an accounting ending in 5681. That statement reflected an ending balance of $77,703.65 (the "Statement"). It has been determined that the Statement was materially altered. A post-closing audit verified that the actual ending balance on January 25, 2017, was $28,939.84.

Page **1** of **2**

Exhibit D

000020

Pursuant to Paragraph 8 of the Security Deed, "Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan." By providing the Statement as part of the Application process, Mr. Allison is deemed to have given materially false, misleading, or inaccurate information or statements to CalCon.

**Accordingly, the Security Deed is hereby declared to be in default.** Pursuant to Section 22 of the Security Deed, we are required to advise Mr. Allison of the action required to cure the default. This default can be cured by providing CalCon with independently verifiable information that shows that the Statement was not altered.

Mr. Allison has until the thirtieth (30th) day following the date of this letter to cure the default. If you fail to do so, all sums secured by the Security Deed may be accelerated and the Property sold pursuant to Section 22 of the Security Deed.

Also pursuant to Section 22 of the Security Deed, we are required to inform Mr. Allison that he has the right to reinstate after acceleration. Mr. Allison has the right to bring a court action to assert the non-existence of default or any other defense he has to acceleration and sale.

If you would like to discuss this matter further, please do not hesitate to contact me directly at (770) 246-3305 or via email at vkang@rubinlublin.com. I have also enclosed a copy of the payment history.

**Please provide a copy of this letter to Mr. Allison immediately.**

Sincerely,

Victor Kang

<u>PLEASE BE ADVISED THAT THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE</u>

Exhibit D

000021

# RUBIN LUBLIN, LLC

### Attorneys and Counselors at Law
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (404) 601-5846

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Copy Via Regular Mail**

February 12, 2019

LEMARCUS ALLISON
250 MONTROSE DR
MCDONOUGH, GA 30253

*Notice of Acceleration and Foreclosure*

**File No.:**       ███████████

**Loan:**            **Note, and Security Deed from LEMARCUS ALLISON to
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS
NOMINEE FOR CALCON MUTUAL MORTGAGE LLC
("Original Lender")**

**Property Address:**    **250 MONTROSE DR, MCDONOUGH, GA 30253**

Please be advised that this law firm represents CalCon Mutual Mortgage LLC
("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan.
By separate communication you may have been advised of your rights under the Fair Debt
Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in
this letter shall prevent you from exercising those rights as set forth in that communication. This
letter is to advise you that we are hereby instituting non-judicial foreclosure proceedings against
the referenced property. Enclosed you will find a copy of the Notice of Sale Under Power that
was submitted for publication in the legal newspaper in the county where the property is located.
The foreclosure sale is scheduled for **April 2, 2019** ("Sale Date").

The entire amount of the debt secured by said Note and Security Deed has now been
declared due and payable because of, among other possible defaults, failure to pay the
indebtedness as and when due and in the manner specified in the Note and Security Deed. *The
total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued
interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges.
To find out the amount needed to either bring the Loan current or to pay off the Loan in full,
please call 1-866-397-5370.*
**(Continued on back/next page)**

Exhibit D

Please be advised that the Foreclosing Entity intends to enforce the provisions of said Note and Security Deed relative to payment of attorneys' fees. Unless the full amount owed on this Loan is paid within ten (10) days from the date of receipt of this letter, reasonable attorneys' fees, as defined by the Official Code of Georgia Annotated Section ("O.C.G.A.") § 13-1-11, will also be owed. Please be further advised that from this point forward, strict compliance with the current terms of the Loan will be required pursuant to O.C.G.A. § 13-4-4.

In some circumstances the Loan, State Law, and/or the Foreclosing Entity may allow the default on the Loan to be cured and stopping the foreclosure prior to the sale date. You may contact this office to find out if reinstatement of the Loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default. Please be advised that if the default is allowed to be cured on the Loan, payment must be made in the form of cash, cashier's check or certified funds or wired to be received sufficiently in advance of the Sale Date to allow for cancellation of the sale and pursuant to the terms of the Loan.

If you are currently or have within the last twelve (12) months been in the military service AND joined after the date of the Loan, please notify this office immediately. You may be entitled to relief under the Servicemembers Civil Relief Act. You may also call 1-800-342-9647 for further assistance or visit www.militaryonesource.com/SCRA. When contacting this office as to your military service, you must provide us with positive proof as to your military status. If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

We do not believe that you are represented by counsel. If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them. If we do not hear from you we will assume that you are not represented by counsel in relation to the foreclosure.

This notice is not intended to collect the debt against you personally or indicate that you are personally liable for this debt. This notice relates solely to an enforcement of rights with respect to the above-referenced property.

This letter is notice to the extent the FDCPA applies. Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the Foreclosing Entity.

<u>Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.</u>

Exhibit D

Classifieds   Autos   Jobs   Homes   Legals   Subscriber Services   Contests   SCNI Events                    Sign Up   Log in

**HENRY herald**

Home    News    Sports    Features    Opinion    Obituaries    Announcements    Help         Best Local Auto Deals GREATERherald   ☀ 47°    Search...

# ALLISON

□ save      ➡ Share

### Details for ALLISON

17 hrs ago

NOTICE OF SALE UNDER POWER GEORGIA, HENRY COUNTY By virtue of a Power of Sale contained in that certain Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC, dated March 24, 2017, recorded March 27, 2017, in Deed Book 15151, Page 282-295, Henry County, Georgia Records, said Security Deed having been given to secure a Note of even date in the original principal amount of Four Hundred Twenty-Four Thousand One Hundred and 00/100 dollars ($424,100.00), with interest thereon as provided for therein, said Security Deed having been last sold, assigned and transferred to CalCon Mutual Mortgage LLC, there will be sold at public outcry to the highest bidder for cash at the Henry County Courthouse, within the legal hours of sale on the first Tuesday in April, 2019, all property described in said Security Deed including but not limited to the following described property: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 47 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 6, BLOCK F, EAGLES LANDING, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK 18, PAGE 173, HENRY COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY THIS REFERENCE. Said legal description being controlling, however the property is more commonly known as 250 MONTROSE DR, MCDONOUGH, GA 30253. The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed and Note. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys' fees (notice to collect same having been given) and all other payments provided for under the terms of the Security Deed and Note. Said property will be sold on an "as-is" basis without any representation, warranty or recourse against the above-named or the undersigned. The sale will also be subject to the following items which may affect the title: any outstanding ad valorem taxes (including taxes which are a lien, whether or not now due and payable); the right of redemption of any taxing authority; matters which would be disclosed by an accurate survey or by an inspection of the property; all zoning ordinances; assessments; liens; encumbrances; restrictions; covenants; and any other matters of record superior to said Security Deed. To the best of the knowledge and belief of the undersigned, the owner and party in possession of the property is LEMARCUS ALLISON, or tenant(s). The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed. Please note that, pursuant to O.C.G.A. § 44-14-162.2, you are not entitled by law to an amendment or modification of the terms of your loan. The entity having full authority to negotiate, amend or modify all terms of the loan (although not required by law to do so) is: CalCon Mutual Mortgage LLC, Loss Mitigation Dept., 1 Corporate Drive, Ste 360, Lake Zurich, IL 60047, Telephone Number 1-866-397-5370. CALCON MUTUAL MORTGAGE LLC as Attorney in Fact for LEMARGUS ALLISON THE BELOW LAW FIRM MAY BE HELD TO BE ACTING AS A DEBT COLLECTOR UNDER FEDERAL LAW. IF SO, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Attorney Contact: Rubin Lublin, LLC, 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071 Telephone Number: (877) 813-0992 Case No.         d Run Dates 03/06/2019, 03/13/2019, 03/20/2019, 03/27/2019 rubinlublin.com/property-listing 950-587300, 3/6,13,20,27

Categories    Foreclosure

0 Comments                                                          Sort by Oldest ▾

Add a comment...

f  Facebook Comments Plugin

## Latest News

- STATE CHAMPIONSHIP: ELCA falls to Saint Francis, takes runner up in Class A-Private
- Alex Trebek announces he has stage 4 pancreatic cancer
- K-9's honored at 11th annual We Ride to Provide Memorial
- Chick-fil-A is selling fish sandwiches for Lent
- Coach K, Zion Williamson doubtful for UNC showdown

## Most Popular

Articles

- Fantasy 5 jackpot ticket worth $175K sold in McDonough
- Hampton seeking vendors for Yellow Pollen Festival
- Annuity scam allegedly targeted Clayton seniors, more victims possible; drugs in Henry
- Judge Pandora Palmer is first woman on Henry State Court bench
- Hampton High's first cheerleader signs athletic scholarship
- Henry County baseball power rankings
- At least 23 dead after tornadoes touch down in Alabama and Georgia
- Henry opposes bill restricting governments from placing conditions on dwellings
- Locust Grove is confident in the foundation that's been laid
- Several teacher, support staff job fairs scheduled



Sell it.

 

Squarespace Website Builder

Everything you need to build your own business. Create your online store today

## Featured Businesses

F & F Floor Covering & Carpet
45 Griffin St, McDonough, GA 30253
☎ 770-957-2155
◎ Website

Southern Regional Medical Center
11 Upper Riverdale Rd SW, Riverdale, GA 30274
☎ 770-991-8000
◎ Website

Find a local business

I'm looking for...                    🔍





FIRST. FREE HOT BREAKFAST





# Tracking History

Tracking #: 9214890146323500000383056

Recipient: LEMARCUS ALLISON
250 MONTROSE DR
MCDONOUGH

| Date & Time | Event Type | Event | Event Location |
|---|---|---|---|
| 02/13/2019 11:06 | | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | PEACHTREE CORNERS,GA, 30092 |
| 02/14/2019 21:12 | | ORIGIN ACCEPTANCE | PEACHTREE CORNERS,GA, 30092 |
| 02/14/2019 22:27 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 02/15/2019 06:27 | | PROCESSED THROUGH USPS FACILITY | ATLANTA,GA, 30304 |
| 02/16/2019 14:18 | | DELIVERED LEFT WITH INDIVIDUAL | MCDONOUGH,GA, 30253 |

Close

000026

Exhibit D

# Exhibit E

E-FILED IN OFFICE - SC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**19-A-02887-4**
**3/26/2019 3:57 PM**

CLERK OF SUPERIOR COURT

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| LEMARCUS ALLISON, )<br><br>    Plaintiff, )<br><br>    v. )<br><br>CALCON MUTUAL MORTGAGE LLC, and )<br>PENNYMAC LOAN SERVICES, LLC, )<br><br>    Defendants. )<br> ) | Civil Action No.<br><br>~~19-A-02887-4~~ |

### VERIFIED COMPLAINT FOR WRONGFUL ATTEMPTED FORECLOSURE, BREACH OF CONTRACT, DECLARATORY RELIEF, MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY AND PERMANENT INJUNCTION, <u>PUNITIVE DAMAGES AND ATTORNEYS FEES</u>

COMES NOW Lemarcus Allison ("Mr. Allison"), Plaintiff in the above-styled civil action and files this, his Verified Complaint, against Defendants CalCon Mutual Mortgage LLC ("CalCon") and PennyMac Loan Services, LLC ("PennyMac") shows the Court as follows:

### <u>Parties, Jurisdiction, and Venue</u>

1.

Mr. Allison is an individual residing at 250 Montrose Drive, McDonough, Henry County, Georgia 30253 (the "Property").

2.

CalCon Mutual Mortgage, LLC ("CalCon") is a California Limited Liability Company registered to do business in Georgia. CalCon's registered agent is Paracorp Incorporated located at 453 Hardy Ives Lane, Lawrenceville, Georgia 30045 where it can be served with process and is subject to the jurisdiction and venue of this Court.

Complaint Page 1 of 18

Georgia, Gwinnett County
This is to certify this is a true and correct copy
of _____ as the same appears of record
in Gwinnett County Superior/State Court.
Given under my official signature and seal of
the Court this _____ day of _____.

Deputy Clerk Superior/State Court, Gwinnett County, Georgia

Exhibit E

000027

3.

PennyMac Loan Services, LLC ("PennyMac") is a Delaware Limited Liability Company registered to do business in Georgia. PennyMac's registered agent is C T Corporation System located at 289 S Culver Street, Lawrenceville, Georgia 30046 where it can be served with process and is subject to the jurisdiction and venue of this Court.

## FACTS

4.

On or about March 24, 2017 (the "Closing Date"), Mr. Allison took possession of the Property in fee simple under a Limited Warranty Deed recorded at Deed Book 15151, page 281 of the Henry County, Georgia Real Property Records. See Exhibit "A."

5.

On or about the Closing Date, Plaintiff executed a Security Deed (the "Security Deed") attaching the Property as collateral for a residential mortgage loan in the amount of Four Hundred Twenty-Four Thousand, One Hundred dollars ($424,100) (the "Loan") in favor of CalCon recorded at Deed Book 15151, Pages 282-95 in Henry County, Georgia Real Property Records. See Exhibit "B".

6.

The Security Deed requires all notices be provided in writing. Id. at § 15.

7.

The Security Deed requires the holder of the Security Deed to provide notice to the Plaintiff if any ownership interest of the Note is sold or transferred or the loan servicer is changed. Id. at § 20.

Complaint Page 2 of 18

Exhibit E

8.

The Security Deed requires both the Plaintiff and the holder of the Security Deed to provide the other party with notice of any alleged breach and "a reasonable period after giving of such notice to take corrective action." Id.

9.

Prior to the Closing Date, Mr. Allison worked with several individuals and organizations to facilitate the real estate transaction. Specifically, Mr. Allison consulted with Chelsea Davis and a broker affiliated with CalCon.

10.

While consulting with Chelsea Davis and the broker affiliated with CalCon, Mr. Allison provided both with his personal financial information, including his real estate, businesses, W-2, credit accounts, pay stubs, and bank statements.

11.

After the Closing Date, Plaintiff made all required payments.

12.

Plaintiff did not receive any written notice of any change of loan servicer or transfer of any ownership interest in the Property, Security Deed, or Note.

13.

More than a year after the Closing Date, Mr. Allison received a letter from RAS Crane, LLC, dated May 21, 2018 (the "First Default Letter"). See Exhibit C. The First Default Letter stated it was providing notice to Mr. Allison by CalCon on behalf of Fannie Mae that Mr. Allison was allegedly in default "under the Note and Security Deed." Id. The Plaintiff had no prior dealing or communication with RAS Crane, LLC.

Complaint Page 3 of 18

Exhibit E

14.

The First Default Letter further stated, "As of the date of this notice, the total amount due

and payable and required to payoff the loan and cure the default is $430,327.63." In another

contradictory paragraph, the First Default Letter also stated, "Total you must pay to payoff the

debt/cure the default: $340,468.86." See Exhibit C.

15.

The First Default Letter also stated that payment of that amount was due by May 28,

2018 and required that any payment be sent to PennyMac Loan Services, LLC ("PennyMac").

16.

The Plaintiff had no prior dealing or communication with or regarding PennyMac.

17.

RAS Crane LLC never claimed that Mr. Allison failed to make installment payments.

18.

On or about July 11, 2018, RAS Crane LLC, "on behalf of CalCon as Attorney-in-Fact of

Lemarcus Allison," published a Notice of Sale Under Power of the Property stating that

PennyMac had full authority to negotiate, amend, and modify the terms of the Security Deed and

Note (the "First Sale Publication"). According to the First Sale Publication, the Property would

be sold at auction on August 7, 2018.

19.

On July 30, 2018, Plaintiff, through counsel, sent a letter to RAS Crane LLC ("Plaintiff's

Response Letter"), attached hereto and incorporated by reference as "Exhibit D," disputing: (1)

that a default occurred; (2) the calculation of the payoff; (3) that PennyMac was the lienholder;

(4) proper notice of Plaintiff's right to cure the alleged default; and (5) proper notice of a

Exhibit E

foreclosure.

<div align="center">20.</div>

In a letter dated July 31, 2018 ("RAS Crane LLC's Response") attached hereto and
incorporated by reference as "Exhibit E," RAS Crane LLC rejected Plaintiff's disputes but
advised that the sale scheduled for August 7, 2018 was cancelled. Attached to RAS Crane LLC's
Response were three documents:

(1) Transfer and Assignment conveying "unto [CalCon] . . . that certain Security Deed
for [Petitioner] to Mortgage Electronic Registration Systems, Inc. As Nominee for
CalCon Mutual Mortgage LLC";

(2) Note between CalCon Mutual Mortgage LLC and Brittany Farley, a party unrelated
to the Petitioner, for real property at 275 Honey Lane, Fayetteville, Georgia 30214,
property which is unrelated to the Property; and

(3) Security Deed between CalCon and Petitioner for a loan with a principal balance of
$424,100.

<div align="center">21.</div>

In a letter dated December 18, 2018 (the "Second Default Letter"), Plaintiff was
instructed that CalCon, through their counsel Rubin Lublin LLC, was still the holder of the Note
and that Plaintiff was in default of the Note. The Second Default Letter made no reference to
RAS Crane, LLC or PennyMac. Rublin Lublin LLC stated that the default could be cured by
providing proof that the Plaintiff's accounts held the required balance.

<div align="center">22.</div>

Plaintiff responded to the Second Default Letter by e-mail dated January 8, 2019,
attached hereto and incorporated by reference as "Exhibit F." This e-mail included attachments

<div align="center">Complaint Page 5 of 18</div>

<div align="center">Exhibit E</div>

showing Plaintiff's account balance to cure the alleged default.

23.

In a letter dated February 12, 2019 (the "Third Default Letter"), attached hereto and

incorporated by reference as "Exhibit G," CalCon, through their counsel Rubin Lublin LLC,

claimed to be the "successor in interest" of the Security Deed. See Ex. G. CalCon claimed

Plaintiff was in Default of the Security Deed due to "failure to pay the indebtedness as and when

due and in the manner specified in the Note and Security Deed." The Third Default Letter made

no reference to RAS Crane, LLC or PennyMac.

24.

The Third Default Letter stated that the amount due may include "unpaid principal

balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal

fees/costs, and other charges." See Ex. G. The Third Default Letter does not state the terms for

cure and instead instructs Plaintiff to call an indicated number to find out *if* Plaintiff can cure the

default, and if so, how.

25.

Although Plaintiff has continued to make his mortgage payments, CalCon began

returning those mortgage payments beginning with the payment due in December 2018.

26.

On March 6, 2019, CalCon again advertised a non-judicial foreclosure sale of the

Property scheduled for April 2, 2019 (the "Second Sale Publication").

## COUNT I – FIRST ATTEMPTED WRONGFUL FORECLOSURE

27.

Plaintiff refers to and incorporates by reference Paragraphs 1 through 29 as if set forth in

Exhibit E

full herein.

28.

Plaintiff shows that the Defendants owed a legal duty to him, that there was a breach of that duty by the Defendants, and that there is a casual connection between the breach of that duty and the injury and damages the sustained by Plaintiff.

29.

Plaintiff shows that there exists a statutory duty upon a mortgagee and the Defendants to exercise fairly and in good faith the power of sale in a deed to secure debt.

30.

Plaintiff shows that Defendants failed to exercise fairly and in good faith the power of sale in a deed to secure debt and breached their duty to exercise fairly and in good faith the power of sale in the Security Deed by publishing a foreclosure sale of the Property beginning July 11, 2018.

31.

Defendants advertised the Property for sale beginning July 11, 2018 without having the right to do so as the Note and Security Deed are not in default.

32.

By advertising the Property for sale beginning July 11, 2018 without proper prior notice, Defendants failed to give Plaintiff the proper notice of the initiation of proceedings under the power of sale in the Security Deed as required by O.C.G.A. § 44-14-162.2.

33.

Defendants have also failed to exercise the power of sale fairly and in good faith by falsely declaring Plaintiff in default and attempting to non-judicially foreclose upon Plaintiff to

Exhibit E

000033

receive his equity in the Property.

34.

Defendants have wrongfully foreclosed upon the Property by attempting to foreclose upon the Property starting July 11, 2018, even though the indebtedness was not justly due.

35.

Defendants wrongfully foreclosed on the Property starting July 11, 2018 by attempting to add fees and late charges not rightly owed by Plaintiff to Defendants.

36.

Plaintiff was harmed in that he was forced to spend money to obtain an attorney to challenge the first attempted non-judicial foreclosure sale, and suffered the expense of attorney fees, an injury suffered as a result of this attempted wrongful foreclosure.

37.

In the present case, Plaintiff was not in default to the Defendants, even though the Defendants knowingly published untrue and derogatory statements concerning the Plaintiff's financial condition and that damages were sustained as a direct result of this publication, namely Plaintiff's credit has been negatively affected making it much more difficult to obtain credit and carry on his business.

38.

Plaintiff has suffered mental anguish as a result of having to challenge this wrongful foreclosure due to Defendants' attempts to deprive her of her personal residence and the equity therein.

39.

Plaintiff has been damaged in an amount to be determined by a jury.

Complaint Page 8 of 18

Exhibit E

000034

40.

Defendants CalCon and PennyMac are jointly and severally liable for Plaintiff's damages arising from Count I.

## COUNT II – SECOND ATTEMPTED WRONGFUL FORECLOSURE

41.

Plaintiff refers to and incorporates by reference Paragraphs 1 through 43 as if set forth in full herein.

42.

Plaintiff shows that the Defendants owed a legal duty to him, that there was a breach of that duty by the Defendants, and that there is a casual connection between the breach of that duty and the injury and damages the sustained by Plaintiff.

43.

Plaintiff shows that there exists a statutory duty upon a mortgagee and the Defendants to exercise fairly and in good faith the power of sale in a deed to secure debt.

44.

Plaintiff shows that Defendants failed to exercise fairly and in good faith the power of sale in a deed to secure debt and breached their duty to exercise fairly and in good faith the power of sale in the Security Deed by the publishing on March 6, 2019 a foreclosure sale of the Property scheduled for April 2, 2019.

45.

Defendants advertised the Property for sale beginning March 6, 2018 without having the right to do so as the Note and Security Deed are not in default.

Complaint Page 9 of 18

Exhibit E

46.

By advertising the Property for sale on March 6, 2019 without proper prior notice,

Defendants failed to give Plaintiff the proper notice of the initiation of proceedings under the

power of sale in the Security Deed as required by O.C.G.A. § 44-14-162.2.

47.

Defendants have also failed to exercise the power of sale fairly and in good faith by

falsely declaring Plaintiff in default and attempting to non-judicially foreclose upon Plaintiff to

receive his equity in the Property.

48.

Defendants have wrongfully foreclosed upon the Property by attempting to foreclose

upon the Property starting March 6, 2019. even though the indebtedness was not justly due.

49.

Defendants wrongfully foreclosed on the Property starting March 6, 2019 by attempting

to add fees and late charges not rightly owed by Plaintiff to Defendants.

50.

Plaintiff was harmed in that he was forced to spend money to obtain an attorney to

challenge the first attempted non-judicial foreclosure sale, and suffered the expense of attorney

fees, an injury suffered as a result of this attempted wrongful foreclosure.

51.

In the present case, Plaintiff was not in default to the Defendants, even though the

Defendants knowingly published untrue and derogatory statements concerning the Plaintiff's

financial condition and that damages were sustained as a direct result of this publication, namely

Plaintiff's credit has been negatively affected making it much more difficult to obtain credit and

Exhibit E

000036

carry on his business.

### 52.

Plaintiff has suffered mental anguish as a result of having to challenge this wrongful foreclosure due to Defendants' attempts to deprive her of her personal residence and the equity therein.

### 53.

Plaintiff has been damaged in an amount to be determined by a jury.

### 54.

Defendant CalCon is liable for Plaintiff's damages arising from Count II.

### <u>COUNT III – BREACH OF CONTRACT</u>

### 55.

Plaintiff refers to and incorporates by reference Paragraphs 1 through 57 as if set forth in full herein.

### 56.

The Security Deed recorded in the real property books of Henry County by the Clerk of Superior Court referenced in Deed Book 15151, Pages 282-95 serves as an agreement and contract between Plaintiff and Defendant(s) CalCon as "Lender."

### 57.

Section 15 and 20 of the Security Deed outlines the terms of notice required to accelerate the Loan.

### 58.

The Georgia Court of Appeals has found that acceleration and foreclosure without giving this notice is wrongful and a breach of contract. See <u>BAC Home Loans Servicing, L.P. v.</u>

<div align="center">Complaint Page 11 of 18</div>

<div align="center">Exhibit E</div>

000037

<u>Wedereit</u>, Ga. App. Case No. A14A0131 (July 8, 2014),

### 59.

Prior to the foreclosure sale advertised beginning July 11, 2018, Defendants did not provide notice of acceleration in the manner prescribed by sections 15 and 20 of the Security Deed.

### 60.

By not providing the required notice of acceleration to Plaintiff, Defendants have breached the Security Deed, and as such, are liable for their breach of contract.

### 61.

Defendants breached the Security Deed and acted in bad faith by attempting to accelerate the Loan knowing Plaintiff would not, in all likelihood, be capable of paying the full balance within 7 days, and thereby setting unreasonable terms to cure that would force a non-judicial foreclosure depriving Plaintiff of her Property and equity therein.

### 62.

Plaintiff was harmed in that he was forced to spend money to obtain an attorney to challenge the non-judicial foreclosure sale based in part upon an accelerated balance, and suffered the expense of attorney fees, an injury suffered as a result of this wrongful foreclosure.

### 63.

Defendants CalCon and PennyMac are jointly and severally liable for Plaintiff's damages arising under Count III.

Exhibit E

## COUNT IV – VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

64.

Plaintiff refers to and incorporates by reference Paragraphs 1 through 63 as if set forth in full herein.

65.

Plaintiff disputed any breach by letter to RAS Crane, LLC dated July 30, 2018.

66.

In response to Plaintiff's dispute of the claimed breach, RAS Crane, LLC attempted to validate the debt but sent a copy of a promissory note for an unrelated person associated with a likewise unrelated property.

67.

As such, RAS Crane, LLC and CalCon failed to validate the debt pursuant to the Fair Debt Collection Practices Act. 15 U.S.C. § 1692g.

68.

CalCon, through RAS Crane, LLC then subsequently Rubin Lublin, LLC, continued to attempt to collect the debt despite their failure to validate the debt.

69.

By violating the Fair Debt Collection Practices Act, CalCon has caused Plaintiff damages. Specifically, Plaintiff has suffered mental and emotional anguish over losing his home and incurred legal fees to defend against CalCon's actions.

70.

CalCon is liable to Plaintiff for damages arising out of Count IV.

Complaint Page 13 of 18

Exhibit E

000039

## COUNT V – TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY AND PERMANENT INJUNCTION TO PREVENT THREATENED FORECLOSURE

### 71.

Plaintiff reasserts the allegations contained in Paragraphs 1 through 70 as though each was fully set forth herein.

### 72.

Defendants do not have authority to foreclose on and/or sell Plaintiff's Property.

### 73.

As alleged in detail above, Defendants have falsely declared Plaintiff in default.

### 74.

CalCon does not have the authority to non-judicially foreclose on Plaintiff's Property.

### 75.

As Plaintiff is not in default of the Security Deed, any threatened non-judicial foreclosure sale of the Property will be wrongful, illegal, and Plaintiff wrongfully will be threatened with deprivation of his interest in the Property.

### 76.

Plaintiff is without an adequate remedy at law.

### 77.

Any attempt to foreclose on the Property should be enjoined until the final judgment is entered in the above-titled action.

## COUNT VI - DECLARATORY RELIEF

### 78.

Plaintiff reasserts the allegations contained in Paragraphs 1 through 77 as

Complaint Page 14 of 18

Exhibit E

000040

though each was fully set forth herein.

### 79.

Plaintiff seeks declaratory relief pursuant to O.C.G.A. §§ 9-4-2 and 9-11-118 on the grounds that Plaintiff is not in default of the Security Deed and therefore Defendants have no legal right to accelerate or foreclose on the Property.

### 80.

O.C.G.A. § 9-4-2(a) provides that the superior courts shall have the power, upon appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether further relief is or could be prayed, and that the declaration shall have the force and effect of a final judgment.

### 81.

O.C.G.A. § 9-4-2(c) provides that relief by declaratory judgment shall be available notwithstanding the fact that the complaining party has any other adequate legal or equitable remedies.

### 82.

Therefore, Plaintiff requests relief by declaratory judgment that Plaintiff is not in default and Defendants do not possess the requisite legal rights to non-judicially foreclose on the Property.

## COUNT VII – PUNITIVE DAMAGES

### 83.

Plaintiff refers to and incorporates by reference Paragraphs 1 through 82 as if set forth in full herein.

Exhibit E

84.

The conduct of Defendant CalCon, PennyMac, or both in making willful and fraudulent misrepresentations and concealments shows a willful misconduct, malice, fraud, wantonness, and oppression with a specific intent to cause harm to Plaintiff. Plaintiff therefore prays for exemplary and punitive damages in an amount to be determined by the jury, to deter the Defendant CalCon, PennyMac, or both from such wrongful and fraudulent conduct in the future.

## COUNT VIII – ATTORNEY FEES AND EXPENSES OF LITIGATION

85.

Plaintiff reasserts the allegations contained in Paragraphs 1 through 84 as though each was fully set forth herein.

86.

Defendant has acted in bad faith, been stubbornly litigious, and caused plaintiff unnecessary trouble and expense which entitles Plaintiff to an award of his attorney fees and expenses of litigation.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants jointly and severally as follows:

1. That this matter be tried before a Jury; and

2. That pursuant to Count I, Plaintiff be awarded damages in an amount the jury determines to be just and proper, jointly and severally against Defendants CalCon and PennyMac; and

3. That pursuant to Count II, Plaintiff be awarded damages in an amount the jury determines to be just and proper against Defendant CalCon; and

Complaint Page 16 of 18

Exhibit E

000042

4.  That pursuant to Count III, Plaintiff be awarded damages in an amount the jury determines to be just and proper, jointly and severally against Defendants CalCon and PennyMac; and

5.  That pursuant to Count IV, Plaintiff be awarded attorneys fees and damages in an amount the jury determines to be just and proper against Defendant CalCon; and

6.  That pursuant to Count V, this Court enter a Temporary and/or Permanent Restraining Order preventing Defendants from foreclosing or threatening to foreclose on the Property; and

7.  That pursuant to Count VI, this Court enter a declaratory judgment that Plaintiff is not in default and that Defendants do not have the legal authority to foreclose on the Property; and

8.  That pursuant to Count VII, Plaintiff be awarded punitive damages in an amount the jury determines to be just and proper, jointly and severally against all Defendants; and

9.  That pursuant to Count VIII, Plaintiff be awarded attorneys fees and costs of litigation, jointly and severally against all Defendants.

Respectfully submitted this _26th_ day of _March_, 20_18_.

STEVENS, STEVENS & OLIVER, LLC

Andrew Stevens
Georgia Bar No. 680632

4167 Roswell Road
Suite A Floor 1
Atlanta, GA 30342
(770) 393-8900
astevens@lawstevens.com
*Attorneys for Plaintiff*

**Complaint Page 17 of 18**

Exhibit E

IN THE SUPERIOR COURT OF ~~HENRY~~ *GWINNETT* COUNTY
STATE OF GEORGIA

LEMARCUS ALLISON,                          )
                                           )
    Plaintiff,                              )
                                           )        Civil Action No.
    v.                                      )        19-A-02887-4
                                           )
CALCON MUTUAL MORTGAGE LLC, and            )
PENNYMAC LOAN SERVICES, LLC,               )
                                           )
    Defendants.                             )
                                           )

## VERIFICATION

    I, Lemarcus Allison, having been duly sworn, under penalty of perjury, depose and say

that I am over the age of eighteen (18) and mentally competent to testify. I have read the

foregoing pleading, the facts stated therein are true and correct, except for statements made on

information and belief, which statements I believe to be true to the best of my knowledge. This

claim is not interposed for any improper purpose. I further depose while sworn and under

penalty of perjury, that all Exhibits are true, correct, unaltered copies.

This the 15Th day of March , 20 19 .

*Lemarcus Allison*
LEMARCUS ALLISON

Sworn to and subscribed
before me this 15th day of March , 20 19 .

_____
Notary Public
My commission expires:

Complaint Page 18 of 18

Exhibit E

3/20/2019

GSCCCA.org - Image Index

EXHIBIT
A

BK: 15151 PG: 281
Filed and Recorded Mar-27-2017 03:01:07PM
DOC#: D2017-007890
Real Estate Transfer Tax Paid $670.00
07S201 7002160
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

Return Recorded Document to:
Brochstein & Bantley, P.C.
327 Fairways Court, Suite 100
Stockbridge, GA 30281

## LIMITED WARRANTY DEED

**STATE OF GEORGIA**

**COUNTY OF Henry**                    File #:

THIS INDENTURE, made the 24th day of March, 2017, between R.I.G. of Georgia, LLC, party of the first part, and LeMarcus Allison, party of the second part,

WITNESSETH That: the said party of the first part, for and in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) and other goods and valuable considerations in hand paid, at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said party of the second part, his heirs and assigns, the following described property:

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said bargained premises.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said party of the second part, his heirs and assigns, forever, in FEE SIMPLE.

AND THE SAID party of the first part, for his heirs, executors and administrators, will warrant and forever defend the right and title to the above described property, unto the said party of the second part, his heirs and assigns, against claims of all persons owning, holding or claiming by, through or under the said party of the first part.

IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal, the day and year above written.

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Notary Public

R.I. G. of Georgia, LLC

_____
By: Susan Clowdus, Closing Agent

ALBERT G BANTLEY
MY COMMISSION EXPIRES
MAY
11
2017
HENRY CO. GEORGIA
NOTARY PUBLIC

2017 MAR 27 AM 10: 09
RECEIVED IN OFFICE
HENRY COUNTY
CLERK OF SUPERIOR COURT

Exhibit E

000045

3/20/2019

GSCCCA.org - Image Index

BK: 15151 PG: 282-295
Filed and Recorded Mar-27-2017 03:01:07PM
DOC#: 02017-007891
Georgia Intangible Tax Paid $1,273.50

BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.



EXHIBIT
B

BROCHSTEIN & SANTLEY, P.C.
827 FAIRWAYS COURT
SUITE 100
STOCKBRIDGE, GA 30261

When recorded, return to:
CalCon Mutual Mortgage LLC
Attn:  Post-Closing
3131 Camino Del Rio North, Suite 1880
San Diego, CA 92108
888-488-3807

RECEIVED IN OFFICE
HENRY COUNTY
CLERK OF S.C.R.(GA COURT)
2017 MAR 27  AH 10: 09

Title Order No.: ▮▮▮▮▮
Escrow No.: ▮▮▮▮▮
LOAN #: ▮▮▮▮▮

[Space Above This Line For Recording Data]

## SECURITY DEED

MIN ▮▮▮▮▮▮▮
MERS PHONE #: 1-888-679-6377

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated   March 24, 2017,                         together with all Riders to this document.
(B) "Borrower" is   LEMARCUS ALLISON, AN UNMARRIED MAN.

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   CalCon Mutual Mortgage LLC.

Lender is     A Limited Liability Company,                            organized and existing under the laws of Delaware,                                                     Lender's address is  3131 Camino Del Rio North, Suite 1880, San Diego, CA 92108

(E) "Note" means the promissory note signed by Borrower and dated   March 24, 2017.              The Note states that Borrower owes Lender  FOUR HUNDRED TWENTY FOUR THOUSAND ONE HUNDRED AND NO/100**
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *   Dollars (U.S.  $424,100.00              )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   April 1, 2047.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                           Page 1 of 9

Initials: LA

GAEDEED  0315
GAEDEED  (CLS)
03/22/2017 01:52 PM PST



Exhibit E

000046

BK: 15151 PG: 283 LOAN #: ▆▆▆▆▆

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider               ☐ Second Home Rider
☐ Balloon Rider                  ☒ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the   County                              (Type of Recording Jurisdiction) of   Henry
[Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: ▆▆▆▆▆▆▆▆

which currently has the address of  250 Montrose Drive, McDonough,
                                                                                              [Street] [City]
Georgia   30253              ("Property Address"):
          [Zip Code]

    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01      Initials: ____
Ellie Mae, Inc.                          Page 2 of 9                                GAEDEED  0315
                                                                                   GAEDEED (CLS)
                                                                                   03/22/2017 01:32 PM PST

Exhibit E

000047

3/20/2019   GSCCCA.org - Image Index

BK: 15151 PG: 284 LOAN #:

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items,

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
Page 3 of 9

Initials: ___
GAEDEED  0316
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit E

000048

BK: 15151 PG: 285 LOAN #: ▮▮▮▮▮

unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                    Page 4 of 9                    Initials: _LA_
                                                    GAEDEED 0315
                                                    GAEDEED (CLS)
                                                    03/22/2017 01:32 PM PST

Exhibit E

000049

3/20/2019                                                    GSCCCA.org - Image Index

BK: 15151 PG: 286 LOAN #: ▮▮▮▮▮

settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
                                                    Page 5 of 9                              Initials: ___
                                                                                            GAEDEED  0315
                                                                                            GAEDEED (CLS)
                                                                                            03/22/2017 01:52 PM PST



Exhibit E

000050

3/20/2019                                    GSCCCA.org - Image Index

BK: 15151 PG: 287 LOAN #:

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
Page 6 of 9

Initials: L A

GAEDEED   0316
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit E

000051

3/20/2019

BK: 15151 PG: 288 LOAN #:

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
Page 7 of 9

Initials: _____

GAEDEED 0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit E

000052

BK: 15151 PG: 289 LOAN #: ▮▮▮▮▮▮

Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall apply prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                                                Page 8 of 9

Initials: 

GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit E

000053

BK: 15151 PG: 290 LOAN #: ███████

proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____          3-24-17   (Seal)
LEMARCUS ALLISON                                         DATE

_____
Unofficial Witness

Notary Public, ___Georgia___
___Henry___ County

Lender: CalCon Mutual Mortgage LLC
NMLS ID: ███████
Loan Originator: Mathew Allen Dlugolenski
NMLS ID: ███████



GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01          Initials: __LA__
Ellie Mae, Inc.                                    Page 9 of 9                            GAEDEED  0315
                                                                                          GAEDEED (CLS)
                                                                                  03/22/2017 01:52 PM PST

Exhibit E

000054

3/20/2019

BB File No.: ████

BK: 15151 PG: 291

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

— μA

Exhibit E

000055

3/20/2019

GSCCCA.org - Image Index

BK: 15151 PG: 292

LOAN #:
MIN:

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24th          day of
**March, 2017**          and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note
to  **CalCon Mutual Mortgage LLC, A Limited Liability Company**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at:  **250 Montrose Drive, McDonough, GA 30253.**

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described
in  **COVENANTS, CONDITIONS AND RESTRICTIONS**

(the "Declaration").
The Property is a part of a planned unit development known as  **Eagles Landing**

(the "PUD"). The Property also includes Borrower's interest in the homeowners association
or equivalent entity owning or managing the common areas and facilities of the PUD
(the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
     **A.   PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration;
(ii) articles of incorporation, trust instrument or any equivalent document which creates
the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.
     **B.   Property Insurance.** So long as the Owners Association maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property
which is satisfactory to Lender and which provides insurance coverage in the amounts
(including deductible levels), for the periods, and against loss by fire, hazards included
within the term "extended coverage," and any other hazards, including, but not limited
to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium
installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied
to the extent that the required coverage is provided by the Owners Association policy.
     What Lender requires as a condition of this waiver can change during the term of the loan.
     Borrower shall give Lender prompt notice of any lapse in required property
insurance coverage provided by the master or blanket policy.
     In the event of a distribution of property insurance proceeds in lieu of restoration or
repair following a loss to the Property, or to common areas and facilities of the PUD, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender
shall apply the proceeds to the sums secured by the Security Instrument, whether or
not then due, with the excess, if any, paid to Borrower.
     **C.   Public Liability Insurance.** Borrower shall take such actions as may be
reasonable to ensure that the Owners Association maintains a public liability insurance
policy acceptable in form, amount, and extent of coverage to Lender.

Initials: 

MULTISTATE PUD RIDER–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                                    Page 1 of 2                              F3150RDU  0115
                                                                                           F3150RLU (CLS)
                                                                                           03/22/2017 01:52 PM PST

Exhibit E

000056

3/20/2019                                        GSCCCA.org - Image Index

BK: 15151 PG: 293

LOAN #: ▮▮▮▮

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Lema all_                                      _3-24-17_   (Seal)
LEMARCUS ALLISON                                    DATE

Initials: _L A_

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                    Page 2 of 2              F3150RDU  0115
                                                           F3150RLU (CLS)
                                                           03/22/2017 01:32 PM PST

Exhibit E

000057

3/20/2019                                    GSCCCA.org - Image Index

BK: 15151 PG: 294

GEORGIA -

Grantor:  Lemarcus Allison

Date:  **March 24, 2017**

Loan Number: ███████

Property Address:  **250 Montrose Drive**
                   **McDonough, GA 30253**

Lender:  **CalCon Mutual Mortgage LLC**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

_Lens alli_                                              3-24-17
**LEMARCUS ALLISON**                                     DATE

Unofficial Witness

Notary Public,                    Georgia
Henry    County

ALBERT G BANTLEY
MY COMMISSION EXPIRES
MAY
11
2017
HENRY CO, GEORGIA
NOTARY PUBLIC

Ellie Mae, Inc.                   Page 1 of 2              GABORWAV  1011
                                                          GABORWAV (CLS)
                                                          03/22/2017 01:52 PM PST

http://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=69643377&key1=15151&key2=282&county=75&countyname=HENRY&userid=444825&ap...   13/14

Exhibit E

000058

3/20/2019                                    GSCCCA.org - Image Index

BK: 15151 PG: 295    LOAN #: [REDACTED]

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me  *Lois Rance-Cooper*                                    on the date set forth above.

_____                                    _____
Notary Public                                                                       Closing Attorney

Ellie Mae, Inc.                              Page 2 of 2                              GABORWAV  1011
                                                                                      GABORWAV (CLS)
                                                                                      03/22/2017 01:52 PM PST

Exhibit E

000059



**RAS Crane, LLC**
10700 Abbott's Bridge Road, Suite 170
Duluth, GA 30097
Phone: 470-321-7112
Fax: 404-393-1425

May 21, 2018

**SENT VIA REGULAR AND CERTIFIED MAIL**

ALLISON, LEMARCUS
250 MONTROSE DR
MCDONOUGH, GA 30253
File #: ███████████
Loan #:

Dear Borrower,

This letter is formal notice by CalCon Mutual Mortgage LLC on behalf of Fannie Mae that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to accurately list and/or maintain the ending balance in your bank account used to qualify for the underlying loan.

Based upon this default, the loan has become due and payable in the full amount. You must pay the full amount of the loan on this loan by May 28, 2018 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). Failure to pay the remaining sums due and payable on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.

As of the date of this notice, the total amount due and payable and required to payoff the loan and cure the default is $430,327.63, which consists of the following:

| | | | |
|---|---|---|---|
| Next Payment Due Date | | | :5/28/2018 |
| Total Monthly Payments Due: | | | $430,327.63 |
| Interest (05/28/2018) | at | $1,390.06 | |
| Pro Rata MIP/PMI | at | $237.71 | |
| Escrow Balance | at | $2,836.36 | |
| Late Charges: | | $0 | |
| Other Charges: | Uncollected NSF Fees: | | $0 |
| | Other Fees: | | $14.00 |
| | Corporate Advance Balance: | | $0 |
| | Unapplied Balance: | | $0 |

Exhibit E

**TOTAL YOU MUST PAY TO PAYOFF THE DEBT/CURE THE DEFAULT: $340,468.86**

You can cure this default by making a payment of $430,327.63 by 05/28/2018. Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current. You may contact our Loss Mitigation Department at 1-866-545-9070 to obtain updated payment information. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. Please include your loan number and property address with your payment and send to:

PennyMac Loan Services, LLC
P.O. Box 30597
Los Angeles, CA 90030-0597

Or Overnight:

PennyMac Loan Services, LLC
1200 W. 7th Street, Suite L-2-200
Los Angeles, CA 90017

If you wish to dispute the payoff/default, or if you dispute the calculation of amount of the default/payoff amount, you may contact us by calling 1-866-545-9070. If you do not cure the default by the date specified above, foreclosure proceedings may begin as early as 120 days from the date of the default specified herein. If foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, PennyMac Loan Services, LLC offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 1-866-545-9070, 6:00 AM – 6:00 PM. WE ARE VERY INTERESTED IN ASSISTING YOU.

You have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding, or to bring a court action to assert, the non-existence of a default or any other defense you may have to acceleration and sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

PennyMac Services, LLC is attempting to collect a debt, and any information obtained will be used for that purpose. Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.

Exhibit E

000061

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by PennyMac Loan Services, LLC.

**Attention Servicemembers and Dependents:** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service or have been within the last twelve (12) months AND joined after signing the Note and Security Instrument now in default, please notify PennyMac Loan Services, LLC immediately. When contacting PennyMac Loan Services, LLC as to your military service, you must provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil; 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact us toll-free at 1-866-545-9070 if you have questions about your rights under SCRA.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You may also contact the Homeownership Preservation Foundation's Hope hotline at 1-888-995-HOPE (4673).

Sincerely,

RAS Crane LLC
10700 Abbott's Bridge Road
Duluth, GA 30097
Phone: (470) 321-7112

Exhibit E



# STEVENS, STEVENS & OLIVER, LLC
## ATTORNEYS AT LAW

Ronald S. Stevens
Andrew M. Stevens
Jackson E. Oliver

4167 Roswell Road, Suite A Floor 1
Atlanta, Georgia 30342

Phone: (770) 393-8900
Fax: (770) 392-0367

July 30, 2018

**VIA FEDEX OVERNIGHT MAIL AND EMAIL**
Angelo Vasilescu, Esq.
RAS Crane, LLC
10700 Abbott's Bridge Road
Suite 170
Dultuh, Georgia 30097

Re: Foreclosure of 250 Montrose Drive, McDonough, Georgia 30253
Your File No.: ▬▬▬▬
Our Client: Lemarcus Allison

Dear Mr. Vasilescu,

      Please be advised that our firm has been retained by Lemarcus Allison with regard to the wrongful foreclosure of the above-captioned property.   As I am sure you are aware, this property is my client primary residence and my client is completely up to date on all of his monthly mortgage payments.  After the receipt of your email dated July 26, 2018, along with your correspondence dated May 21, 2018 it has been brought to my attention your client is foreclosing "for failure to accurately list and/or maintain the ending balance in your bank account used to qualify for the underlying loan."
      Please accept this letter as my client's dispute of the validity of the default referenced in your letter. Below please find the detailed reasons for the dispute and forward the verification of the debt to my office at the above listed address.

a)  As you are aware, You v. JPMorgan Chase Bank, N.A., et al, 293 Ga. 67 (2013), stated that the secured creditor and actual creditor to whom the debt is owed do not necessarily have to be the same entity. Your letter of May 21, 2018 lists the creditor to whom the debt is owed as CalCon Mutual Mortgage, LLC on behalf of Fannie Mae. However, as recently as July 26, 2018, my client was told by Penny Mac Loan Services, LLC that they were the current creditor of the alleged debt.  My client is unaware of recent transfers of interest in the alleged debt as they have not been properly notified of same. Please verify and validate the ownership of the alleged debt.

b) My client further dispute the validity of the debt claimed in your May 21, 2018 letter. My client denies any portion of the alleged $430,327.63 of debt listed in your Letter is due and owing as of this date based upon the fact that there is no default under the terms of the security deed. In fact my client is up to date on every mortgage payment.

Exhibit E

c) Additionally, the stated debt amount: is denied as false, inflated, includes illegal charges, false accounting, improper fees, illegal charges, mystery fees, add-ons and improper sums; gives no credit for monies paid by homeowner directly to the actual creditor or payments made on the debt; gives no credit for illegal false charges, drive-by charges, mystery fees, illegal attorney fees, and improper attempted foreclosure charges, just to name a few.

d) Your letter dated May 21, 2018 fails to detail how the my client is in default under his loan and it fails it provide my client with notice of his right to cure any alleged default within 30 days of said notice pursuant to the security deed.  As I am sure you are aware, the Georgia Court of Appeals has found that foreclosure without giving this notice is wrongful and a breach of contract. Please consider this your notice pursuant to paragraph 20 of the security deed. See BAC Home Loans Servicing, L.P. v. Wedereit, 773 S.E.2d 711 (Ga. 2015).

f) My client claims that he has not received an accurate account statement on his actual debt. As the alleged debt in your letter of May 21, 2018 does not match the accounting that my client has of his actual debt, the alleged debt you are attempting to collect is further denied.

g) My client will seek damages for violations of the FDCPA for false representations of the ownership of the debt and failure to notify of ownership changes in the debt pursuant to TILA requirements, damages for improper, inaccurate and bad credit reports, lack of credit for interest on monies paid and never credited, interest on illegal charges for improper late fees, service fees, mystery fees, drive by fees, assessment fees, attorney's fees, attempted foreclosure fees, wrongful attempted foreclosure, fraud, breach of contract for refusal to accept payments, and breach of contract for improper late fees and tro/permanent injunction.

Thank you for taking the time to acknowledge and respond to this dispute. We anticipate that all collection activities including the August 7, 2018 foreclosure regarding this debt will cease immediately. Additionally, you are provided notice that all direct communications with the alleged debtor are to cease pursuant to 15 U.S.C. § 1692c (a)(2).  Further, in the event your client plans to proceed with the foreclosure my firm has been authorized to file a lawsuit against your clients for wrongful foreclosure and to enjoin and restrain your client from proceeding with the foreclosure, whereas your client may be liable to my client for his attorney's fees and costs.  Please let me know before close of business Monday July 30, 2018, whether your client plans to proceed with the August 7, 2018 foreclosure.  I look forward to hearing from you before close of business Monday, July 30, 2018.  Please also verify whether or not your firm represents PennyMac Loan Services, LLC or whether we may contact them directly if you do represent them in this matter.

Sincerely,

Andrew M. Stevens

CC: Lemarcus Allison

Exhibit E

000064



**RAS Crane, LLC**
10700 Abbott's Bridge Road, Suite 170
Duluth, GA 30097
Phone: 470-321-7112
Fax: 404-393-1425

July 31, 2018

**VIA CERTIFIED MAIL AND EMAIL**
Andrew M. Stevens
4167 Roswell Road, Suite A Floor 1
Atlanta, GA 30342

RE:          LEMARCUS ALLISON
Loan No.:    ▮▮▮▮▮▮
Property     250 MONTROSE DR
             MCDONOUGH, GA 30253

**Correspondence Dated: July 30, 2018**

Dear Mr. Stevens

This letter is written in response to your correspondence dated July 30, 2018. Please note that this law firm has been retained solely to conduct a foreclosure sale of the subject property. All of the allegations, claims and assertions set forth in your letter, including any attachments, are rejected at this time. In reference to your request, please find enclosed the following documents:

-Security Deed

-Promissory Note

-Assignment

The original lender was MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC. As previously communicated to you, the foreclosure sale scheduled for Tuesday, August 07, 2018 has been cancelled.

**Please be advised that if the LEMARCUS ALLISON  have received a discharge in a Chapter 7 bankruptcy case, the borrower's personal liability on this loan may have been extinguished. In that event, the action we have been requested to take would be limited to the foreclosure of the above-referenced property.**

Very truly yours,

RAS Crane, LLC

Exhibit E

# STEVENS, STEVENS & OLIVER, LLC
## ATTORNEYS AT LAW

Ronald S. Stevens
Andrew M. Stevens
Jackson E. Oliver

4167 Roswell Road, Suite A Floor 1
Atlanta, Georgia 30342

Phone: (770) 393-8900
Fax:   (770) 392-0367

July 30, 2018

**VIA FEDEX OVERNIGHT MAIL AND EMAIL**
Angelo Vasilescu, Esq.
RAS Crane, LLC
10700 Abbott's Bridge Road
Suite 170
Duluth, Georgia 30097

Re: Foreclosure of 250 Montrose Drive, McDonough, Georgia 30253
Your File No.: ███████
Our Client: Lemarcus Allison

Dear Mr. Vasilescu,

Please be advised that our firm has been retained by Lemarcus Allison with regard to the wrongful foreclosure of the above-captioned property.   As I am sure you are aware, this property is my client primary residence and my client is completely up to date on all of his monthly mortgage payments.  After the receipt of your email dated July 26, 2018, along with your correspondence dated May 21, 2018 it has been brought to my attention your client is foreclosing "for failure to accurately list and/or maintain the ending balance in your bank account used to qualify for the underlying loan."

Please accept this letter as my client's dispute of the validity of the default referenced in your letter. Below please find the detailed reasons for the dispute and forward the verification of the debt to my office at the above listed address.

a)  As you are aware, You v. JPMorgan Chase Bank, N.A., et al, 293 Ga. 67 (2013), stated that the secured creditor and actual creditor to whom the debt is owed do not necessarily have to be the same entity. Your letter of May 21, 2018 lists the creditor to whom the debt is owed as CalCon Mutual Mortgage, LLC on behalf of Fannie Mae. However, as recently as July 26, 2018, my client was told by Penny Mac Loan Services, LLC that they were the current creditor of the alleged debt.  My client is unaware of recent transfers of interest in the alleged debt as they have not been properly notified of same. Please verify and validate the ownership of the alleged debt.

b) My client further dispute the validity of the debt claimed in your May 21, 2018 letter. My client denies any portion of the alleged $430,327.63 of debt listed in your Letter is due and owing as of this date based upon the fact that there is no default under the terms of the security deed. In fact my client is up to date on every mortgage payment.

Exhibit E

000066

c) Additionally, the stated debt amount: is denied as false, inflated, includes illegal charges, false accounting, improper fees, illegal charges, mystery fees, add-ons and improper sums; gives no credit for monies paid by homeowner directly to the actual creditor or payments made on the debt; gives no credit for illegal false charges, drive-by charges, mystery fees, illegal attorney fees, and improper attempted foreclosure charges, just to name a few.

d) Your letter dated May 21, 2018 fails to detail how the my client is in default under his loan and it fails it provide my client with notice of his right to cure any alleged default within 30 days of said notice pursuant to the security deed. As I am sure you are aware. the Georgia Court of Appeals has found that foreclosure without giving this notice is wrongful and a breach of contract. Please consider this your notice pursuant to paragraph 20 of the security deed. See BAC Home Loans Servicing, L.P. v. Wedereit, 773 S.E.2d 711 (Ga. 2015).

f) My client claims that he has not received an accurate account statement on his actual debt. As the alleged debt in your letter of May 21, 2018 does not match the accounting that my client has of his actual debt, the alleged debt you are attempting to collect is further denied.

g) My client will seek damages for violations of the FDCPA for false representations of the ownership of the debt and failure to notify of ownership changes in the debt pursuant to TILA requirements, damages for improper, inaccurate and bad credit reports, lack of credit for interest on monies paid and never credited, interest on illegal charges for improper late fees, service fees, mystery fees, drive by fees, assessment fees, attorney's fees, attempted foreclosure fees, wrongful attempted foreclosure, fraud, breach of contract for refusal to accept payments, and breach of contract for improper late fees and tro/permanent injunction.

Thank you for taking the time to acknowledge and respond to this dispute. We anticipate that all collection activities including the August 7, 2018 foreclosure regarding this debt will cease immediately. Additionally. you are provided notice that all direct communications with the alleged debtor are to cease pursuant to 15 U.S.C. § 1692c (a)(2). Further, in the event your client plans to proceed with the foreclosure my firm has been authorized to file a lawsuit against your clients for wrongful foreclosure and to enjoin and restrain your client from proceeding with the foreclosure, whereas your client may be liable to my client for his attorney's fees and costs. Please let me know before close of business Monday July 30, 2018, whether your client plans to proceed with the August 7, 2018 foreclosure. I look forward to hearing from you before close of business Monday, July 30, 2018. Please also verify whether or not your firm represents PennyMac Loan Services, LLC or whether we may contact them directly if you do represent them in this matter.

Sincerely

Andrew M. Stevens

CC: Lemarcus Allison

Exhibit E

000067

BK:15980 PG:203-203
Filed and Recorded
Jul-30-2018 09:23 AM
DOC# 2018 - 019953
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT
HENRY COUNTY, GA

RETURN DOCUMENT TO:
RAS Crane LLC
10700 Abbott's Bridge Rd.
Suite 170
Duluth, GA 30097
Phone: (844) 442-2033
Firm File No: 18-174021 - AnM

MERS PH#: (888) 679-6377

TRANSFER AND ASSIGNMENT

FOR VALUE RECEIVED, the undersigned does hereby assign, transfer, set over, and convey unto CALCON MUTUAL MORTGAGE LLC ("Assignee"), whose address is 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92108, its successors or assigns, of that certain Security Deed by LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC., its successors and assigns, whose address is P.O. BOX 2026 FLINT, MI 48501-2026 dated March 24, 2017 in the original principal amount of $424,100.00 and recorded in Deed Book 15151, Page 282, Henry County, Georgia records, together with the real property therein described, and having this day been transferred and assigned to the said Assignee together with all of the undersigned's right, title, and interest in and to the said deed, the property therein described and thereby secured.

Witness the hand and seal of the undersigned this 26 day of July, 2018.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR CALCON MUTUAL
MORTGAGE LLC., its successors and assigns

By: _____

Print Name: SHANE A. ERSKINE

Title: PRESIDENT

Signed, sealed, and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission Expires: 11/30/2021

{NOTARY SEAL}

Exhibit E

000068



Certified to be a true copy of the original.
**CalCon Mutual Mortgage LLC**
By

**NOTE**

November 30, 2017
[Date]

San Diego,
[City]

California
[State]

275 Honey Ln, Fayetteville, GA 30214
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $343,561.00 (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  CalCon Mutual Mortgage LLC, A Limited Liability
Company.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of 5.500 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   1st       day of each month beginning on January 1, 2018.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will
be applied to interest before Principal. If, on
December 1, 2047,       I still owe amounts under this Note, I will pay those amounts in full on that date, which is
called the "Maturity Date."
I will make my monthly payments at 3131 Camino Del Rio North, Suite 1680
San Diego, CA 92108
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.  $1,950.76.

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of
my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such
loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already
collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund
by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the
reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue
payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200  1/01
Modified for FHA 5/16 (rev. 2/16)
Ellie Mae, Inc.                                                                Initials: _____
Page 1 of 2

000069

LOAN #: ▮▮▮▮▮

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

*Brittany Farley By Helen Anderson As Attorney In Fact* (Seal)
BRITTANY FARLEY, BY HELEN ANDERSON AS ATTORNEY IN FACT

Lender: CalCon Mutual Mortgage LLC
NMLS ID: ▮▮▮▮▮
Loan Originator: Gladys Fulcher Marcelin
NMLS ID: ▮▮▮▮▮

[Sign Original Only]

Initials: ▮▮▮▮

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.    Page 2 of 2

Exhibit E

000070

## ALLONGE

| | |
|---|---|
| **LOAN NUMBER:** | ▇▇▇▇▇▇ |
| **BORROWER NAME:** | **Brittany Farley** |
| **PROPERTY ADDRESS:** | **275 Honey Ln** **Fayetteville, GA 30214** |
| **NOTE/LOAN AMOUNT:** | $343,561.00 |
| **NOTE/LOAN DATE:** | 11/30/2017 |

PAY TO THE ORDER OF:

Pacific Union Financial, LLC

**WITHOUT RECOURSE**

| | |
|---|---|
| **COMPANY NAME:** | Calcon Mutual Mortgage LLC, a Limited Liability Company |
| **SIGNATURE:** | |
| **NAME:** | BA Capati |
| **TITLE:** | Post-Closing Specialist |

Exhibit E

000071

243

BK: 15151 PG: 282-295
Filed and Recorded Mar-27-2017 03:01:07PM
DOC#: E2017-00791
Georgia Intangible Tax Paid $1,273.50

BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County Ga.

GROCHSTEIN & BANTLEY, P.C.
827 FAIRWAYS COURT
SUITE 100
STOCKBRIDGE, GA 30281

✓  When recorded, return to:
CalCon Mutual Mortgage LLC
Attn: Post-Closing
3131 Camino Del Rio North, Suite 1680
San Diego, CA 92108
888-488-3807

RECEIVED, INDEXED
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT
2017 MAR 27  AM 10: 09

Title Order No.:
Escrow No.:
LOAN #:

[Space Above This Line For Recording Data]

## SECURITY DEED

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated   March 24, 2017,                together with all Riders to this document.
(B) "Borrower" is   LEMARCUS ALLISON, AN UNMARRIED MAN.

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   CalCon Mutual Mortgage LLC.

Lender is     A Limited Liability Company,                              organized and existing under the laws of Delaware.
Lender's address is   3131 Camino Del Rio North,
Suite 1680, San Diego, CA 92108

(E) "Note" means the promissory note signed by Borrower and dated   March 24, 2017.                The Note states that Borrower owes Lender   FOUR HUNDRED TWENTY FOUR THOUSAND ONE HUNDRED AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. $424,100.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   April 1, 2047.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                         Page 1 of 9

Initials: 
GAEDEED   0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit E

000072

BK: 15151 PG: 283 LOAN #: _____

(N) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☒ Planned Unit Development Rider     ☐ Other(s) [specify]
☒ 1-4 Family Rider     ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the County     [Type of Recording Jurisdiction] of   Henry
[Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".

which currently has the address of  260 Montrose Drive, McDonough,

                                                  [Street] [City]

Georgia     30253       ("Property Address"):
       [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
                                   Page 2 of 9                     Initials: _____
                                                         GARDEED  0315
                                                          GARDEED (CLS)
                                                 03/22/2017 01:28 PM PST

Exhibit E

000073

BK: 15151 PG: 284 LOAN #: [redacted]

**BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**THIS SECURITY INSTRUMENT** combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items,

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.

Initials: [signature]
GAEDEED 0316
GAEDEED (CLS)
03/22/2017 01:52 PM PST

[redacted]

Exhibit E

BK: 15151 PG: 285 LOAN #: [redacted]

unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to

[redacted]

Exhibit E

BK: 15151 PG: 286 LOAN #: ▮▮▮▮▮

settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                    Page 5 of 9

Initials: LA

GAEDEED 0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

000076

BK: 15153 PG: 287 LOAN #: ████████

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
Page 6 of 9

Initials: ___LA___
GAEDEED  0316
GAEDEED (CLS)
03/22/2017 01:22 PM PST

Exhibit E

000077



**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3011 1/01
Ellie Mae, Inc.  Page 7 of 9  GADEEDD 0309
GADEEDL (CLS)
08/22/2017 07:52 PM PST
Initials: _____

Exhibit E

BK: 15353 PG: 289 LOAN #:

Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.

Page 8 of 9

Initials: _____
GAEDEED  0316
GAEDEED (CLS)
03/23/2017 01:22 PM PST

000079

BK: 15153 PG: 290 LOAN #: ████████

proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_Lamar Allison_ _(signature)_

DEMARCUS ALLISON                                              3-24-17   (Seal)
                                                              DATE

_(signature)_
Unofficial Witness

Notary Public, ___Georgia___
___Henry___ County

_(notary seal: ALBERT G BANTLEY / MAY 11 2017 / NOTARY PUBLIC)_

Lender: Caliber Mutual Mortgage LLC
NMLS ID: ██████
Loan Originator: Mathew Allen Dlugolenski
NMLS ID: ██████

Initials: _LA_
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit E

000080

NB File No.: ████

BK: 15151 PG: 291

### EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

Exhibit E

000081

Andrew Stevens

| From: | Andrew Stevens |
|---|---|
| Sent: | Tuesday, January 08, 2019 5:33 PM |
| To: | 'Bret Chaness' |
| Cc: | Jackson Oliver |
| Subject: | RE: LeMarcus Allison |
| Attachments: | Scanned from Stevens Stevens _ Oliver Attorneys at Law.pdf |



Hi Bret,

It was a pleasure speaking with you today.  Please find Mr. Allison's Wells Fargo bank statement for December 20, 2016 through January 20, 2017. As you can see, there is an ending balance on January 20, 2017 of $42,950.23.  Mr. Allison when he signed the Uniform Residential Loan Application you previously email thought the $77,703.65 was the amount available in all of his accounts.

Therefore, please accept this email as my client's cure to your client's default.  My client will sign a new Uniform Residential Loan Application if you client wants to email a revised one to me. Please confirm that this has cured your client's default.   I look forward to hearing from you soon.

Sincerely,

Andrew

Andrew M. Stevens

Stevens, Stevens & Oliver, LLC
4167 Roswell Road
Suite A Floor 1
Atlanta, Georgia 30342
(P) 770-393-8900 Ext. 223
(F) 770-392-0367 (Use Cover)
www.lawstevens.com
**WIRING INSTRUCTIONS MUST BE VERBALLY VERIFIED BEFORE INITIATING THE WIRE TO OUR TRUST ACCOUNT**
*****************************

## WARNING – FRAUDULENT FUNDING INSTRUCTIONS

Email hacking and fraud are on the rise to fraudulently misdirect funds. Please call your escrow officer immediately using contact information found from an independent source, such as the sales contract or internet, to verify any funding instructions received. We are not responsible for any wires sent by you to an incorrect bank account.

Please call our office to confirm prior to wiring funds.

Pursuant to Georgia's Good Funds Law, O.C.G.A. §44-14-13, we require a wire in the following instances:

*Buyers funds to close exceed $5,000.00

*Funds owed by Seller at closing

Certified funds are acceptable for any funds due less than $5,000.00

1

Exhibit E

000082

NOTICE AND DISCLAIMER-THIS ELECTRONIC MAIL MESSAGE AND ITS ATTACHMENTS HAVE BEEN SENT FROM A LAW FIRM. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH THIS LAW FIRM ADDRESSED IT. THE INFORMATION IN THIS ELECTRONIC MESSAGE AND ITS ATTACHMENTS ARE SUBJECT TO THE ATTORNEY CLIENT AND/OR WORK PRODUCT PRIVILEGE AND MAY CONTAIN CONFIDENTIAL INFORMATION. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE NOTIFIED THAT ANY UNAUTHORIZED DISSEMINATION, DISTRIBUTION, FORWARDING, COPYING, OR RELIANCE ON THIS MESSAGE IS STRICTLY PROHIBITED. FURTHERMORE, PLEASE NOTIFY US IMMEDIATELY BY COLLECT TELEPHONE OR E-MAIL IF THIS FIRM HAS INADVERTENTLY DISCLOSED THIS MESSAGE AND/OR ITS ATTACHMENTS TO YOU SO THAT WE CAN INSTRUCT YOU ON HOW TO DELETE/DESTROY ITS CONTENTS. NO ATTORNEY-CLIENT RELATIONSHIP EXISTS BY VIRTUE OF THIS COMMUNICATION UNLESS WE HAVE SPECIFICALLY ACKNOWLEDGED IN WRITING THAT ONE EXISTS. THANK YOU.

**From:** Bret Chaness [mailto:bchaness@rubinlublin.com]
**Sent:** Friday, January 04, 2019 3:23 PM
**To:** Andrew Stevens
**Cc:** Jackson Oliver
**Subject:** LeMarcus Allison

Hi Andrew,

I hope you had a good new year. I received approval to send the requested documents to you, and they are attached. One document is the signed loan application, affirming a balance of $77,703.65 on the Bank of America account ending in 5681. The second attachment is a set of bank statements. The statement ending on January 25, 2017 states that the balance is $77,703.65, which is the balance from the loan application. There are two other statements included. The first page of that attachment is a document from Bank of America, stating that the documents do not accurately reflect the account balance, and that on January 25, 2017, the balance was actually $28,939.84.

In accordance with the Notice of Default, your client must provide CalCon with independently verifiable information showing that the bank statement was not altered.

Please let me know if you have any questions or concerns.

 RUBINLUBLIN LLC
*Personalized Service, Professional Results*

**Bret Chaness | Litigation Partner**

| Rubin Lublin, LLC / Rubin Lublin TN, PLLC | Main: 770-246-3300 |
|---|---|
| 3145 Avalon Ridge Place, Suite 100 | Fax: 404-921-9016 |
| Peachtree Corners, Georgia, 30071 | Direct: 678-281-2730 |
| www.rubinlublin.com | bchaness@rubinlublin.com |

Serving Georgia, Mississippi, Tennessee & Alabama

PLEASE BE ADVISED THAT THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A AND ANY INFORMATION OBTAINED DURING OR AS A RESULT OF THIS COMMUNICATION MAY BE USED FOR THAT

2

Exhibit E

000083

# Wells Fargo Combined Statement of Accounts

Primary account number: ▉▉▉▉▉  ■ December 20, 2016 - January 20, 2017  ■ Page 1 of 4



LEMARCUS K ALLISON
3034 DOGWOOD DR
HAPEVILLE GA 30354-1119

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-742-4932**

TTY: 1-800-877-4833
En español: 1-877-727-2932
華語 1-800-288-2288  *(6 am to 7 pm PT, M-F)*

Online: wellsfargo.com

Write:  Wells Fargo Bank, N.A. (297)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our
company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these
convenient services with your account(s). Go to
wellsfargo.com or call the number above if you have
questions or if you would like to add new services.*

| Service | | Service | |
|---|---|---|---|
| Online Banking | ☑ | Direct Deposit | ☐ |
| Online Bill Pay | ☑ | Auto Transfer/Payment | ☐ |
| Online Statements | ☑ | Overdraft Protection | ☑ |
| Mobile Banking | ☐ | Debit Card | |
| My Spending Report | ☑ | Overdraft Service | ☑ |

## Summary of accounts

### Checking/Prepaid and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Wells Fargo Way2Save® Checking | 2 | ▉▉▉▉▉ | 666.22 | 654.22 |
| Wells Fargo Way2Save® Savings | 3 | | 42,949.85 | 42,950.23 |
| Total deposit accounts | | | $43,616.07 | $43,604.45 |

Exhibit E

000084

Primary account number: ▓▓▓▓ ▪ December 20, 2016 - January 20, 2017 ▪ Page 2 of 4



## Wells Fargo Way2Save® Checking

### Activity summary

| | |
|---|---:|
| Beginning balance on 12/20 | $666.22 |
| Deposits/Additions | 0.00 |
| Withdrawals/Subtractions | - 12.00 |
| Ending balance on 1/20 | $654.22 |

Account number: ▓▓▓▓

**LEMARCUS K ALLISON**

*Georgia account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 061000227

### Overdraft Protection

Your account is linked to the following for Overdraft Protection
▪ Savings ▓▓▓▓

### Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---:|---:|---:|
| 1/20 | | Monthly Service Fee | | 12.00 | 654.22 |
| Ending balance on 1/20 | | | | | 654.22 |
| Totals | | | $0.00 | $12.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

### Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 12/20/2016 - 01/20/2017 | Standard monthly service fee $12.00 | You paid $12.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Minimum daily balance | $2,000.00 | $666.22 ☐ |
| Total amount of qualifying direct deposits | $750.00 | $0.00 ☐ |
| Total number of posted Wells Fargo Debit Card purchases and/or payments | 10 | 0 ☐ |
| JCJC | | |



## IMPORTANT ACCOUNT INFORMATION

Amendment to our Funds Availability Policy

Good news! Effective April 5, 2017, we've updated our funds availability policy to remove the delay of funds by one additional business day for certain checks deposited at a Wells Fargo location in Alaska. This applies only if the check was drawn on or payable at or through a paying bank not located in Alaska. Other funds availability policies are still in effect. Please see our Consumer Account Agreement for additional funds availability policies and details.

Exhibit E

000085

Primary account number: ███████  ■ December 20, 2016 - January 20, 2017  ■ Page 3 of 4



Periodically, we may evaluate the timing of statements, monthly service fee assessment and interest payments to your accounts. We may adjust the timing in order to align your statement, monthly service fee assessment (if any) and interest payment dates with one another. You may receive a partial statement that reflects activity and interest payments from the last statement date to the date of the change. No monthly service fees will be assessed during a partial statement period and there will be no impact to your interest rate or compounding frequency.

## Wells Fargo Way2Save® Savings

### Activity summary

| | |
|---|---|
| Beginning balance on 12/20 | $42,949.85 |
| Deposits/Additions | 0.38 |
| Withdrawals/Subtractions | - 0.00 |
| Ending balance on 1/20 | $42,950.23 |

Account number: ███████

**LEMARCUS K ALLISON**
*Georgia account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 061000227

### Interest summary

| | |
|---|---|
| Interest paid this statement | $0.38 |
| Average collected balance | $42,949.85 |
| Annual percentage yield earned | 0.01% |
| Interest earned this statement period | $0.38 |
| Interest paid this year | $0.38 |
| Total interest paid in 2016 | $5.07 |

### Transaction history

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|
| 1/20 | Interest Payment | 0.38 | | 42,950.23 |
| Ending balance on 1/20 | | | | 42,950.23 |
| Totals | | $0.38 | $0.00 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

### Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 12/20/2016 - 01/20/2017 | Standard monthly service fee $5.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Minimum daily balance | $300.00 | $42,949.85 ☑ |
| Daily automatic transfer from a Wells Fargo checking account | $1.00 | $0.00 ☐ |
| Save As You Go® transfer from a Wells Fargo checking account | $1.00 | $0.00 ☐ |
| Monthly automatic transfer from a Wells Fargo checking account | $25.00 | $0.00 ☐ |
| The fee is waived when the primary account owner is under the age of 18 (19 in Alabama) | | |

ABBAB

Exhibit E

Primary account number: ▮▮▮▮    ▪ December 20, 2016 - January 20, 2017    ▪ Page 4 of 4

WELLS FARGO

## Worksheet to balance your account

Follow the steps below to reconcile your statement balance with your account register balance. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

**A** Enter the ending balance on this statement.    $ _____

**B** List outstanding deposits and other credits to your account that do not appear on this statement. Enter the total in the column to the right

| Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
| Total $ |  |

+ $ _____

**C** Add **A** and **B** to calculate the subtotal    = $ _____

**D** List outstanding checks, withdrawals, and other debits to your account that do not appear on this statement. Enter the total in the column to the right

| Number/Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Total $ |  |

- $ _____

**E** Subtract **D** from **C** to calculate the adjusted ending balance. This amount should be the same as the current balance shown in your register    = $ _____

## General statement policies for Wells Fargo Bank

▪ To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts. You have the right to dispute the accuracy of information that Wells Fargo Bank, N.A. has furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

▪ In case of errors or questions about your electronic transfers, telephone us at the number printed on the front of this statement or write us at Wells Fargo Bank, P.O. Box 6995, Portland, OR 97228-6995 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any)
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information
3. Tell us the dollar amount of the suspected error

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

©2010 Wells Fargo Bank, N.A. All rights reserved NMLSR ID 399801    Member FDIC

Exhibit E



**RUBIN LUBLIN, LLC**

Attorneys and Counselors at Law
3145 Avalon Ridge Place. Suite 100
Peachtree Corners. GA 30071
TEL (877) 813-0992
FAX (404) 601-5846

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Copy Via Regular Mail

February 12, 2019

LEMARCUS ALLISON
250 MONTROSE DR
MCDONOUGH, GA 30253

*Notice of Acceleration and Foreclosure*

File No.:         ▇▇▇▇▇▇▇▇▇
Loan:            **Note, and Security Deed from LEMARCUS ALLISON to**
                 **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS**
                 **NOMINEE FOR CALCON MUTUAL MORTGAGE LLC**
                 **("Original Lender")**
Property Address:  **250 MONTROSE DR, MCDONOUGH, GA 30253**

          Please be advised that this law firm represents CalCon Mutual Mortgage LLC
("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan.
By separate communication you may have been advised of your rights under the Fair Debt
Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding.  Nothing in
this letter shall prevent you from exercising those rights as set forth in that communication.  This
letter is to advise you that we are hereby instituting non-judicial foreclosure proceedings against
the referenced property.  Enclosed you will find a copy of the Notice of Sale Under Power that
was submitted for publication in the legal newspaper in the county where the property is located.
The foreclosure sale is scheduled for **April 2, 2019** ("Sale Date").

          The entire amount of the debt secured by said Note and Security Deed has now been
declared due and payable because of, among other possible defaults. failure to pay the
indebtedness as and when due and in the manner specified in the Note and Security Deed. *The
total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued
interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges.
To find out the amount needed to either bring the Loan current or to pay off the Loan in full,
please call 1-866-397-5370.*
**(Continued on back/next page)**

▇▇▇▇▇▇▇▇

Exhibit E

Please be advised that the Foreclosing Entity intends to enforce the provisions of said Note and Security Deed relative to payment of attorneys' fees. Unless the full amount owed on this Loan is paid within ten (10) days from the date of receipt of this letter, reasonable attorneys' fees, as defined by the Official Code of Georgia Annotated Section ("O.C.G.A.") § 13-1-11, will also be owed.  Please be further advised that from this point forward, strict compliance with the current terms of the Loan will be required pursuant to O.C.G.A. § 13-4-4.

In some circumstances the Loan, State Law, and/or the Foreclosing Entity may allow the default on the Loan to be cured and stopping the foreclosure prior to the sale date.  You may contact this office to find out if reinstatement of the Loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default.  Please be advised that if the default is allowed to be cured on the Loan, payment must be made in the form of cash, cashier's check or certified funds or wired to be received sufficiently in advance of the Sale Date to allow for cancellation of the sale and pursuant to the terms of the Loan.

If you are currently or have within the last twelve (12) months been in the military service AND joined after the date of the Loan, please notify this office immediately.  You may be entitled to relief under the Servicemembers Civil Relief Act.  You may also call 1-800-342-9647 for further assistance or visit www.militaryonesource.com/SCRA.  When contacting this office as to your military service, you must provide us with positive proof as to your military status.  If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

We do not believe that you are represented by counsel.  If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them.  If we do not hear from you we will assume that you are not represented by counsel in relation to the foreclosure.

This notice is not intended to collect the debt against you personally or indicate that you are personally liable for this debt.  This notice relates solely to an enforcement of rights with respect to the above-referenced property.

This letter is notice to the extent the FDCPA applies.  Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the Foreclosing Entity.

Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Exhibit E

000089

## NOTICE OF SALE UNDER POWER

GEORGIA, HENRY COUNTY

By virtue of a Power of Sale contained in that certain Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC, dated March 24, 2017, recorded March 27, 2017, in Deed Book 15151, Page 282-295, Henry County, Georgia Records, said Security Deed having been given to secure a Note of even date in the original principal amount of Four Hundred Twenty-Four Thousand One Hundred and 00/100 dollars ($424,100.00), with interest thereon as provided for therein, said Security Deed having been last sold, assigned and transferred to CalCon Mutual Mortgage LLC. there will be sold at public outcry to the highest bidder for cash at the Henry County Courthouse, within the legal hours of sale on the **first Tuesday in April,** **2019,** all property described in said Security Deed including but not limited to the following described property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 47 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA. BEING LOT 9, BLOCK F, EAGLES LANDING, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK 18, PAGE 173, HENRY COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY THIS REFERENCE.

Said legal description being controlling, however the property is more commonly known as **250 MONTROSE DR, MCDONOUGH, GA 30253.**

The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed and Note. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys' fees (notice to collect same having been given) and all other payments provided for under the terms of the Security Deed and Note.

Said property will be sold on an "as-is" basis without any representation. warranty or recourse against the above-named or the undersigned. The sale will also be subject to the following items which may affect the title: any outstanding ad valorem taxes (including taxes which are a lien, whether or not now due and payable); the right of redemption of any taxing authority; matters which would be disclosed by an accurate survey or by an inspection of the property; all zoning ordinances; assessments; liens; encumbrances; restrictions; covenants, and any other matters of record superior to said Security Deed.

To the best of the knowledge and belief of the undersigned, the owner and party in possession of the property is LEMARCUS ALLISON. or tenants(s).

The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed.

Please note that, pursuant to O.C.G.A. § 44-14-162.2, you are not entitled by law to an amendment or modification of the terms of your loan. The entity having full authority to negotiate, amend or modify all terms of the loan (although not required by law to do so) is: CalCon Mutual Mortgage LLC, Loss Mitigation Dept., 1 Corporate Drive, Ste 360, Lake Zurich, IL 60047, Telephone Number: 1-866-397-5370.

**CALCON MUTUAL MORTGAGE LLC**
as Attorney in Fact for
LEMARCUS ALLISON

Exhibit E

000090

THE BELOW LAW FIRM MAY BE HELD TO BE ACTING AS A DEBT COLLECTOR, UNDER FEDERAL LAW.  IF SO, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Attorney Contact: Rubin Lublin, LLC, 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071
Telephone Number: (877) 813-0992 Case No. ▮▮▮▮▮▮▮▮▮
Ad Run Dates  03/06/2019, 03/13/2019, 03/20/2019, 03/27/2019

rubinlublin.com/property-listing

Exhibit E

# Exhibit F

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

LEMARCUS ALLISON,                    )
                                     )
        Plaintiff,                   )
                                     )        Civil Action No.
        v.                           )        19-A-02887-4
                                     )
CALCON MUTUAL MORTGAGE LLC, and      )
PENNYMAC LOAN SERVICES, LLC,         )
                                     )
        Defendants.                  )
                                     )

## TEMPORARY RESTRAINING ORDER

This cause was heard by the undersigned judge upon the application of the Plaintiff for a temporary restraining order and preliminary injunction. It appears from the verified complaint that plaintiff would suffer immediate and irreparable injury if Defendant CalCon Mutual Mortgage LLC ("CalCon") or Defendant PennyMac Loan Services, LLC ("PennyMac") (collectively, "Defendants") were to proceed with their efforts to non-judicially foreclose Plaintiff's property during the pendency of this litigation.

IT IS THEREFORE ORDERED that the Defendants are hereby restrained from non-judicially foreclosing upon Plaintiff's property located at 250 Montrose Drive, McDonough, Henry County, Georgia 30253.

IT IS FURTHER ORDERED that a copy of the Temporary Restraining Order shall be served upon each Defendant in the manner now provided for service of process.

So Ordered, this the _____ day of _____, 20_____.


                                     _____
                                     HONORABLE JUDGE


TRO Application Page 12 of 17

Exhibit F

Order Presented by

**STEVENS, STEVENS & OLIVER, LLC**
Andrew M. Stevens
Georgia Bar No. 680632
4167 Roswell Road
Suite A Floor 1
Atlanta, GA 30342
(770) 393-8900
astevens@lawstevens.com
*Attorney for Plaintiff*

Exhibit F

000093

**IN THE SUPERIOR COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

FILED IN OFFICE
CLERK SUPERIOR COURT
WETT COUNTY, GA

2019 APR -9 PM 4: 23

RICHARD ALEXANDER, CLERK

LEMARCUS ALLISON,

    Plaintiff,

v.

CALCON MUTUAL MORTGAGE LLC and
PENNYMAC LOAN SERVICES, LLC,

    Defendants.

Case No. 19-A-02887-4

## ORDER

This matter is before the Court on the Plaintiff's Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction. The Plaintiff is seeking to enjoin a foreclosure sale of the property located at 250 Montrose Drive, McDonough, Henry County, Georgia 30253 (the "Property"). Defendant CalCon Mutual Mortgage, LLC ("CalCon") had scheduled a sale for April 4, 2019, which was enjoined by a temporary restraining order entered on March 28, 2019. The request for an interlocutory injunction was heard on April 8, 2019.

Upon review of the record, applicable law, and arguments of counsel, the Court finds that it is inappropriate to grant an interlocutory injunction. Accordingly, the Plaintiff's Request for Interlocutory Injunction is hereby **DENIED** and the temporary restraining order, entered on March 28, 2019, is **DISSOLVED**.

**SO ORDERED**, this ⬥ day of April, 2019

HON. RANDY RICH
Superior Court Judge

Copies to:
All counsel of record and pro se parties

1

Exhibit F

000094

**PREPARED AND PRESENTED BY:**

_____

BRET J. CHANESS (GA Bar No. 720572)
Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rubinlublin.com

_Attorney for CalCon Mutual Mortgage, LLC_

Exhibit F

# Exhibit G

# RUBIN LUBLIN, LLC
## Attorneys and Counselors at Law
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (404) 601-5846

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Copy Via Regular Mail**

April 23, 2019

LEMARCUS ALLISON
250 MONTROSE DR
MCDONOUGH, GA 30253

### *Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | ████████ |
| **Loan:** | **Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC ("Original Lender")** |
| **Property Address:** | **250 MONTROSE DR, MCDONOUGH, GA 30253** |

       Please be advised that this law firm represents CalCon Mutual Mortgage LLC ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we are hereby instituting non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Sale Under Power that was submitted for publication in the legal newspaper in the county where the property is located. The foreclosure sale is scheduled for **June 4, 2019** ("Sale Date").

       The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed. ***The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges. To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 1-866-397-5370.***
**(Continued on back/next page)**

Exhibit G

Please be advised that the Foreclosing Entity intends to enforce the provisions of said Security Deed relative to payment of attorneys' fees. Unless the full amount owed on this Loan is paid within ten (10) days from the date of receipt of this letter, reasonable attorneys' fees, as defined by the Official Code of Georgia Annotated Section ("O.C.G.A.") § 13-1-11, will also be owed.  Please be further advised that from this point forward, strict compliance with the current terms of the Loan will be required pursuant to O.C.G.A. § 13-4-4.

In some circumstances the Loan, State Law, and/or the Foreclosing Entity may allow the default on the Loan to be cured and stopping the foreclosure prior to the sale date.  You may contact this office to find out if reinstatement of the Loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default.  Please be advised that if the default is allowed to be cured on the Loan, payment must be made in the form of cash, cashier's check or certified funds or wired to be received sufficiently in advance of the Sale Date to allow for cancellation of the sale and pursuant to the terms of the Loan.

If you are currently or have within the last twelve (12) months been in the military service AND joined after the date of the Loan, please notify this office immediately.  You may be entitled to relief under the Servicemembers Civil Relief Act.  You may also call 1-800-342-9647 for further assistance or visit www.militaryonesource.com/SCRA.  When contacting this office as to your military service, you must provide us with positive proof as to your military status.  If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

We do not believe that you are represented by counsel.  If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them.  If we do not hear from you we will assume that you are not represented by counsel in relation to the foreclosure.

This notice is not intended to collect the debt against you personally or indicate that you are personally liable for this debt.  This notice relates solely to an enforcement of rights with respect to the above-referenced property.

This letter is notice to the extent the FDCPA applies.  Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the Foreclosing Entity.

Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Exhibit G

000098



Georgia
Public Notice

About Public Notices | Help

Search Results

Notice Publish Date:
Wednesday, May 08, 2019

📧 EMAIL    🖨 PRINT    ‹ Back

‹ Back

Select Language ▾
Powered by Google Translate

⌂ ▸ Search Results ▸ Public Notice Detail

## Notice Content

NOTICE OF SALE UNDER POWER GEORGIA, HENRY COUNTY By virtue of a Power of Sale contained in that certain Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC, dated March 24, 2017, recorded March 27, 2017, in Deed Book 15151, Page 282-295, Henry County, Georgia Records, said Security Deed having been given to secure a Note of even date in the original principal amount of Four Hundred Twenty-Four Thousand One Hundred and 00/100 dollars ($424,100.00), with interest thereon as provided for therein, said Security Deed having been last sold, assigned and transferred to CalCon Mutual Mortgage LLC, there will be sold at public outcry to the highest bidder for cash at the Henry County Courthouse, within the legal hours of sale on the first Tuesday in June, 2019, all property described in said Security Deed including but not limited to the following described property: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 47 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 9, BLOCK F, EAGLES LANDING, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK 18, PAGE 173, HENRY COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY THIS REFERENCE. Said legal description being controlling, however the property is more commonly known as 250 MONTROSE DR, MCDONOUGH, GA 30253. The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys fees (notice to collect same having been given) and all other payments provided for under the terms of the Security Deed. Said property will be sold on an as-is basis without any representation, warranty or recourse against the above-named or the undersigned. The sale will also be subject to the following items which may affect the title: any outstanding ad valorem taxes (including taxes which are a lien, whether or not now due and payable); the right of redemption of any taxing authority; matters which would be disclosed by an accurate survey or by an inspection of the property; all zoning ordinances; assessments; liens; encumbrances; restrictions; covenants, and any other matters of record superior to said Security Deed. To the best of the knowledge and belief of the undersigned, the owner and party in possession of the property is LEMARCUS ALLISON, or tenant(s). The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed. Please note that, pursuant to O.C.G.A. 44-14-162.2, you are not entitled by law to an amendment or modification of the terms of your loan. The entity having full authority to negotiate, amend or modify all terms of the loan (although not required by law to do so) is: CalCon Mortgage LLC, Loss Mitigation Dept., 1 Corporate Drive, Ste 360, Lake Zurich, IL 60047, Telephone Number: 1-866-397-5370. CALCON MUTUAL MORTGAGE LLC as Attorney in Fact for LEMARCUS ALLISON THE BELOW LAW FIRM MAY BE HELD TO BE ACTING AS A DEBT COLLECTOR, UNDER FEDERAL LAW. IF SO, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Attorney Contact: Rubin Lublin, LLC, 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071 Telephone Number: (877) 813-0992 Case No. CAL-19-02690-3 05/08/2019, 05/15/2019, 05/22/2019, 05/29/2019 rlselaw.com/property/listing 950-597513, 5/8,15,22,29

🛈 **Henry Daily Herald**

Henry
Daily Herald

**Publication Names:**
Henry Daily Herald

**Publication City and State:**
McDonough, GA

**Publication URL:**

**Publication Country:**
Henry

**Notice Popular Keyword Category:**

**Notice Keywords:**

**Notice Authentication Number:**

**Notice URL:**



Exhibit G

Tracking #: 9214890146323500000429235

Recipient: LEMARCUS ALLISON
250 MONTROSE DR
MCDONOUGH

| Date & Time | Event Type | Event | Event Location |
|---|---|---|---|
| 05/01/2019 08:41 | | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | PEACHTREE CORNERS,GA, 30092 |
| 05/01/2019 21:57 | | ORIGIN ACCEPTANCE | PEACHTREE CORNERS,GA, 30092 |
| 05/01/2019 23:12 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 05/02/2019 17:36 | | PROCESSED THROUGH USPS FACILITY | ATLANTA,GA, 30304 |
| 05/03/2019 02:32 | | PROCESSED THROUGH USPS FACILITY | ATLANTA,GA, 30304 |
| 05/03/2019 11:20 | | ARRIVAL AT UNIT | MCDONOUGH,GA, 30253 |
| 05/03/2019 12:13 | | SORTING/PROCESSING COMPLETE | MCDONOUGH,GA, 30253 |
| 05/03/2019 12:23 | | OUT FOR DELIVERY | MCDONOUGH,GA, 30253 |
| 05/03/2019 14:59 | | NO AUTHORIZED RECIPIENT AVAILABLE | MCDONOUGH,GA, 30253 |
| 05/08/2019 03:05 | | REMINDER TO SCHEDULE REDELIVERY | MCDONOUGH,GA, 30253 |
| 05/18/2019 04:56 | | PACKAGE RETURN NOTICE GENERATED | MCDONOUGH,GA, 30253 |
| 06/06/2019 15:56 | | UNCLAIMED/BEING RETURNED TO SENDER | MCDONOUGH,GA, 30253 |
| 06/09/2019 18:35 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 06/10/2019 22:40 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 06/11/2019 07:36 | | ARRIVAL AT UNIT | NORCROSS,GA, 30071 |
| 06/11/2019 08:32 | | DELIVERED TO ORIGINAL SENDER | NORCROSS,GA, 30091 |

Exhibit G

# Exhibit H

# RUBIN LUBLIN, LLC

### Attorneys and Counselors at Law
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (404) 601-5846

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**

July 29, 2019

LEMARCUS ALLISON
250 MONTROSE DRIVE
MCDONOUGH, GA 30253

### *Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | ▮▮▮▮▮▮▮ |
| **Loan:** | **Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC ("Original Lender")** |
| **Property Address:** | **250 MONTROSE DRIVE, MCDONOUGH, GA 30253** |

Please be advised that this law firm represents CalCon Mutual Mortgage LLC ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we are hereby instituting non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Sale Under Power that was submitted for publication in the legal newspaper in the county where the property is located. The foreclosure sale is scheduled for **September 3, 2019** ("Sale Date").

The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed. *The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges.  To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 1-866-397-5370.* **(Continued on back/next page)**

Exhibit H

000100

Please be advised that the Foreclosing Entity intends to enforce the provisions of said Security Deed relative to payment of attorneys' fees. Unless the full amount owed on this Loan is paid within ten (10) days from the date of receipt of this letter, reasonable attorneys' fees, as defined by the Official Code of Georgia Annotated Section ("O.C.G.A.") § 13-1-11, will also be owed. Please be further advised that from this point forward, strict compliance with the current terms of the Loan will be required pursuant to O.C.G.A. § 13-4-4.

In some circumstances the Loan, State Law, and/or the Foreclosing Entity may allow the default on the Loan to be cured and stopping the foreclosure prior to the sale date. You may contact this office to find out if reinstatement of the Loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default. Please be advised that if the default is allowed to be cured on the Loan, payment must be made in the form of cash, cashier's check or certified funds or wired to be received sufficiently in advance of the Sale Date to allow for cancellation of the sale and pursuant to the terms of the Loan.

If you are currently or have within the last twelve (12) months been in the military service AND joined after the date of the Loan, please notify this office immediately. You may be entitled to relief under the Servicemembers Civil Relief Act. You may also call 1-800-342-9647 for further assistance or visit www.militaryonesource.com/SCRA. When contacting this office as to your military service, you must provide us with positive proof as to your military status. If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

We do not believe that you are represented by counsel. If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them. If we do not hear from you we will assume that you are not represented by counsel in relation to the foreclosure.

This notice is not intended to collect the debt against you personally or indicate that you are personally liable for this debt. This notice relates solely to an enforcement of rights with respect to the above-referenced property.

This letter is notice to the extent the FDCPA applies. Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the Foreclosing Entity.

<u>Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.</u>

Exhibit H



Georgia
Public Notice

About Public Notices | Help

Share Select a Name

← Back    ✉ EMAIL    🖨 PRINT

🏠 > Notice Details > Notice Details Detail

Notice Content

NOTICE OF SALE UNDER POWER, GEORGIA, HENRY COUNTY By virtue of a Power of Sale contained in that certain Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC., dated March 24, 2017, recorded March 27, 2017, in Deed Book 15131, Page 289-295 , Henry County, Georgia Records, said Security Deed having been given to secure a Note of even date in the original principal amount of Four Hundred Twenty-Four Thousand One Hundred and 00/100 dollars ($424,100.00), with interest thereon as provided for therein, said Security Deed having been last sold, assigned and transferred to CalCon Mutual Mortgage LLC, there will be sold at public outcry to the highest bidder for cash at the Henry County Courthouse, within the legal hours of sale on the First Tuesday in September, 2019, all property described in said Security Deed including but not limited to the following described property: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 47 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 9, BLOCK F, SALEM LANDING, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK 18, PAGE 173, HENRY COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY THIS REFERENCE. Said legal description being controlling, however the property is more commonly known as 250 MONTROSE DRIVE, MCDONOUGH, GA 30253. The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys fees (notice to collect same having been given) and all other payments provided for under the terms of the Security Deed. Said property will be sold on an as-is basis without any representation, warranty or recourse against the above-named or the undersigned. The sale will also be subject to the following items which may affect the title: any outstanding ad valorem taxes (including taxes which are a lien, whether or not now due and payable); the right of redemption of any taxing authority; matters which would be disclosed by an accurate survey or by an inspection of the property; all zoning ordinances; assessments; liens; encumbrances; restrictions; covenants, and any other matters of record superior to said Security Deed. To the best of the knowledge and belief of the undersigned, the owner and party in possession of the property is LEMARCUS ALLISON, or tenant(s). The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed. Please note that, pursuant to O.C.G.A. §44-14-162.2, you are not entitled by law to an amendment or modification of the terms of your loan. The entity having full authority to negotiate, amend or modify all terms of the loan (although not required by law to do so) is: CalCon Mutual Mortgage LLC, Loss Mitigation Dept, 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047, Telephone Number: 1-866-397-5370. CALCON MUTUAL MORTGAGE LLC as Attorney-in-Fact for LEMARCUS ALLISON THE BELOW LAW FIRM MAY BE HELD TO BE ACTING AS A DEBT COLLECTOR, UNDER FEDERAL LAW. IF SO, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Attorney Contact: Rubin, Lublin, LLC, 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071 Telephone Number: (877) 813-0992 Case No. DCAL-18-06713-12 Ad Run Dates 08/07/2019, 08/14/2019, 08/21/2019, 08/28/2019 rlselaw.com/property-listing 950-608507, 8/7,14,21,28

Notice Publish Date:
Wednesday, August 07, 2019

← Back

Select Language ⌄
Powered by Google Translate

---

I

🗞 Henry Daily Herald

Henry Daily Herald

Publication Name:
Henry Daily Herald

Publication URL:

Publication City and State:
McDonough, GA

Publication County:
Henry

Notice Popular Keyword Category:

Notice Keywords:
DCAL-18-06713-12

Notice Authentication Number:
201908071043392544150

Notice URL:

Exhibit H

# Tracking History

Tracking #: 9214890146323500000473771

Recipient: LEMARCUS ALLISON
250 MONTROSE DRIVE
MCDONOUGH

| Date & Time | Event Type | Event | Event Location |
|---|---|---|---|
| 07/30/2019 07:43 | | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | PEACHTREE CORNERS,GA, 30092 |
| 07/30/2019 20:58 | | ORIGIN ACCEPTANCE | PEACHTREE CORNERS,GA, 30092 |
| 07/30/2019 22:13 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 07/31/2019 07:57 | | PROCESSED THROUGH USPS FACILITY | ATLANTA,GA, 30304 |
| 08/01/2019 13:08 | | NO AUTHORIZED RECIPIENT AVAILABLE | MCDONOUGH,GA, 30253 |
| 08/06/2019 03:38 | | REMINDER TO SCHEDULE REDELIVERY | MCDONOUGH,GA, 30253 |
| 08/16/2019 03:27 | | PACKAGE RETURN NOTICE GENERATED | MCDONOUGH,GA, 30253 |
| 08/21/2019 16:47 | | UNCLAIMED/BEING RETURNED TO SENDER | MCDONOUGH,GA, 30253 |
| 08/23/2019 08:46 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 08/25/2019 18:47 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 08/26/2019 07:55 | | ARRIVAL AT UNIT | NORCROSS,GA, 30071 |
| 08/26/2019 08:49 | | OUT FOR DELIVERY | NORCROSS,GA, 30071 |
| 08/26/2019 08:54 | | DELIVERED TO ORIGINAL SENDER | NORCROSS,GA, 30091 |

000103

# Exhibit I

Fulton County Superior Court
***EFILED***CS
Date:  8/23/2019 10:37 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

LEMARCUS ALLISON,

      Plaintiff,

vs.

CALCON MUTUAL MORTGAGE, LLC;
ONETRUST HOME LOANS DBA CALCON
MUTUAL MORTGAGE, LLC;
MATTHEW ALLEN DLUGOLENSKI;
JOSHUA ERSKINE; SHANE ERSKINE; AND
RUBIN LUBLIN, LLC,

      Defendants.

Civil Action No.

    2019CV325653

### COMPLAINT FOR DECLARATORY JUDGMENT & INJUNCTIVE RELIEF

COMES NOW, Plaintiff, *LEMARCUS ALLISON* ("Plaintiff") seeking a declaratory judgment by virtue of the provisions of the Declaratory Judgment Act, Ga. Code Ann. §§ 9-4-1 et seq. and injunctive relief pursuant to § 9-4-3 against Defendants, *CALCON MUTUAL MORTGAGE, LLC; ONETRUST HOME LOANS DBA CALCON MUTUAL MORTGAGE, LLC; MATTHEW ALLEN DLUGOLENSKI; JOSHUA ERSKINE; SHANE ERSKINE; AND RUBIN LUBLIN, LLC* ("Defendants") and shows to the court the following facts:

### INTRODUCTION

Plaintiff brings this Complaint for Declaratory Judgment & Injunctive Relief pursuant to Ga. Code Ann. §§ 9-4-1 et seq., and Uniform Superior Court Rule 6.7 against the listed Defendants. Specifically, Plaintiff seeks an injunction pursuant to Ga. Code Ann. § 9-4-3 to enjoin the enforcement of the power of sale between Plaintiff and Calcon Mutual Mortgage, LLC and establish that Plaintiff is not in default pursuant to paragraph 8 and has the contractual right to cure the alleged default pursuant to paragraphs 19 and 22 of the subject Security Deed. *See* **Exhibit A.**

Exhibit I

## JURISDICTION, VENUE, AND PARTIES

**1.**

Subject matter jurisdiction is proper as the Superior Court has jurisdiction pursuant to Ga. Code Ann. § 9-4-2.

**2.**

Defendant, *CALCON MUTUAL MORTGAGE, LLC,* is a foreign corporation, organized and existing under the laws of California authorized to do business in Georgia, whose principal place of business is located at 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92018. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign corporation qualified to do business in this state, may be served by delivering a copy of the Summons and Complaint to its registered agent Paracorp Incorporated at 453 Hardy Ives Lane, Lawrenceville, GA 30045, pursuant to Ga. Code Ann. § 9-11-4 (West).[1]

**3.**

Defendant, *ONETRUST HOME LOANS dba Calcon Mutual Mortgage, LLC,* is a foreign entity, organized and existing under the laws of another state and authorized to do business in Georgia, whose principal place of business is located at 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92018. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign entity, is qualified to do business in this state may be served by by delivering a copy of the Summons and Complaint to its registered agent Paracorp Incorporated at 453 Hardy Ives Lane, Lawrenceville, GA 30045, pursuant to Ga. Code Ann. § 9-11-4 (West).

---

[1] Am. Photocopy Equip. Co. v. Lew Deadmore & Associates, Inc., 127 Ga. App. 207, 211, 193 S.E.2d 275, 278 (1972)

2



000105

Exhibit I

**4.**

Defendant, *MATTHEW ALLEN DLUGOLENSKI*, is a resident of California and subject to the jurisdiction of this court as he does business in Georgia. Defendant, as a foreign resident, is qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

**5.**

Defendant, *JOSHUA ERSKINE*, is a resident of California and subject to the jurisdiction of this court as he does business in Georgia. Defendant, as a foreign resident, is qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

**6.**

Defendant, *SHANE ERSKINE*, is a resident of California and subject to the jurisdiction of this court as he does business in Georgia. Defendant, as a foreign resident, is qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

**7.**

Defendant, *RUBLIN LUBLIN, LLC,* is a domestic limited liability company, organized and existing under the laws of Georgia and authorized to do business in Georgia, whose principal place of business is located at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071. Defendant is subject to the Jurisdiction of this Court as being a domestic limited liability company. Defendant may be served by delivering a copy of the Summons and Complaint to its registered agent Peter Lublin at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071, pursuant to Ga. Code Ann. § 9-11-4 (West).

## DECLARATORY JUDGMENT ACTION PROPER

**8.**

A declaratory judgment is not an equitable action but, an action at law. *See,* <u>Felton v. Chandler</u>,



000106

Exhibit I

201 Ga. 347(2, 3, 4), 39 S.E.2d 654; Glover v. Glover, 172 Ga. App. 278, 279, 322 S.E.2d 755,

757 (1984) A declaratory judgment action is the proper procedural vehicle to resolve the parties'

dispute as "[d]isputes concerning ownership of ... land are classic candidates for resolution via

declaratory judgment. [Cits.]" J.M. Huber Corp. v. Ga. Marble Co., 239 Ga.App. 271, 273(1), 520

S.E.2d 296 (1999). See, Smith v. Jones, 278 Ga. 661, 604 S.E.2d 187, 188 (2004); Loftis v.

Johnson, 249 Ga. 794, 294 S.E.2d 511, 512 (1982) (Suit was filed seeking declaratory judgment

that warranty deed was null and void by reason of the incompetency of the parties' mother.)


The facts alleged in this case present the most nearly perfect basis for the application of

declaratory judgment jurisdiction. They show an actual controversy between parties that have an

antagonistic interest, consisting of a claim of right to legal title on one side and denial on the other.

They show a justifiable controversy and a protectable legal interest. The danger or dilemma of the

petitioner is present and does not depend on a contingency or the happening of a hypothetical

future event, and the fact that the defendant has currently instituted an action on its claim makes

petitioner's rights to a declaratory judgment not dependent on a contingency. The petitioner's right

to relief from uncertainty and insecurity with respect to his right to title and his legal relations with

the defendant are present, real and urgent. He is entitled to know whether he is default and has the

right to enforce the contractual terms of the security deed or if the adverse party can create a

default and foreclose on his property, whether he owns the land and can use it or sell it or whether

he is and has been and will continue to in effect be the property owner, or whether defendants are

trespassing. And, so far as the facts show this action is the exclusive remedy. This petition is not

based solely on a question of fact primarily, the question of the right to reinstate and satisfy his

indebtedness to defendants. Legal title, interests and relationships are at stake and the mere



Exhibit I

000107

circumstance that a fact determines what they are is incidental. In <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 242 57 S.Ct. 461, 465, 81 L.Ed. 617, the court stated: 'That the dispute turns upon questions of fact does not withdraw it... from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is everyday practice.' The suitability of application for relief by prayer for a negative declaration is clear from the Act of 1945, pp. 137, 139, Ga.Code Ann. § 110-1111. To call such a prayer negative has been called a colloquialism, and has been said to describe a positive declaration that no right exists on the part of the defendant. Borchard, p.229. For citations of other cases involving findings of fact as incidental to legal conclusions, See Borchard, pp. 396, 629. A debtor, faced with the *unfounded claim of a creditor*, has a sufficient legal interest to justify a declaratory adjudication that such indebtedness has no basis. Borchard, Declaratory Judgments 2d Ed., p. 55. Suppose H alleges that S owes him $1,000 which S denies. Without waiting for H to commence suit, S may assert his right to relief from the insecurity of an unfounded claim by obtaining a declaratory judgment.' 'That, of course, is a situation different from what we have here. There, the purpose of the action would be to get a determination of whether the status of debtor and creditor existed between the parties, not determination of how much S owes H growing out of that status.' See 16 Am.Jur. §§ 31 & 32 and 1950 Pocket Parts for authority for declaring rights and status where the validity of deeds and contracts are in question. <u>Bond v. Ray</u>, 83 Ga. App. 817, 819-21, 65 S.E.2d 30, 31-32 (1951).

## STATEMENT OF FACTS

Plaintiff shows that there is an actual controversy between the Plaintiff and Defendants, growing out of the following statement of facts, to-wit:



Exhibit I

000108

**9.**

The subject real property is located at 250 Montrose Drive, McDonough, GA 30253 (hereinafter the "Subject Property") having a legal description described in Exhibit B attached hereto. *See* **Exhibit B.**

**10.**

The plaintiff acquired the subject property through a Warranty Deed on March 24, 2017. This Deed is filed and recorded in the Superior Court of Henry County Real Estate Records at Deed Book 15151 Page 281. *See* **Exhibit C.**

**11.**

On or about, January 15, 2017, plaintiff applied for a loan with the defendant, Calcon Mutual Mortgage LLC.

**12.**

At some time prior to March 24, 2017, plaintiff applied for a mortgage loan with Calcon. The application was submitted via a phone interview. During the phone interview Calcon asked plaintiff various questions concerning his finances.

**13.**

During the aforementioned phone interview, defendants filled out a loan application allegedly based on the phone interview by plaintiff. Plaintiff did not see the loan application created by defendants.

**14.**

Sometime before March 24, 2017, defendants notified plaintiff that he was qualified and approved for the aforementioned loan.

**15.**

On March 24, 2017, plaintiff appeared at defendants' attorney's office to execute the required documents to complete the closing of the aforementioned loan.



Exhibit I

**16.**

After March 24, 2017, plaintiff made each and every payment as mandated by the aforementioned

Note and Security Deed executed at closing.

**17.**

On or about December 1, 2018, defendants refused to accept plaintiff's timely payments as presented.

**18.**

On or about December 18, 2018, defendants sent plaintiff a Notice of Default alleging that plaintiff

was in violation of paragraphs 8 and 22 of the aforementioned Security Deed.

**19.**

Paragraph 8 of the aforementioned Security Deed states,

> "**Borrower's Loan Application.** Borrower shall be in default if, during the Loan application
>
> process, Borrower or any persons or entities acting at the direction of the Borrower or with
>
> Borrower's knowledge or consent gave materially false, misleading, or inaccurate information
>
> or statements to Lender (or failed to provide Lender with material information) in connection
>
> with the Loan.   Material representation include, but are not limited to, representations
>
> concerning Borrower's occupancy of the Property as Borrower's principal residence."

**20.**

Plaintiff has consistently and unequivocally stated that his cash assets were distributed between Bank

of America, Wells Fargo and cash.  Furthermore, plaintiff did not have knowledge nor give consent

nor personally give any materially false, misleading or inaccurate information or statements to lender

in connection with the loan, nor did plaintiff advise any person or entities at the direction of plaintiff

to provide such information.



7

Exhibit I

**21.**

For reasons unknown, the defendants decided to unilaterally create fraudulent bank statements to establish that plaintiff's cash assets were only deposited at Bank of America, when the defendants were well aware that plaintiff's assets were distributed between two Banks; Wells Fargo and Bank of America. The creation of these fraudulent documents by the defendants were unilaterally created without knowledge of plaintiff.

**22.**

Furthermore, the fraud of the defendants was of no material effect, as plaintiff's cash assets on deposit at Wells Fargo and Bank of America exceeded the fraudulent bank statements created by defendants.

**23.**

Defendants have taken the position that plaintiff cannot reinstate his loan pursuant to paragraph 22 unless he authenticates the fraudulent bank statements that were created by defendants. Defendants are well aware this is an impossibility as they created the fraudulent bank statements.

**24.**

Paragraphs 8, 19, and 22 of plaintiff's Security Deed explicitly states that plaintiff has an unqualified right to reinstates his loan if he did not give materially false, misleading, or inaccurate information or statements to Lender in connection with the Loan.

**25.**

Defendants have taken the position that the only way plaintiff can comply with the reinstatement provisions of paragraphs 8, 19 and 22 of the Security Deed is to authenticate the fraudulent statement(s) created by defendants.

**26.**

Defendants' position that plaintiff should suffer loss of property because of the fraudulent acts of



8

000111

Exhibit I

defendants is unconscionable and contrary to American jurisprudence.

<div align="center">

**27.**

</div>

If defendants' illegal, unconscionable and fraudulent acts are allowed to stand, plaintiff would suffer

an unconstitutional deprivation of property.

<div align="center">

### PLAINTIFF ALLEGES RIGHTS WITH REFERENCE TO SAID CONTROVERSY

**28.**

</div>

Plaintiff is not in default and has the absolute right to enforce the terms of the Security

Deed as written.

<div align="center">

**29.**

</div>

Plaintiff has absolute right to enforce the terms of the contract.  Plaintiff is not in default as he never

violated paragraph 8 of the aforementioned Security Deed.

<div align="center">

**30.**

</div>

Plaintiff applied for a loan through a phone interview, he freely and truthfully provided all

information requested by defendants, but defendants unilaterally decided to create fraudulent

documents and misstate several issues during the phone loan application.

<div align="center">

**31.**

</div>

Because any and all misstatements or inaccuracies contained in the loan application derived from the

fraudulent conduct of defendants, plaintiff is not in violation of paragraph 8 of the aforementioned

Security Deed.

<div align="center">

**32.**

</div>

Plaintiff request a declaration finding that plaintiff is not in default as defined by paragraph 8 of the

subject Security Deed and that plaintiff has the right to reinstate pursuant to paragraphs 19 and 22 of

the subject Security Deed.



9

<div align="center">

Exhibit I

</div>

## DEFENDANT'S CONTENTION WITH REFERENCE TO SAID CONTROVERSY

### 33.

Defendants contend that plaintiff is in violation of paragraph 8 because he is unable to authenticate the fraudulent documents created by defendants unbeknownst to plaintiff.

### 34.

Defendants contend that they can make unreasonable, unrealistic and impossible demands upon plaintiff in order to illegally and unconstitutionally deprive him of his property.

### 35.

Defendants have taken the position that the laws of this nation and this state only apply to defendants and not plaintiff.

## INJUNCTION

### 36.

In consideration of the facts herein alleged, Defendants should be restrained and enjoined by this Court from terminating its existing agreement with Plaintiff pending the adjudication of the questions raised in this petition, and in order to maintain the status quo pending the adjudication of such questions, in order to preserve the rights of the Plaintiff as hereinabove set out, this Court should grant a restraining order pending said adjudication.

### 37.

Although questions of fact are raised by this petition, the determination of the same by a jury is expressly waived by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that:



10

Exhibit I

a.  Process issue by publication law requiring the Defendants to answer this complaint as provided by law;

b.  That the Defendants be restrained and enjoined from exercising the power of sale until further order of this Court; and that the Defendants be required to show cause on a day certain why said restraining order and injunction should not be made permanent;

c.  That this Court enter a judgment in said matter declaring the rights of Plaintiff as sole owner of subject property;

d.  That this Court enter a judgment in said matter declaring the rights of Plaintiff as not in default pursuant to the terms of the security deed;

e.  That this Court enter a judgment in said matter declaring the rights of Plaintiff as having the right to reinstate the aforementioned loan;

f.  That this Court order Defendants to pay all cost of litigation, to include attorney's fees; and

g.  That Plaintiff have such other and further relief as this Court finds just and proper.

This 22nd day of August, 2019.                    Respectfully submitted,

                                                  _/s/ Grady Roberts_____
                                                  GRADY ROBERTS
                                                  Georgia Bar No. 609540
                                                  Attorney for Plaintiff
                                                  4470 Satellite Blvd, Suite 101
                                                  Duluth, GA  30096
                                                  (404) 794-7000 phone
                                                  (404) 794-7001 fax



11

Exhibit I

# EXHIBIT A



Exhibit I

8/21/2019

GSCCCA.org - Image Index

ЛЗ

BK: 15151 PG: 282-295
Filed and Recorded Mar-27-2017 03:01:07PM
DOC#: D2017-007891
Georgia Intangible Tax Paid $1,273.50

BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

BROCHSTEIN & BANTLEY, P.C.
827 FAIRWAYS COURT
SUITE 100
STOCKBRIDGE, GA  30281

When recorded, return to:
CalCon Mutual Mortgage LLC
Attn:  Post-Closing
3131 Camino Del Rio North, Suite 1680
San Diego, CA 92108
888-486-3807

RECEIVED IN OFFICE
HENRY COUNTY
CLERK OF SUPERIOR COURT
2017 MAR 27 AM 10: 09

Title Order No.:
Escrow No.:
LOAN #:

[Space Above This Line For Recording Data]

## SECURITY DEED

MIN
MERS PHONE #: 1-888-679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  March 24, 2017,          together with all Riders to this document.
(B) "Borrower" is  LEMARCUS ALLISON, AN UNMARRIED MAN.

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is  CalCon Mutual Mortgage LLC.

Lender is   A Limited Liability Company,                        organized and existing under the laws of
Delaware.                                            Lender's address is  3131 Camino Del Rio North,
Suite 1680, San Diego, CA 92108

(E) "Note" means the promissory note signed by Borrower and dated  March 24, 2017.          The Note
states that Borrower owes Lender  FOUR HUNDRED TWENTY FOUR THOUSAND ONE HUNDRED AND NO/100* *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  April 1, 2047.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                  Page 1 of 9

Initials: 
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit I

000116

8/21/2019                          GSCCCA.org - Image Index

BK: 15151 PG: 283 LOAN #: ▮▮▮▮

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider            ☒ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the  County                    [Type of Recording Jurisdiction] of    Henry
[Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: ▮▮▮▮▮▮▮

which currently has the address of 250 Montrose Drive, McDonough,

                                                                        [Street] [City]

Georgia   30253   ("Property Address"):
          [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01    Initials: ▮▮▮
Ellie Mae, Inc.                                  Page 2 of 9                          GAEDEED   0315
                                                                                      GAEDEED (CLS)
                                                                                      03/22/2017 01:52 PM PST





https://search.gsccca.org/imaging/HTML5Viewer.aspx?id=69643376&key1=15151&key2=281&county=75&countyname=HENRY&userid=585637&ap...    2/14

Exhibit I

000117

BK: 15151 PG: 284 LOAN #: ▮▮▮▮▮

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items,

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01    Initials: ▮▮
Ellie Mae, Inc.    Page 3 of 9    GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST



Exhibit I

000118

BK: 15151 PG: 285 LOAN #: ▮

unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                                          Initials: ___L.A.___
                              Page 4 of 9                        GAEDEED  0315
                                                                GAEDEED (CLS)
                                                        03/22/2017 01:52 PM PST



Exhibit I

000119

8/21/2019                                    GSCCCA.org - Image Index

BK: 15151 PG: 286 LOAN #: ▆▆▆

settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

    **6.**   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

    **7.**   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

    Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

    **8.**   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

    **9.**   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

    Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

    If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    **10.**  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for such termination until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                                                    Initials: _____
                                 Page 5 of 9                                    GAEDEED 0315
                                                                            GAEDEED (CLS)
                                                                            03/22/2017 01:52 PM PST



Exhibit I

000120

BK: 15151 PG: 287 LOAN #:

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
Page 6 of 9

Initials: _L A_
GAEDEED  0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST



Exhibit I

000121

BK: 15151 PG: 288 LOAN #: ▮

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.
Page 7 of 9
Initials: ___LA___
GAEDEED 0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST



Exhibit I

000122

BK: 15151 PG: 289 LOAN #:

Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
Ellie Mae, Inc.                                Page 8 of 9

Initials: 
GAEDEED    0315
GAEDEED (CLS)
03/22/2017 01:52 PM PST

Exhibit I

000123

BK: 15151 PG: 290 LOAN #: ███████

proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____          3-24-17     (Seal)
LEMARCUS ALLISON                            DATE

_____
Unofficial Witness

Notary Public,   Georgia

Henry    County

Lender: CalCon Mutual Mortgage LLC
NMLS ID: ███████
Loan Originator: Mathew Allen Dlugolenski
NMLS ID: ███████

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01          Initials: LA
Ellie Mae, Inc.                                              GAEDEED   0315
                            Page 9 of 9                       GAEDEED (CLS)
                                                             03/22/2017 01:52 PM PST

Exhibit I

# EXHIBIT B



Exhibit I

8/21/2019

GSCCCA.org - Image Index

BB File No.:

BK: 15151 PG: 291

### EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

Exhibit I

000126

# EXHIBIT C



Exhibit I



BK: 15151 PG: 281
Filed and Recorded Mar-27-2017 03:01:07PM
DOC#: D2017-007890
Real Estate Transfer Tax Paid $670.00
075201700216O
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

Return Recorded Document to:
Brochstein & Bantley, P.C.
827 Fairways Court, Suite 100
Stockbridge, GA 30281

## LIMITED WARRANTY DEED

**STATE OF GEORGIA**

**COUNTY OF Henry**                                  File # ▬▬▬▬

THIS INDENTURE, made the 24th day of March, 2017, between R.I.G. of Georgia, LLC, party of the first part, and LeMarcus Allison, party of the second part,

WITNESSETH That: the said party of the first part, for and in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) and other goods and valuable considerations in hand paid, at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said party of the second part, his heirs and assigns, the following described property:

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said bargained premises.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said party of the second part, his heirs and assigns, forever, in FEE SIMPLE.

AND THE SAID party of the first part, for his heirs, executors and administrators, will warrant and forever defend the right and title to the above described property, unto the said party of the second part, his heirs and assigns, against claims of all persons owning, holding or claiming by, through or under the said party of the first part.

IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal, the day and year above written.

Signed, sealed and delivered in the presence of:

_____                    R.I. G. of Georgia, LLC
Witness

                                                    _____
_____                    By: Susan Clowdus, Closing Agent
Notary Public

ALBERT G BANTLEY
COMMISSION EXPIRES
MAY 11 2017
HENRY CO. GEORGIA
NOTARY PUBLIC

2017 MAR 27 AM 10:09
CLERK OF SUPERIOR COURT
HENRY COUNTY
RECEIVED IN OFFICE

Exhibit I

000128

GEORGIA, FULTON COUNTY
I, DO CERTIFY THAT THE WITHIN AND FOREGOING IS A TRUE, COMPLETE
AND CORRECT COPY OF THE ORIGINAL IN SAID CASE, AS APPEARS BY
THE ORIGINAL ON FILE IN THE OFFICE OF THE CLERK OF FULTON
SUPERIOR COURT, CONSISTING OF _____ PAGES.
WITNESS, MY HAND AND THE SEAL OF SAID COURT THIS THE
_____ DAY OF _____, 20____.

DEPUTY CLERK, FULTON SUPERIOR COURT
Cathelene Robinson
CLERK OF THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

Exhibit I

000129

Fulton County Superior Court
***EFILED***QW
Date: 8/28/2019 12:33 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

LEMARCUS ALLISON,

       Plaintiff,

vs.

CALCON MUTUAL MORTGAGE, LLC;
ONETRUST HOME LOANS DBA CALCON
MUTUAL MORTGAGE, LLC;
MATTHEW ALLEN DLUGOLENSKI;
JOSHUA ERSKINE; SHANE ERSKINE; AND
RUBIN LUBLIN, LLC,

       Defendants.

Civil Action No. 2019CV325653

## VOLUNTARY DISMISSAL WITHOUT PREJUDICE

COMES NOW Plaintiff Lemarcus Allison, ("Plaintiff") and, pursuant to O.C.G.A. § 9-11-41, file this voluntary dismissal without prejudice of his Complaint contained in the above-referenced action.

This 28th day of August, 2019

Respectfully submitted,

*/s/ Grady Roberts*
GRADY ROBERTS
Georgia Bar No. 609540
ROBERTS LAW LLC
4470 Satellite Blvd.
Suite 101
Duluth, Georgia 30096
404-794-7000 (Phone)
404-794-7001 (Fax)
groberts@robertslawllc.com

Page 1 of 1



Exhibit I

000130

GEORGIA, FULTON COUNTY
I, DO CERTIFY THAT THE WITHIN AND FOREGOING IS A TRUE, COMPLETE
AND CORRECT COPY OF THE ORIGINAL IN SAID CASE, AS APPEARS BY
THE ORIGINAL ON FILE IN THE OFFICE OF THE CLERK OF FULTON
SUPERIOR COURT, CONSISTING OF _____ PAGES.
WITNESS MY HAND AND THE SEAL OF SAID COURT THIS THE
_____ DAY OF _____ Febrnary _____ 20 20

DEPUTY CLERK, FULTON SUPERIOR COURT
Cathelene Robinson
CLERK OF THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

Exhibit I

000131

# Exhibit J

E-FILED IN OFFICE - SC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**19-A-08827-4**
8/28/2019 2:27 PM

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

~CLERK OF SUPERIOR COURT

# Lemarcus Allison

CIVIL ACTION **19-A-08827-4**
NUMBER:

PLAINTIFF

VS.

Calcon Mutual Mortgage, LLC, et. al.

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Roberts Law, LLC**
**4470 Satellite Blvd,**
**Suite 101**
**Duluth, GA 30096**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____28TH_____ day of _____AUGUST_____, 20__19__.

Richard T. Alexander, Jr.,
Clerk of Superior Court

By_____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

Exhibit J

000132

E-FILED IN OFFICE - SC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**19-A-08827-4**
8/28/2019 2:27 PM

CLERK OF SUPERIOR COURT

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

LEMARCUS ALLISON,

      Plaintiff,

vs.

CALCON MUTUAL MORTGAGE, LLC;
ONETRUST HOME LOANS DBA CALCON
MUTUAL MORTGAGE, LLC;
MATTHEW ALLEN DLUGOLENSKI;
JOSHUA ERSKINE; SHANE ERSKINE; AND
RUBIN LUBLIN, LLC,

      Defendants.

Civil Action No.
**19-A-08827-4**

### EMERGENCYCOMPLAINT FOR DECLARATORY JUDGMENT & INJUNCTIVE

### RELIEF

COMES NOW, Plaintiff, *LEMARCUS ALLISON* ("Plaintiff") seeking a declaratory judgment by

virtue of the provisions of the Declaratory Judgment Act, Ga. Code Ann. §§ 9-4-1 et seq. and

injunctive relief pursuant to § 9-4-3 against Defendants, *CALCON MUTUAL MORTGAGE, LLC;*

*ONETRUST HOME LOANS DBA CALCON MUTUAL MORTGAGE, LLC; MATTHEW ALLEN*

*DLUGOLENSKI; JOSHUA ERSKINE; SHANE ERSKINE; AND RUBIN LUBLIN, LLC*

("Defendants") and shows to the court the following facts:

### INTRODUCTION

Plaintiff brings this Complaint for Declaratory Judgment & Injunctive Relief pursuant to Ga. Code

Ann. §§ 9-4-1 et seq., and Uniform Superior Court Rule 6.7 against the listed Defendants.

Specifically, Plaintiff seeks an injunction pursuant to Ga. Code Ann. § 9-4-3 to enjoin the

enforcement of the power of sale between Plaintiff and Calcon Mutual Mortgage, LLC and establish

that Plaintiff is not in default pursuant to paragraph 8 and has the contractual right to cure the alleged

1

Exhibit J

000133

default pursuant to paragraphs 19 and 22 of the subject Security Deed. *See* **Exhibit A.**

## JURISDICTION, VENUE, AND PARTIES

### 1.

Subject matter jurisdiction is proper as the Superior Court has jurisdiction pursuant to Ga. Code Ann. § 9-4-2.

### 2.

Defendant, *CALCON MUTUAL MORTGAGE, LLC,* is a foreign corporation, organized and existing under the laws of California authorized to do business in Georgia, whose principal place of business is located at 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92018. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign corporation qualified to do business in this state, may be served by delivering a copy of the Summons and Complaint to its registered agent Paracorp Incorporated at 453 Hardy Ives Lane, Lawrenceville, GA 30045, pursuant to Ga. Code Ann. § 9-11-4 (West).[1]

### 3.

Defendant, *ONETRUST HOME LOANS dba Calcon Mutual Mortgage, LLC,* is a foreign entity, organized and existing under the laws of another state and authorized to do business in Georgia, whose principal place of business is located at 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92018. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign entity, is qualified to do business in this state may be served by

---

[1] Am. Photocopy Equip. Co. v. Lew Deadmore & Associates, Inc., 127 Ga. App. 207, 211, 193 S.E.2d 275, 278 (1972)

2

Exhibit J

by delivering a copy of the Summons and Complaint to its registered agent Paracorp Incorporated at

453 Hardy Ives Lane, Lawrenceville, GA 30045, pursuant to Ga. Code Ann. § 9-11-4 (West).

## 4.

Defendant, *MATTHEW ALLEN DLUGOLENSKI*, is a resident of California and subject to the

jurisdiction of this court as he does business in Georgia. Defendant, as a foreign resident, is qualified

to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b)

(West).

## 5.

Defendant, *JOSHUA ERSKINE,* is a resident of California and subject to the jurisdiction of this court

as he does business in Georgia. Defendant, as a foreign resident, is qualified to do business in this

state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

## 6.

Defendant, *SHANE ERSKINE,* is a resident of California and subject to the jurisdiction of this court

as he does business in Georgia. Defendant, as a foreign resident, is qualified to do business in this

state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

## 7.

Defendant, *RUBLIN LUBLIN, LLC,* is a domestic limited liability company, organized and existing

under the laws of Georgia and authorized to do business in Georgia, whose principal place of business

is located at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071. Defendant is subject

to the Jurisdiction of this Court as being a domestic limited liability company. Defendant may be

served by delivering a copy of the Summons and Complaint to its registered agent Peter Lublin at

3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071, pursuant to Ga. Code Ann. § 9-

11-4 (West).

3

Exhibit J

## DECLARATORY JUDGMENT ACTION PROPER

### 8.

A declaratory judgment is not an equitable action but, an action at law. *See*, Felton v. Chandler, 201 Ga. 347(2, 3, 4), 39 S.E.2d 654; Glover v. Glover, 172 Ga. App. 278, 279, 322 S.E.2d 755, 757 (1984) A declaratory judgment action is the proper procedural vehicle to resolve the parties' dispute as "[d]isputes concerning ownership of … land are classic candidates for resolution via declaratory judgment. [Cits.]" J.M. Huber Corp. v. Ga. Marble Co., 239 Ga.App. 271, 273(1), 520 S.E.2d 296 (1999). See, Smith v. Jones, 278 Ga. 661, 604 S.E.2d 187, 188 (2004); Loftis v. Johnson, 249 Ga. 794, 294 S.E.2d 511, 512 (1982) (Suit was filed seeking declaratory judgment that warranty deed was null and void by reason of the incompetency of the parties' mother.)

The facts alleged in this case present the most nearly perfect basis for the application of declaratory judgment jurisdiction. They show an actual controversy between parties that have an antagonistic interest, consisting of a claim of right to legal title on one side and denial on the other. They show a justifiable controversy and a protectable legal interest. The danger or dilemma of the petitioner is present and does not depend on a contingency or the happening of a hypothetical future event, and the fact that the defendant has currently instituted an action on its claim makes petitioner's rights to a declaratory judgment not dependent on a contingency. The petitioner's right to relief from uncertainty and insecurity with respect to his right to title and his legal relations with the defendant are present, real and urgent. He is entitled to know whether he is default and has the right to enforce the contractual terms of the security deed or if the adverse party can create a default and foreclose on his property, whether he owns the land and can use it or sell it or whether he is and has been and will continue to in effect be the property owner, or whether defendants are

4

Exhibit J

000136

trespassing. And, so far as the facts show this action is the exclusive remedy. This petition is not based solely on a question of fact primarily, the question of the right to reinstate and satisfy his indebtedness to defendants. Legal title, interests and relationships are at stake and the mere circumstance that a fact determines what they are is incidental. In Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 57 S.Ct. 461, 465, 81 L.Ed. 617, the court stated: 'That the dispute turns upon questions of fact does not withdraw it… from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is everyday practice.' The suitability of application for relief by prayer for a negative declaration is clear from the Act of 1945, pp. 137, 139, Ga.Code Ann. § 110-1111. To call such a prayer negative has been called a colloquialism, and has been said to describe a positive declaration that no right exists on the part of the defendant. Borchard, p.229. For citations of other cases involving findings of fact as incidental to legal conclusions, See Borchard, pp. 396, 629. A debtor, faced with the *unfounded claim of a creditor*, has a sufficient legal interest to justify a declaratory adjudication that such indebtedness has no basis. Borchard, Declaratory Judgments 2d Ed., p. 55. Suppose H alleges that S owes him $1,000 which S denies. Without waiting for H to commence suit, S may assert his right to relief from the insecurity of an unfounded claim by obtaining a declaratory judgment.' 'That, of course, is a situation different from what we have here. There, the purpose of the action would be to get a determination of whether the status of debtor and creditor existed between the parties, not determination of how much S owes H growing out of that status.' See 16 Am.Jur. §§ 31 & 32 and 1950 Pocket Parts for authority for declaring rights and status where the validity of deeds and contracts are in question. Bond v. Ray, 83 Ga. App. 817, 819-21, 65 S.E.2d 30, 31-32 (1951).

5

Exhibit J

## STATEMENT OF FACTS

Plaintiff shows that there is an actual controversy between the Plaintiff and Defendants, growing out of the following statement of facts, to-wit:

### 9.

The subject real property is located at 250 Montrose Drive, McDonough, GA 30253 (hereinafter the "Subject Property") having a legal description described in Exhibit B attached hereto. *See* **Exhibit B.**

### 10.

The plaintiff acquired the subject property through a Warranty Deed on March 24, 2017. This Deed is filed and recorded in the Superior Court of Henry County Real Estate Records at Deed Book 15151 Page 281. *See* **Exhibit C.**

### 11.

On or about, January 15, 2017, plaintiff applied for a loan with the defendant, Calcon Mutual Mortgage LLC.

### 12.

At some time prior to March 24, 2017, plaintiff applied for a mortgage loan with Calcon. The application was submitted via a phone interview. During the phone interview Calcon asked plaintiff various questions concerning his finances.

### 13.

During the aforementioned phone interview, defendants filled out a loan application allegedly based on the phone interview by plaintiff. Plaintiff did not see the loan application created by defendants.

### 14.

Sometime before March 24, 2017, defendants notified plaintiff that he was qualified and approved for

6

Exhibit J

000138

the aforementioned loan.

**15.**

On March 24, 2017, plaintiff appeared at defendants' attorney's office to execute the required

documents to complete the closing of the aforementioned loan.

**16.**

After March 24, 2017, plaintiff made each and every payment as mandated by the aforementioned

Note and Security Deed executed at closing.

**17.**

On or about December 1, 2018, defendants refused to accept plaintiff's timely payments as presented.

**18.**

On or about December 18, 2018, defendants sent plaintiff a Notice of Default alleging that plaintiff

was in violation of paragraphs 8 and 22 of the aforementioned Security Deed.

**19.**

Paragraph 8 of the aforementioned Security Deed states,

> "**Borrower's Loan Application**. Borrower shall be in default if, during the Loan application
>
> process, Borrower or any persons or entities acting at the direction of the Borrower or with
>
> Borrower's knowledge or consent gave materially false, misleading, or inaccurate information
>
> or statements to Lender (or failed to provide Lender with material information) in connection
>
> with the Loan. Material representation include, but are not limited to, representations
>
> concerning Borrower's occupancy of the Property as Borrower's principal residence."

**20.**

Plaintiff has consistently and unequivocally stated that his cash assets were distributed between Bank

of America, Wells Fargo and cash. Furthermore, plaintiff did not have knowledge nor give consent

7

Exhibit J

000139

nor personally give any materially false, misleading or inaccurate information or statements to lender

in connection with the loan, nor did plaintiff advise any person or entities at the direction of plaintiff

to provide such information.

### 21.

For reasons unknown, the defendants decided to unilaterally create fraudulent bank statements to

establish that plaintiff's cash assets were only deposited at Bank of America, when the defendants

were well aware that plaintiff's assets were distributed between two Banks; Wells Fargo and Bank of

America.  The creation of these fraudulent documents by the defendants were unilaterally created

without knowledge of plaintiff.

### 22.

Furthermore, the fraud of the defendants was of no material effect, as plaintiff's cash assets on deposit

at Wells Fargo and Bank of America exceeded the fraudulent bank statements created by defendants.

### 23.

Defendants have taken the position that plaintiff cannot reinstate his loan pursuant to paragraph 22

unless he authenticates the fraudulent bank statements that were created by defendants.  Defendants

are well aware this is an impossibility as they created the fraudulent bank statements.

### 24.

Paragraphs 8, 19, and 22 of plaintiff's Security Deed explicitly states that plaintiff has an unqualified

right to reinstates his loan if he did not give materially false, misleading, or inaccurate information or

statements to Lender in connection with the Loan.

### 25.

Defendants have taken the position that the only way plaintiff can comply with the reinstatement

Exhibit J

provisions of paragraphs 8, 19 and 22 of the Security Deed is to authenticate the fraudulent

statement(s) created by defendants.

<div align="center">26.</div>

Defendants' position that plaintiff should suffer loss of property because of the fraudulent acts of

defendants is unconscionable and contrary to American jurisprudence.

<div align="center">27.</div>

If defendants' illegal, unconscionable and fraudulent acts are allowed to stand, plaintiff would suffer

an unconstitutional deprivation of property.

## PLAINTIFF ALLEGES RIGHTS WITH REFERENCE TO SAID CONTROVERSY

<div align="center">28.</div>

Plaintiff is not in default and has the absolute right to enforce the terms of the Security

Deed as written.

<div align="center">29.</div>

Plaintiff has absolute right to enforce the terms of the contract. Plaintiff is not in default as he never

violated paragraph 8 of the aforementioned Security Deed.

<div align="center">30.</div>

Plaintiff applied for a loan through a phone interview, he freely and truthfully provided all

information requested by defendants, but defendants unilaterally decided to create fraudulent

documents and misstate several issues during the phone loan application.

<div align="center">31.</div>

Because any and all misstatements or inaccuracies contained in the loan application derived from the

fraudulent conduct of defendants, plaintiff is not in violation of paragraph 8 of the aforementioned

Security Deed.

Exhibit J

**32.**

Plaintiff request a declaration finding that plaintiff is not in default as defined by paragraph 8 of the subject Security Deed and that plaintiff has the right to reinstate pursuant to paragraphs 19 and 22 of the subject Security Deed.

## DEFENDANT'S CONTENTION WITH REFERENCE TO SAID CONTROVERSY

**33.**

Defendants contend that plaintiff is in violation of paragraph 8 because he is unable to authenticate the fraudulent documents created by defendants unbeknownst to plaintiff.

**34.**

Defendants contend that they can make unreasonable, unrealistic and impossible demands upon plaintiff in order to illegally and unconstitutionally deprive him of his property.

**35.**

Defendants have taken the position that the laws of this nation and this state only apply to defendants and not plaintiff.

## INJUNCTION

**36.**

In consideration of the facts herein alleged, Defendants should be restrained and enjoined by this Court from terminating its existing agreement with Plaintiff pending the adjudication of the questions raised in this petition, and in order to maintain the status quo pending the adjudication of such questions, in order to preserve the rights of the Plaintiff as hereinabove set out, this Court should grant a restraining order pending said adjudication.

10

Exhibit J

000142

37.

Although questions of fact are raised by this petition, the determination of the same by a jury is expressly waived by Plaintiff.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that:

a. Process issue by publication law requiring the Defendants to answer this complaint as provided by law;

b. That the Defendants be restrained and enjoined from exercising the power of sale until further order of this Court; and that the Defendants be required to show cause on a day certain why said restraining order and injunction should not be made permanent;

c. That this Court enter a judgment in said matter declaring the rights of Plaintiff as sole owner of subject property;

d. That this Court enter a judgment in said matter declaring the rights of Plaintiff as not in default pursuant to the terms of the security deed;

e. That this Court enter a judgment in said matter declaring the rights of Plaintiff as having the right to reinstate the aforementioned loan;

f. That this Court order Defendants to pay all cost of litigation, to include attorney's fees; and

g. That Plaintiff have such other and further relief as this Court finds just and proper.

11

Exhibit J

000143

This 28th day of August, 2019.

Respectfully submitted,

/s/ Grady Roberts

GRADY ROBERTS
Georgia Bar No. 609540
Attorney for Plaintiff
4470 Satellite Blvd, Suite 101
Duluth, GA  30096
(404) 794-7000 phone
(404) 794-7001 fax

12

Exhibit J

000144

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

LEMARCUS ALLISON

Vs                                              CIVIL ACTION NO: 19-A-08827-4

CALCON MUTUAL MORTAGE LLC

### RULE NISI
### EMERGENCY COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE
### RELIEF

The above-stated matter is hereby set down for a Hearing on **on this the 24th day of
September, 2019 12:00 PM**, in **Courtroom 2B** at the Gwinnett County Justice and
Administration Center located at 75 Langley Drive, Lawrenceville, GA 30046.
Let a copy of this order be mailed to all parties or their counsel of record.

So Ordered, on this the 29th day of August, 2019.

_____
Judge Randy Rich
Superior Court of Gwinnett County

Copies to:

PLAINITFF TO PERSONALLY SERVE DEFENDANTS

Exhibit J                                                              000145

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| LEMARCUS ALLISON, | |
| Plaintiff, | |
| vs. | Civil Action No. 19-A-08827-4 |
| CALCON MUTUAL MORTGAGE, LLC; ONETRUST HOME LOANS DBA CALCON MUTUAL MORTGAGE, LLC; MATTHEW ALLEN DLUGOLENSKI; JOSHUA ERSKINE; SHANE ERSKINE; AND RUBIN LUBLIN, LLC, | |
| Defendants. | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Plaintiff's motion for appointment of special process server having been read and considered, and it appearing to the court, in the court's discretion, that such appointment is authorized by law and should be made,

IT IS HEREBY ORDERED that ROOSEVELT WATT II, a citizen of the United States, is appointed as a special process server in this case to serve the defendant, with the summons and complaint and a copy of this order, and to make and file his proof of service as required by law.

SO ORDERED this 29th day of August, 2019.

HONORABLE JUDGE Randy Rich
GWINNETT COUNTY SUPERIOR COURT

–1–

Exhibit J

Prepared by:

**ROBERTS LAW, LLC**
4470 Satellite Blvd.
Suite 101
Duluth, Georgia 30096
Phone: (404)794-7000
Facsimile: (404)794-7001
Email: groberts@robertslawllc.com

Exhibit J

000147

E-FILED IN OFFICE - DP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**19-A-08827-4**
**11/12/2019 9:37 AM**

CLERK OF SUPERIOR COURT

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| LEMARCUS ALLISON, | |
| Plaintiff, | |
| vs. | Civil Action No. **19-A-08827-4** |
| CALCON MUTUAL MORTGAGE, LLC; ONETRUST HOME LOANS DBA CALCON MUTUAL MORTGAGE, LLC; MATTHEW ALLEN DLUGOLENSKI; JOSHUA ERSKINE; SHANE ERSKINE; AND RUBIN LUBLIN, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## AMENDED COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff, *LEMARCUS ALLISON* (hereinafter "Plaintiff"), by and through

undersigned counsel and files this Amended Complaint against CALCON MUTUAL

MORTGAGE, LLC; ONETRUST HOME LOANS DBA CALCON MUTUAL MORTGAGE,

LLC; MATTHEW ALLEN DLUGOLENSKI; JOSHUA ERSKINE; SHANE ERSKINE; AND

RUBIN LUBLIN, LLC, (hereinafter "Defendants") and shows to the court the following facts:

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### 1.

The subject real property is located at 250 Montrose Drive, Stockbridge, Georgia 30253

*(hereinafter the "Subject Property").*

### 2.

On March 24, 2017, the Plaintiff executed a Security Deed to Calcon Mutual Mortgage LLC

Exhibit J

*(hereinafter "Calcon"), MERS and Mortgage Electronic Registration System, Inc.* as evidenced by the security deed which was filed and recorded on March 27, 2017, in the Superior Court of Henry County Real Estate Records at Deed Book 15151 Page 282.

**3.**

On July 26, 2018, the aforementioned Security Deed was subsequently assigned by Lemarcus Allison to Mortgage Electronic Registration System, Inc., as nominee for Calcon Mutual Mortgage LLC to CALCON MUTUAL MORTGAGE LLC *(hereinafter "CALCON"),* as filed and recorded on July 30, 2018, as evidenced in the Superior Court of Henry County Real Estate Records at Book 15980 Page 203.

**4.**

On August 7, 2019, the Defendants advertised the subject property for foreclosure sale through Henry County Legal Organs with a sale date of September 3, 2019.

**5.**

Defendant, RUBIN LUBLIN LLC mailed a Notice of Foreclosure Sale to the Plaintiff. This notice did not comply with Georgia law.

**6.**

Defendant, RUBIN LUBLIN LLC, advertising the subject property failed to satisfy the mandatory statutory requirements set forth pursuant to O.C.G.A. § 44- 14-162.2.

**7.**

Defendant, CALCON, failed to provide Plaintiff with the required notice(s) listed in Paragraph 22 of the Security Deed prior to exercising the power of sale. Failure to comply with the mandatory contractual requirements rendered the non-judicial foreclose proceedings premature and invalid.

**8.**

Defendants initiated a non-judicial foreclosure of Plaintiff's property without acceleration of the indebtedness as required by Paragraph 22 of the Security Deed.

Exhibit J

**9.**

This action is brought as a matter of right pursuant to the aforementioned Security Deed, which states, "The borrower has the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

## FIRST CLAIM FOR RELIEF

**10.**

Plaintiff hereby incorporates by reference paragraphs 1 through 9 as if same were fully set forth at length herein.

**11.**

Defendants had the duty not to interfere with the Plaintiff's health, reputation, or property.

**12.**

Defendants unlawfully interfered with the property rights of the Plaintiff.[1] As shown in the statement of facts, Defendants published untrue and/or inaccurate information concerning Plaintiff in connection with the subject property.

**13.**

Defendants' unlawful interference was intentionally and conscious and deprived the Plaintiff of the right to the exclusive use and benefit of the subject property, thereby breaching the aforementioned duty. This breached occurred when the defendants advertised Plaintiff' subject property and by attempting to wrongfully and unlawfully foreclose.

**14.**

Defendants' intentional and conscious interference with the Plaintiff's right to the exclusive use and benefit of the subject property is the direct and proximate cause of Plaintiff's *mental damages* and *pecuniary loss*.

**15.**

Plaintiff is entitled to damages as one may recover damages arising from any wrongful, continuing

---

[1] The Official Code of Georgia defines "trespass" as "any misfeasance, transgression, or offense which damages another's health, reputation, or property. O.C.G.A. § 1–3–3(20). Accord, Cox v. Strickland, 120 Ga. 104, 47 S.E. 912 (1904); Evans v. Cannon, 34 Ga. App. 467, 470–71, 130 S.E. 76 (1925)" King v. Citizens Bank of De Kalb, 88 Ga. App. 40, 76 S.E.2d 86 (1953).

Exhibit J

interference with a right to the exclusive use and benefit of a property right. [2]

### 16.

Additionally, Plaintiff is entitled to punitive damages as the Defendants' conduct was willful. Willful misconduct in the commission of the trespass is established by the evidence that the trespass was committed on property which Defendants knew belonged to someone else. [3]

### 17.

In trespassing upon Plaintiff's property, the defendants are guilty of wanton, conscious and intentional disregard of the rights of Plaintiff. Such disregard is equivalent to legal malice justifying punitive damages.[4]

### 18.

Plaintiff is also entitled to an award of attorney fees pursuant to O.C.G.A. § 13-6-11 which allows recovery of attorney fees where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the Plaintiff unnecessary trouble and expense. Every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees.[5]

### **SECOND CLAIM FOR RELIEF**

### 19.

Plaintiff hereby incorporates by reference paragraphs 1 through 9 as if same were fully set forth at length herein.

### 20.

Defendants committed the predicate offense, violative of the Georgia RICO Act; Theft[6] in violation

---

[2] Lanier v. Burnette, 245 Ga.App. 566, 570(3), 538 S.E.2d 476 (2000). See also O.C.G.A. § 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."); Wright v. Wilcox, 262 Ga.App. 659, 662(1), 586 S.E.2d 364 (2003)" Navajo Const., Inc. v. Brigham, 271 Ga. App. 128, 129, 608 S.E.2d 732, 734 (2004).
[3] Dalon Contracting Co. v. Artman, 101 Ga. App. 828, 836, 115 S.E.2d 377 (1960). See, Swift Loan & Fin. Co., Inc. v. Duncan, 195 Ga. App. 556, 557, 394 S.E.2d 356, 358 (1990).
[4] McGill v. Varin, 213 Ala. 649 (9 & 10), 106 So. 44; Garden v. Houston Bros., 163 Ala. 300, 50 So. 1030; Friedenthal v. Goodloe, 202 Ala. 611, 81 So. 553; Foust v. Kinney, 202 Ala. 392, 80 So. 474; Southern Ry. Co. v. Jordan, 129 Ga. 665, 59 S.E. 802. Inv. Sec. Corp. v. Cole, 57 Ga. App. 97, 194 S.E. 411, 414 (1937) aff'd, 186 Ga. 809, 199 S.E. 126 (1938)
[5] See also Ross v. Hagler, 209 Ga.App. 201, 204(3), 433 S.E.2d 124 (1993).  'Every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees.' [Cit.] " St. Paul Fire etc. Ins. Co. v. Clark, 255 Ga.App. 14, 24, 566 S.E.2d 2 (2002). See also Greenway, 280 Ga. at 655(3), 631 S.E.2d 689." Bunch v. Byington, 292 Ga. App. 497, 504-05, 664 S.E.2d 842, 848 (2008).
[6] Theft by deception § 16-8-3

Exhibit J

of O.C.G.A. §§ 16-8-2 through 16-8-4 by unlawfully appropriating Plaintiff' property with the intention of depriving Plaintiff of said property. Specifically, Defendants committed theft by deception by obtaining Plaintiff' real property by deceitful means with the intention of depriving the Plaintiff of said property. The defendants engaged in deceit when they intentionally created and failed to correct the false impression that CALCON was the owner of the subject property and indebtedness with the legal right to foreclose (O.C.G.A. § 16-8-3(b)(1)&(2)), when they intentionally created and failed to correct the false impression that CALCON was the owner of subject property with the legal right to possession (O.C.G.A. § 16-8-3(b)(1)&(2)), when they intentionally prevented Plaintiff from acquiring information pertinent to the disposition of subject property by concealing the true identity of the creditor and secreting unrecorded property transfers (O.C.G.A. § 16-8-3(b)(3))[7], when they sold and/or transferred property intentionally failing to disclose Plaintiff' substantial and valid adverse claim, and the legal impediment to the enjoyment of the property (O.C.G.A. § 16-8-3(b)(4)).[8]

## 21.

Defendants committed the predicate offense, in violation of the Georgia RICO Act; O.C.G.A. § 16-8-102[9] by filing with the official registrar of deeds of Henry county a document that defendants knew contained a deliberate misstatement, misrepresentation, and omission. Specifically, defendants violated O.C.G.A. § 16-8-102 when they filed the advertisement with the legal organs of Henry County containing the deliberate misstatements.

---

(a) A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.
(b) A person deceives if he intentionally:
(1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false;
(2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed;
(3) Prevents another from acquiring information pertinent to the disposition of the property involved;
(4) Sells or otherwise transfers or encumbers property intentionally failing to disclose a substantial and valid known lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not a matter of official record.
[7] See, Adams v. State, 249 Ga. App. 730, 732, 549 S.E.2d 539, 541 (2001) (preventing victim from acquiring information pertinent to the disposition of [her] property" violates O.C.G.A § 16-8-3(b)(3))
[8] See, King v. State, 177 Ga. App. 281, 283, 339 S.E.2d 353, 355 (1985)
[9] Residential mortgage fraud pursuant to Code Section 16-8-102 (GA ST § 16-14-3)
A person commits the offense of residential mortgage fraud when, with the intent to defraud, such person:
(5) Files or causes to be filed with the official registrar of deeds of any county of this state any document such person knows to contain a deliberate misstatement, misrepresentation, or omission.

Exhibit J

**22.**

Defendants committed the predicate offense, violative of the Georgia RICO Act; Theft in violation of O.C.G.A. §§ 16-8-2 through 16-8-4 by attempting to unlawfully appropriate Plaintiff's property with the intention of depriving Plaintiff of said property.

**23.**

Defendants committed the predicate offense, violative of the Georgia RICO Act; violation of 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud)[10] by committing acts which are indictable under same.

**24.**

Plaintiff was injured in business and property by the defendants' predicate acts, establishing a direct nexus between Plaintiff's injury and defendants' criminal acts, Plaintiff has suffered substantial damages to be determined at trial.[11]

**25.**

By reason of the Defendants' violation of Ga. Code Ann., § 16-14-4, Plaintiff is entitled, pursuant to Ga. Code Ann., § 16-14-6, to threefold the damages sustained, punitive damages, and reasonable attorney's fees in connection herewith.[12] Since the punitive damage award herein is based upon an intentional conduct, any award is not subject to the $250,000 cap of O.C.G.A. § 51-12-5.1(g).[13]

---

[10] Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." Pelletier, 921 F.2d at 1498." Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 906 (11th Cir. 1996). Defendants, on several occasions, utilized both mails and wires in furtherance of their scheme to defraud Plaintiffs of both money and property.

[11] Plaintiffs must show a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury it purportedly sustained. "To establish this nexus, the Plaintiffs must show that *one* of the predicate acts directly harmed *it,* not a third party." (Punctuation and footnote omitted.) *Schoenbaum Ltd. Co. v. Lenox Pines,* 262 Ga.App. at 470(8)(c), 585 S.E.2d 643." Smith v. Morris, Manning & Martin, LLP, 293 Ga. App. 153, 165-66, 666 S.E.2d 683, 695-96 (2008)., See Also, Pollman v. Swan, 314 Ga. App. 5, 723 S.E.2d 290 (2011) (When a court evaluates a Racketeer Influenced and Corrupt Organizations Act (RICO) claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the Plaintiffs' injuries. West's Ga.Code Ann. § 16–14–3(8) *et seq.*)

[12] "Evidence sufficient to show a RICO violation necessarily also demonstrates the "intent to cause harm" that removes the cap to a punitive damage award. The conduct proscribed under RICO shows "an interrelated pattern of criminal activity motivated by or effect of which is [to derive] pecuniary gain." O.C.G.A § 16-14-2(b). Herein, the facts demonstrated a pattern of racketeering activity…which amounted to intentional theft by deception and fraud. Accordingly, it is applicable to triple the amount of punitive damages awarded to the Plaintiffs. Additionally, the finding of specific "intent to cause harm" pursuant to O.C.G.A § 51-12-5.1(f) is inherent in the essential elements of such an intentional fraud. *McDaniel v. Elliott,* 269 Ga. 262, 497 S.E.2d 786 (1998).

[13] *McDaniel v. Elliott,* supra. Speir v. Krieger, 235 Ga.App. 392, 402, 509 S.E.2d 684, 692

Exhibit J

## THIRD CLAIM FOR RELIEF

### 26.

Plaintiff hereby incorporates by reference paragraphs 1 through 9 as if same were fully set forth at length herein.

### 27.

Defendants above actions placed Plaintiff in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends and the general public.

### 28.

By such publishing and circulating untrue and derogatory statements concerning the Plaintiff/borrower's financial condition defendants exposed the Plaintiff/borrower to public hatred, contempt or ridicule.

### 29.

The conduct of Defendants was the direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above.

## FOURTH CLAIM FOR RELIEF

### 30.

Plaintiff hereby incorporates by reference paragraphs 1 through 9 as if same were fully set forth at length herein.

### 31.

Defendants had a duty to abide by the terms of the underlying Note and Security Deed in connection with any effort to foreclose on the Plaintiff's subject property.  Defendants have failed to abide by the terms of the underlying Security Deed as shown above.

### 32.

Before and during the maintenance of the foreclosure proceedings against the Plaintiff's property, the Defendants, CALCON and RUBIN have continuously ignored the Plaintiff's concerns regarding errors in the published advertisement and repeated statements from the inaccuracies in the real estate records and is attempting to prematurely foreclosure on the subject property.

Exhibit J

**33.**

The Defendants', CALCON and RUBIN, foreclosure proceedings of the Plaintiff's property are not being done good faith.

**34.**

The Plaintiff have been damaged by the Defendants' wrongful conduct in an amount to be proven at trial.

**35.**

Defendants have acted in bad faith, have been stubbornly litigious and have put Plaintiff through unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial

**FIFTH CLAIM FOR RELIEF**

**36.**

Plaintiff hereby incorporate by reference the paragraphs 1 through 9 as if same were fully set forth at length herein.

**37.**

The Plaintiff and Defendants have a contractual relationship as evidenced by the Security Deed.

**38.**

Defendants breached its contractual relationship with Plaintiff by failing to conduct the foreclosure of the Property fairly.

**39.**

Defendants' repeated breaches of contract have cause Plaintiff to be damaged.

**40.**

Defendants failed to satisfy the contractual requirements to provide notice before exercising the power of sale. These provisions regarding the power of sale contained in the security deed are matters of contract and must be enforced as written.

**41.**

Specifically, Defendant, pursuant to the security deed, was required to give notice as well as meet several other conditions prior to exercising the power of sale. CALCON failed to comply with these contractual conditions.

Exhibit J

**42.**

Defendants have acted in bad faith, has been stubbornly litigious and has put Plaintiff to
unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to
O.C.G.A. § 13-16-11 in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

**43.**

Plaintiff hereby incorporate by reference the paragraphs 1 through 9 as if same were fully set forth
at length herein.

**44.**

The proximate results of defendants' intentional and reckless conduct which was of an extreme and
outrageous nature, as hereinabove alleged, Plaintiff suffered severe humiliation, mental anguish, and
emotional and physical distress, and has been injured in mind and body.  The defendants' conduct
was so extreme in degree, as to go beyond all possible bounds of decency, and utterly intolerable in a
civilized community.[14]

**45.**

Breach of defendants statutory[15] duties and pattern of deceit is a tort compensable at law.[16]

---

[14] Georgia has long recognized a cause of action for intentional infliction of emotional distress. To prevail, a
Plaintiffs must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the
conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress
was severe. Racette v. Bank of Am., N.A., A12A1499, 2012 WL 5205684 (Ga. Ct. App. Oct. 23, 2012).

[15] 'A tort is a legal wrong committed upon the person or property of another independently of contract. Such a
wrong may, however, arise from a violation of some private obligation, by which damages accrue to the individual;
and if the breach complained of is not mere neglect of a duty expressly provided for by the terms of the contract
itself, the complaining party may elect as to his remedy, and rely either upon his right under the contract or
proceed for damages as for a tort.' " Rawls Bros. Co. v. Paul, 115 Ga.App. 731, 733, 155 S.E.2d 819 (1967). "The
rule which affords an election to sue ex delicto or ex contractu in cases involving a breach of a duty implied by
reason of a contractual relation has been applied to contractual relations between principal and agent, attorney
and client…and possibly other well recognized relations. [Cits.]" Mauldin v. Sheffer, 113 Ga.App. 874, 878-9, 150
S.E.2d 150 (1966)."[I]n order to maintain an action ex delicto because of a breach of duty growing out of a
contractual relation the breach must be shown to have been a breach of a duty imposed by law and not merely the
breach of a duty imposed by the contract itself. [Cits.] This is consistent with the definition of a tort set forth in
[O.C.G.A § 51-1-1 (formerly Code Ann. § 105-101) ]. 'Duty imposed by law' as used in this context means, of course,
either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common
law principle declared in the reported decisions of the appellate courts of the State or jurisdiction involved….
Hamilton v. Powell, Goldstein, Frazer & Murphy, 167 Ga. App. 411, 413-14, 306 S.E.2d 340, 342 (1983) aff'd, 252
Ga. 149, 311 S.E.2d 818 (1984)

[16] See, e.g., Curl v. First Federal Savings & Loan Assn., 243 Ga. 842, 843-844(2), 257 S.E.2d 264 (1979) (affirmed the
award of damages for mental pain and aggravation and punitive damages in an action for wrongful foreclosure);

Exhibit J

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury on any and all issues triable by a jury. The law in Georgia regarding the right to trial by jury is clear. In civil actions, the right to trial by jury exists only where the right existed prior to the adoption of the first Georgia Constitution.[17] The 1983 Georgia Constitution and O.C.G.A. § 9-11-38 assure that this right shall remain inviolate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them as follows:

A. As to _first claim of relief_, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

B. As to _second claim of relief_, pursuant to Ga. Code Ann., § 16-14-6, Plaintiff is entitled to threefold the damages sustained, punitive damages, and reasonable attorney's fees in connection herewith;

C. As to _third claim of relief_, prayer as pled above;

D. As to _fourth claim of relief_, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

E. As to _fifth claim of relief_, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

F. As to _sixth claim of relief_, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

G. As to all counts, that a jury awards a different measure of damages on each and every claim

---

Decatur Investments Co. v. McWilliams, 162 Ga.App. 181, 182(2), 290 S.E.2d 526 (1982) (affirmed an award of punitive damages in a wrongful foreclosure action); Where there is a physical injury or _pecuniary loss_, compensatory damages include recovery for accompanying 'mental pain and suffering' even though the tortious conduct complained of is merely negligent. See Montega Corp. v. Hazelrigs, 229 Ga. 126, 189 S.E.2d 421 (1972). Compare Chapman v. Western Union Telegraph Co., 88 Ga. 763, 15 S.E. 901 (1882). Westview Cemetery, Inc. v. Blanchard, 234 Ga. 540, 543, 216 S.E.2d 776, 779 (1975). See, Hamilton v. Powell, Goldstein, Frazer & Murphy, 252 Ga. 149, 150, 311 S.E.2d 818 (1984) (when claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury).

[17] Dept. of Transp. v. Del-Cook Timber Co., 248 Ga. 734(8), 285 5.E.2d 913 (1982); Bell v. Cronic, 248 Ga. 457(1), 283 S.E.2d 476 (1981); Strange v. Strange, 222 Ga. 44(2), 148 S.E.2d 494 (1966); Metropolitan Cas. Ins. Co., etc. v. Huhn, 165 Ga. 667(2), 142 S.E. 121 (1927).

Exhibit J

as the evidence establishes several distinct torts.

H.  As to all counts, attorney's fees as allowed by law, prejudgment interest at the statutory rate and all other costs of this proceeding allowed by law;

I.  For other and further relief as Plaintiff may be entitled as provided under Georgia law.

J.  Those Plaintiff have such other and further relief as is just and proper.

This 11th day of November 2019.               Respectfully submitted,


**ROBERTS LAW, LLC**                         _/s/Grady Roberts_
4470 Satellite Blvd.                          Grady Roberts
Suite 101                                     Attorney
Atlanta, Georgia 30096                        Georgia Bar No.: 609540
Phone: (404)794-7000
Facsimile: (404)794-7001
Email: groberts@robertslawllc.com

Exhibit J

## CERTIFICATE OF SERVICE

I hereby certify that I have served Defendants' counsel with a true and correct copy of the

foregoing *Amended Complaint for Damages* by depositing the same in the United States Postal

Service with adequate postage thereon to the following addresses and/or via Electronic Service:


Bret Chaness, Attorney
Rublin Lublin LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
bchaness@rubinlublin.com


This 11th day of November 2019.                    Respectfully submitted,


                                                   _/s/ Grady Roberts_____
                                                   GRADY ROBERTS
                                                   Georgia Bar No. 609540
                                                   Attorney for Plaintiff
                                                   4470 Satellite Blvd, Suite 101
                                                   Duluth, GA  30096
                                                   (404) 794-7000 phone
                                                   (404) 794-7001 fax
                                                   groberts@robertslawllc.com

Exhibit J

000159

# Exhibit K

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
SUPERIOR COURT
WETT COUNTY, GA

2019 SEP 25  PM 4: 19

RICHARD ALEXANDER, CLERK

LEMARCUS ALLISON,
        Plaintiff,

vs.

CALCON MUTUAL MORTGAGE,
ET AL,
        Defendants.

)
)
)
)
)
)
)
)

CIVIL ACTION

FILE NO. 19A-8827-4

## ORDER

Plaintiff's Emergency Complaint for Declaratory Judgment & Injunctive Relief having been argued before the Court on September 24, 2019 and the Court having considered the Motion and argument of counsel, the Court finds Plaintiff's petition for Injunctive Relief is not proper and is Denied.

SO ORDERED this __24th__ day of __September_____, 2019.

Randy Rich, JUDGE
Superior Court of Gwinnett County

Copies to:
Grady Roberts, Esq.
Bret Chaness, Esq.

Exhibit K

000160

# Exhibit L

# RUBIN LUBLIN, LLC

Attorneys and Counselors at Law

3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
TEL (877) 813-0992
FAX (404) 601-5846

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**

May 1, 2020

LEMARCUS ALLISON
250 MONTROSE DRIVE
MCDONOUGH, GA 30253

*Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | ███████ |
| **Loan:** | **Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC ("Original Lender")** |
| **Property Address:** | **250 MONTROSE DRIVE, MCDONOUGH, GA 30253** |

Please be advised that this law firm represents CalCon Mutual Mortgage LLC ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we are hereby instituting non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Sale Under Power that was submitted for publication in the legal newspaper in the county where the property is located. The foreclosure sale is scheduled for **June 2, 2020** ("Sale Date").

The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed. ***The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges.  To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 1-866-397-5370.***
**(Continued on back/next page)**

Exhibit L

000161

Please be advised that the Foreclosing Entity intends to enforce the provisions of said Security Deed relative to payment of attorneys' fees. Unless the full amount owed on this Loan is paid within ten (10) days from the date of receipt of this letter, reasonable attorneys' fees, as defined by the Official Code of Georgia Annotated Section ("O.C.G.A.") § 13-1-11, will also be owed. Please be further advised that from this point forward, strict compliance with the current terms of the Loan will be required pursuant to O.C.G.A. § 13-4-4.

In some circumstances the Loan, State Law, and/or the Foreclosing Entity may allow the default on the Loan to be cured and stopping the foreclosure prior to the sale date. You may contact this office to find out if reinstatement of the Loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default. Please be advised that if the default is allowed to be cured on the Loan, payment must be made in the form of cash, cashier's check or certified funds or wired to be received sufficiently in advance of the Sale Date to allow for cancellation of the sale and pursuant to the terms of the Loan.

If you are currently or have within the last twelve (12) months been in the military service AND joined after the date of the Loan, please notify this office immediately. You may be entitled to relief under the Servicemembers Civil Relief Act. You may also call 1-800-342-9647 for further assistance or visit www.militaryonesource.com/SCRA. When contacting this office as to your military service, you must provide us with positive proof as to your military status. If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

We do not believe that you are represented by counsel. If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them. If we do not hear from you we will assume that you are not represented by counsel in relation to the foreclosure.

This notice is not intended to collect the debt against you personally or indicate that you are personally liable for this debt. This notice relates solely to an enforcement of rights with respect to the above-referenced property.

This letter is notice to the extent the FDCPA applies. Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the Foreclosing Entity.

<u>Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.</u>

Exhibit L



000163

Exhibit L

## Notice Content

NOTICE OF SALE UNDER POWER GEORGIA, HENRY COUNTY By virtue of a Power of Sale contained in that certain Security Deed from LEMARCUS ALLISON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CALCON MUTUAL MORTGAGE LLC, dated March 24, 2017, recorded March 27, 2017, in Deed Book 15151, Page 282-295 , Henry County, Georgia Records, said Security Deed having been given to secure a Note of even date in the original principal amount of Four Hundred Twenty-Four Thousand One Hundred and 00/100 dollars ($424,100.00), with interest thereon as provided for therein, said Security Deed having been last sold, assigned and transferred to CalCon Mutual Mortgage LLC, there will be sold at public outcry to the highest bidder for cash at the Henry County Courthouse, within the legal hours of sale on the first Tuesday in June, 2020, all property described in said Security Deed including but not limited to the following described property: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 47 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 9, BLOCK F, EAGLES LANDING, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK 18, PAGE 173, HENRY COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY THIS REFERENCE. Said legal description being controlling, however the property is more commonly known as 255 MONTROSE DRIVE, MCDONOUGH, GA 30253. The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys fees (notice to collect same having been given) and all other payments provided for under the terms of the Security Deed. Said property will be sold on an as-is basis without any representation, warranty or recourse against the above-named or the undersigned. The sale will also be subject to the following items which may affect the title: any outstanding ad valorem taxes (including taxes which are a lien, whether or not now due and payable); the right of redemption of any taxing authority; matters which would be disclosed by an accurate survey or by an inspection of the property; all zoning ordinances; assessments; liens; encumbrances; restrictions; covenants, and any other matters of record superior to said Security Deed. To the best of the knowledge and belief of the undersigned, the owner and party in possession of the property is LEMARCUS ALLISON, or tenant(s). The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed. Please note that, pursuant to O.C.G.A. 44-14-162.2, you are not entitled by law to an amendment or modification of the terms of your loan. The entity having full authority to negotiate, amend or modify all terms of the loan (although not required by law to do so) is: CalCon Mutual Mortgage LLC, Loss Mitigation Dept., 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047. Telephone Number: 1-866-397-5370. CALCON MUTUAL MORTGAGE LLC as attorney in Fact for LEMARCUS ALLISON THE BELOW LAW FIRM MAY BE HELD TO BE ACTING AS A DEBT COLLECTOR, UNDER FEDERAL LAW. IF SO, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Attorney Contact: Rubin Lublin, LLC, 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071 Telephone Number: (877) 813-0992 Case No. _____ 04 Run Dates 05/06/2020, 05/13/2020, 05/20/2020, 05/27/2020 rlselaw.com/property-listing 950-641255, 576.13.20.27

Publication Name: **Henry Daily Herald**
Publication City and State: McDonough, GA
Publication Country: Henry

# Tracking History

Tracking #: 92148901463235000000600177

Recipient: LEMARCUS ALLISON
250 MONTROSE DRIVE
MCDONOUGH

| Date & Time | Event Type | Event | Event Location |
|---|---|---|---|
| 05/01/2020 11:06 | | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | PEACHTREE CORNERS,GA, 30092 |
| 05/01/2020 22:19 | | ORIGIN ACCEPTANCE | PEACHTREE CORNERS,GA, 30092 |
| 05/01/2020 23:34 | | PROCESSED THROUGH USPS FACILITY | NORTH METRO,GA, 30026 |
| 05/02/2020 12:57 | | PROCESSED THROUGH USPS FACILITY | ATLANTA,GA, 30304 |
| 05/03/2020 02:19 | | PROCESSED THROUGH USPS FACILITY | ATLANTA,GA, 30304 |
| 05/04/2020 08:50 | | ARRIVAL AT UNIT | MCDONOUGH,GA, 30253 |
| 05/04/2020 09:01 | | OUT FOR DELIVERY | MCDONOUGH,GA, 30253 |
| 05/04/2020 16:27 | | NO AUTHORIZED RECIPIENT AVAILABLE | MCDONOUGH,GA, 30253 |
| 05/24/2020 03:32 | | REMINDER TO SCHEDULE REDELIVERY | MCDONOUGH,GA, 30253 |
| 06/03/2020 03:54 | | PACKAGE RETURN NOTICE GENERATED | MCDONOUGH,GA, 30253 |
| 02/07/2020 09:04 | | Processed | MANKATO MN 56001 |

000164

Exhibit L

# Exhibit M

Control Number : 18065947

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFIED COPY

I, **Brad Raffensperger**, the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that the attached documents are true and correct copies of documents filed with the Corporations Division of the Office of the Secretary of State of Georgia under the name of

**LA Property Investments LLC**
**a Domestic Limited Liability Company**

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence of the existence or nonexistence of the facts stated herein.

Docket Number    : 19271210
Date Inc/Auth/Filed: 05/22/2018
Jurisdiction       : Georgia
Print Date         : 07/17/2020
Form Number        : 215



*Brad Raffensperger*

Brad Raffensperger
Secretary of State

Exhibit M

000165

Control Number : 18065947

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF ORGANIZATION

I, **Brian P. Kemp**, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**LA Property Investments LLC**
**a Domestic Limited Liability Company**

has been duly organized under the laws of the State of Georgia on **05/22/2018** by the filing of articles of organization in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on **05/29/2018**.



Brian P. Kemp
Secretary of State

Exhibit M

**ARTICLES OF ORGANIZATION**

*Electronically Filed*
Secretary of State
Filing Date: 5/22/2018 10:47:18 AM

| BUSINESS INFORMATION | |
|---|---|
| CONTROL NUMBER | 18065947 |
| BUSINESS NAME | LA Property Investments LLC |
| BUSINESS TYPE | Domestic Limited Liability Company |
| EFFECTIVE DATE | 05/22/2018 |

| PRINCIPAL OFFICE ADDRESS | |
|---|---|
| ADDRESS | 3681 N Decatur rd #R24, Decatur, GA, 30032, USA |

| REGISTERED AGENT | | |
|---|---|---|
| NAME | ADDRESS | COUNTY |
| Angelica Schaper | 3681 N Decatur rd #R24, Decatur, GA, 30032, USA | Dekalb |

| ORGANIZER(S) | | |
|---|---|---|
| NAME | TITLE | ADDRESS |
| Angelica Schaper | ORGANIZER | 3681 N Decatur rd #R24, Decatur, GA, 30032, USA |
| Lamel Pearson | ORGANIZER | 3681 N Decatur rd #R24, Decatur, GA, 30032, USA |

| OPTIONAL PROVISIONS |
|---|
| N/A |

| AUTHORIZER INFORMATION | |
|---|---|
| AUTHORIZER SIGNATURE | Lamel Pearson |
| AUTHORIZER TITLE | Organizer |

Exhibit M

000167



# STATE OF GEORGIA

OFFICE OF SECRETARY OF STATE
Corporations Division
2 Martin Luther King, Jr. Dr. SE
Suite 313, West Tower
Atlanta, Georgia 30334-1530

**Brad Raffensperger**
Secretary of State

**Date of Notice: 06/17/2019**

**LA Property Investments LLC**, Control No. 18065947

**Angelica Schaper**
**3681 N Decatur rd #R24**
**Decatur, GA 30032**

## Notice of Intent to Administratively Dissolve

In accordance with Title 14 of the Official Code of Georgia Annotated, the Secretary of State hereby gives notice of determination that one or more statutory grounds exist for dissolving this entity for its failure to deliver its annual registration, together with all required fees and penalties, within 60 days after it was due, and/or having been without a registered agent or registered office in this state for 60 days or more. The Secretary of State shall administratively dissolve the entity unless it corrects each ground for dissolution, including payment in full of all required fees and penalties, or demonstrates to the reasonable satisfaction of the Secretary of State that each determined ground does not exist **within sixty (60) days of the mailing of this Notice.**

The above-stated grounds for administrative dissolution may be corrected by filing an annual registration for the entity. **For faster processing, we invite you to file your annual registration online with a credit card at http://ecorp.sos.ga.gov.** You may also print an annual registration form for submission by mail at http://ecorp.sos.ga.gov. The Corporations Division accepts Visa, MasterCard, Discover, American Express and ATM/Debit cards with the Visa or MasterCard logo for online filings. Annual registrations not processed online require payment with a check, certified bank check, or money order. *We cannot accept cash for payment.*

If you choose to file by mail, you must send in an annual registration form printed from the website indicated above. Please mail your completed annual registration form to the following address: **Office of Secretary of State, Annual Registration Filings, 2 Martin Luther King Jr Dr. SE, Suite 313, West Tower, Atlanta, GA 30334-1530. Your annual registration form must be accompanied by a check, certified bank check, or money order.** All checks must be pre-printed with a complete address in order to be accepted by our office for processing. Absolutely no counter or starter checks will be accepted. Failure to adhere to these guidelines will delay or possibly result in the rejection of your filing.

Checks that are dishonored by your bank are subject to a $30.00 NSF charge. Failure to honor your payment could result in a civil suit filed against you and/or your entity may be administratively dissolved by the Secretary of State. [See. O.C.G.A §13-6-15 and Title 14, respectively.]

**Note: Registered agent address must be a street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Boxes may be used for principal office and officers' addresses.**

Any person authorized by the entity to do so may sign and file an annual registration (including online filing). Additionally, a person who signs a document or submits an electronic filing he or she knows is false in any material respect with the intent that the document be delivered to the Secretary of State for filing shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished to the highest degree permissible by law. [O.C.G.A. § 14-2-129.]

For more information on annual registrations or to file online, visit http://ecorp.sos.ga.gov or call 404-656-2817.

Exhibit M

000168

Control Number : 18065947

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF ADMINISTRATIVE DISSOLUTION/REVOCATION

 I, Brad Raffensperger, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**LA Property Investments LLC**
a **Domestic Limited Liability Company**

was mailed a notice in accordance with Title 14 of the Official Code of Georgia Annotated and was involuntarily or administratively dissolved or its certificate of authority revoked by the Office of Secretary of State on 08/26/2019 for failure to file its annual registration and/or failure to maintain a registered agent or registered office in this state.

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence of the existence or nonexistence of the facts stated herein.

WITNESS my hand and official seal in the City of Atlanta
and the State of Georgia on  08/26/2019



*Brad Raffensperger*

**Brad Raffensperger**
**Secretary of State**

Exhibit M

000169

Control Number : 18065947

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF REINSTATEMENT

I, **Brad Raffensperger**, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**LA Property Investments LLC**
**a Domestic Limited Liability Company**

was formed on 05/22/2018, and later administratively dissolved on 08/26/2019. Said entity has filed an application for reinstatement and has paid all fees and penalties due to the Secretary of State. Attached hereto is a true and correct copy of said application.

WHEREFORE, said entity is hereby reinstated as of 06/02/2020, having met the requirements for reinstatement under Title 14 of the Official Code of Georgia Annotated. The reinstatement shall relate back to and take effect as of the date of the administrative dissolution and the entity may resume its business as if the administrative dissolution had never occurred.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on **06/09/2020**.



*Brad Raffensperger*

**Brad Raffensperger**
**Secretary of State**

Exhibit M

000170

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

**Application for Reinstatement**

*Electronically Filed*
Secretary of State
Filing Date: 6/2/2020 3:07:55 PM

### BUSINESS INFORMATION

**BUSINESS NAME**                              : LA Property Investments LLC
**CONTROL NUMBER**                           : 18065947
**BUSINESS TYPE**                                : Domestic Limited Liability Company
**ADMININSTRATIVE DISSOLUTION DATE**   : 08/26/2019

Ground(s) for the administrative dissolution either did not exist or have been eliminated. All taxes owed by the entity have been paid.

### ADDRESS AND REGISTERED AGENT AT TIME OF ADMINISTRATIVE DISSOLUTION

**PRINCIPAL OFFICE ADDRESS**        : 3681 N Decatur rd #R24, Decatur, GA, 30032, USA
**REGISTERED AGENT NAME**         : Angelica Schaper
**REGISTERED OFFICE ADDRESS**     : 3681 N Decatur rd #R24, Decatur, GA, 30032, USA
**REGISTERED OFFICE COUNTY**      : Dekalb

### UPDATES TO ADDRESS AND REGISTERED AGENT

**PRINCIPAL OFFICE ADDRESS**        : 3355 Lenox rd ne, Suite 750, Atlanta, GA, 30326, USA
**REGISTERED AGENT NAME**         : Angelica Schaper
**REGISTERED OFFICE ADDRESS**     : 3681 N Decatur rd #R24, Decatur, GA, 30032, USA
**REGISTERED OFFICE COUNTY**      : Dekalb

### AUTHORIZER INFORMATION

**AUTHORIZER SIGNATURE**          : Angelica Schaper
**AUTHORIZER TITLE**                   : Registered Agent

Exhibit M

000171

# Exhibit N

Fulton County Superior Cour
***EFILED***J
Date: 7/6/2020 4:36 PM
Cathelene Robinson, Cler



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

_LeMarcus Allison, et. al_                     ) Case          2020CV337973
_____    ) No.:_____
                                                           )
_____    )
**Plaintiff,**                                     )
                                                           )
**vs.**                                               )
_Calcon Mutual Mortgage, LLC_  )
_et. al_                                          )
_____    )
**Defendant**                            )
                                                           )
                                                           )
                                                           )
                                                           )

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb and serve upon plaintiff's attorney, whose name and address is:

_Roberts Law, LLC_
_4170 Suite 111 Ste O'Neil_
_Ste 01_
_Duluth, GA 30096_

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**
                                                    7/7/2020
This _____ day of _____, 20 _____

                                                    Honorable Cathelene "Tina" Robinson
                                                    Clerk of Superior Court
                                                    By_____
                                                                    Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you  _____, 20_____

                                                    _____
                                                                    Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

Exhibit N                                              000172

Fulton County Superior Cou
***EFILED***J
Date: 7/6/2020 4:36 PM
Cathelene Robinson, Cler

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| LEMARCUS ALLISON AND LA PROPERTY INVESTMENTS, LLC, | |
| Plaintiffs, | 2020CV337973 <br> Civil Action No. _____ |
| vs. | |
| CALCON MUTUAL MORTGAGE, LLC; ONETRUST HOME LOANS DBA CALCON MUTUAL MORTGAGE, LLC; MATTHEW ALLEN DLUGOLENSKI; JOSHUA ERSKINE; SHANE ERSKINE; MICHAEL LOUIS BARINGER AND RUBIN LUBLIN, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

**COMES NOW**, Plaintiffs, *LEMARCUS ALLISON AND LA PROPERTY INVESTMENTS, LLC* (hereinafter "Plaintiffs"), by and through undersigned counsel and files this Complaint against CALCON MUTUAL MORTGAGE, LLC; ONETRUST HOME LOANS DBA CALCON MUTUAL MORTGAGE, LLC; MATTHEW ALLEN DLUGOLENSKI; JOSHUA ERSKINE; SHANE ERSKINE; MICHAEL LOUIS BARINGER AND RUBIN LUBLIN, LLC, (hereinafter "Defendants") and shows to the court the following facts:

## JURISDICTION, VENUE, AND PARTIES

### 1.

Subject matter jurisdiction is proper as the Superior Court has jurisdiction pursuant to Ga. Code Ann. § 9-4-2.

1 | Page

Exhibit N

000173

**2.**

Defendant, *CALCON MUTUAL MORTGAGE, LLC,* is a foreign corporation, organized and existing under the laws of California authorized to do business in Georgia, whose principal place of business is located at 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92018. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign corporation qualified to do business in this state, may be served by delivering a copy of the Summons and Complaint to its registered agent Paracorp Incorporated at 279 West Crogan Street, Lawrenceville, GA 30046, pursuant to Ga. Code Ann. § 9-11-4 (West).[1]

**3.**

Defendant, *ONETRUST HOME LOANS dba Calcon Mutual Mortgage, LLC,* is a foreign entity, organized and existing under the laws of another state and are not authorized to do business in Georgia, whose principal place of business is located at 3131 Camino Del Rio North, Suite 1680, San Diego, CA 92018. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign entity, is not qualified to do business in this state but may be served by delivering a copy of the Summons and Complaint to its registered agent Paracorp Incorporated at 279 West Crogan Street, Lawrenceville, GA 30046, pursuant to Ga. Code Ann. § 9-11-4 (West).

**4.**

Defendant, *MATTHEW ALLEN DLUGOLENSKI,* is a resident of California and subject to the jurisdiction of this court as he does business in Georgia. Defendant, as a foreign resident, is

---

[1] Am. Photocopy Equip. Co. v. Lew Deadmore & Associates, Inc., 127 Ga. App. 207, 211, 193 S.E.2d 275, 278 (1972)

Exhibit N

qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

**5.**

Defendant, *JOSHUA ERSKINE*, is a resident of California and subject to the jurisdiction of this court as he does business in Georgia. Defendant, as a foreign resident, is qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

**6.**

Defendant, *SHANE ERSKINE*, is a resident of California and subject to the jurisdiction of this court as he does business in Georgia. Defendant, as a foreign resident, is qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

**7.**

Defendant, *MICHAEL LOUIS BARINGER*, is a resident of Georgia and subject to the jurisdiction of this court. Defendant, may be served at 820 Kings Arms Way, Johns Creek, GA 30022 pursuant to Ga. Code Ann. § 9-11-4.

**8.**

Defendant, *RUBLIN LUBLIN, LLC*, is a domestic limited liability company, organized and existing under the laws of Georgia and authorized to do business in Georgia, whose principal place of business is located at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071. Defendant is subject to the Jurisdiction of this Court as being a domestic limited liability company. Defendant may be served by delivering a copy of the Summons and Complaint to its registered agent Peter Lublin at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071, pursuant to Ga. Code Ann. § 9-11-4 (West).

Exhibit N

000175

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### 9.

The subject real property is located at 250 Montrose Drive, Stockbridge, Georgia 30253 (hereinafter the "Subject Property").

### 10.

On March 24, 2017, the Plaintiff executed a Security Deed to Calcon Mutual Mortgage LLC (hereinafter "Calcon"), MERS and Mortgage Electronic Registration System, Inc. as evidenced by the security deed which was filed and recorded on March 27, 2017, in the Superior Court of Henry County Real Estate Records at Deed Book 15151 Page 282.

### 11.

On July 26, 2018, the aforementioned Security Deed was subsequently assigned by Lemarcus Allison to Mortgage Electronic Registration System, Inc., as nominee for Calcon Mutual Mortgage LLC to CALCON MUTUAL MORTGAGE LLC (hereinafter "CALCON"), as filed and recorded on July 30, 2018, as evidenced in the Superior Court of Henry County Real Estate Records at Book 15980 Page 203.

### 12.

On or about May 7, 2020, the Defendants advertised the subject property for foreclosure sale through Henry County Legal Organs with a sale date of June 2, 2020.

### 13.

Defendant, RUBIN LUBLIN LLC mailed a Notice of Foreclosure Sale to the Plaintiff. This notice did not comply with Georgia law.

### 14.

Defendant, RUBIN LUBLIN LLC, advertising the subject property failed to satisfy the mandatory statutory requirements set forth pursuant to O.C.G.A. § 44- 14-162.2.

Exhibit N

15.

Defendant, CALCON, failed to provide Plaintiff with the required notice(s) listed in Paragraph 22 of the Security Deed prior to exercising the power of sale. Failure to comply with the mandatory contractual requirements rendered the non-judicial foreclose proceedings premature and invalid.

16.

Defendants initiated a non-judicial foreclosure of Plaintiff's property without acceleration of the indebtedness as required by Paragraph 22 of the Security Deed.

17.

This action is brought as a matter of right pursuant to the aforementioned Security Deed, which states, "The borrower has the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

## FIRST CLAIM FOR RELIEF

18.

Plaintiffs hereby incorporates by reference paragraphs 1 through 17 as if same were fully set forth at length herein.

19.

Defendants had the duty not to interfere with the Plaintiffs' health, reputation, or property.

20.

Defendants unlawfully interfered with the property rights of the Plaintiff.[2] As shown in the statement of facts, Defendants published untrue and/or inaccurate information concerning Plaintiff in connection with the subject property.

21.

Defendants' unlawful interference was intentionally and conscious and deprived the Plaintiff of the right to the exclusive use and benefit of the subject property, thereby breaching the aforementioned duty. This breached occurred when the defendants advertised Plaintiffs' subject property and by

---

[2] The Official Code of Georgia defines "trespass" as "any misfeasance, transgression, or offense which damages another's health, reputation, or property. O.C.G.A. § 1–3–3(20). Accord, Cox v. Strickland, 120 Ga. 104, 47 S.E. 912 (1904); Evans v. Cannon, 34 Ga. App. 467, 470–71, 130 S.E. 76 (1925)" King v. Citizens Bank of De Kalb, 88 Ga. App. 40, 76 S.E.2d 86 (1953).

Exhibit N

attempting to wrongfully and unlawfully foreclose.

22.

Defendants' intentional and conscious interference with the Plaintiff's right to the exclusive use and benefit of the subject property is the direct and proximate cause of Plaintiff's *mental damages* and *pecuniary loss.*

23.

Plaintiffs are entitled to damages as one may recover damages arising from any wrongful, continuing interference with a right to the exclusive use and benefit of a property right. [3]

24.

Additionally, Plaintiffs are entitled to punitive damages as the Defendants' conduct was willful. Willful misconduct in the commission of the trespass is established by the evidence that the trespass was committed on property which Defendants knew belonged to someone else. [4]

25.

In trespassing upon Plaintiff's property, the defendants are guilty of wanton, conscious and intentional disregard of the rights of Plaintiff. Such disregard is equivalent to legal malice justifying punitive damages. [5]

26.

Plaintiffs are also entitled to an award of attorney fees pursuant to O.C.G.A. § 13-6-11 which allows recovery of attorney fees where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the Plaintiffs unnecessary trouble and expense. Every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees. [6]

## SECOND CLAIM FOR RELIEF

---

[3] Lanier v. Burnette, 245 Ga.App. 566, 570(3), 538 S.E.2d 476 (2000). See also O.C.G.A. § 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."); Wright v. Wilcox, 262 Ga.App. 659, 662(1), 586 S.E.2d 364 (2003)" Navajo Const., Inc. v. Brigham, 271 Ga. App. 128, 129, 608 S.E.2d 732, 734 (2004).
[4] Dalon Contracting Co. v. Artman, 101 Ga. App. 828, 836, 115 S.E.2d 377 (1960). See, Swift Loan & Fin. Co., Inc. v. Duncan, 195 Ga. App. 556, 557, 394 S.E.2d 356, 358 (1990).
[5] McGill v. Varin, 213 Ala. 649 (9 & 10), 106 So. 44; Garden v. Houston Bros., 163 Ala. 300, 50 So. 1030; Friedenthal v. Goodloe, 202 Ala. 611, 81 So. 553; Foust v. Kinney, 202 Ala. 392, 80 So. 474; Southern Ry. Co. v. Jordan, 129 Ga. 665, 59 S.E. 802. Inv. Sec. Corp. v. Cole, 57 Ga. App. 97, 194 S.E. 411, 414 (1937) aff'd, 186 Ga. 809, 199 S.E. 126 (1938)
[6] See also Ross v. Hagler, 209 Ga.App. 201, 204(3), 433 S.E.2d 124 (1993). 'Every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees.' [Cit.] " St. Paul Fire etc. Ins. Co. v. Clark, 255 Ga.App. 14, 24, 566 S.E.2d 2 (2002). See also Greenway, 280 Ga. at 655(3), 631 S.E.2d 689." Bunch v. Byington, 292 Ga. App. 497, 504-05, 664 S.E.2d 842, 848 (2008).

Exhibit N

000178

## 27.

Plaintiffs hereby incorporates by reference paragraphs 1 through 17 as if same were fully set forth at length herein.

## 28.

Defendants committed the predicate offense, violative of the Georgia RICO Act; Theft[7] in violation of O.C.G.A. §§ 16-8-2 through 16-8-4 by unlawfully appropriating Plaintiffs' property with the intention of depriving Plaintiffs of said property. Specifically, Defendants committed theft by deception by obtaining Plaintiffs' real property by deceitful means with the intention of depriving the Plaintiffs of said property. The defendants engaged in deceit when they intentionally created and failed to correct the false impression that CALCON was the owner of the subject property and indebtedness with the legal right to foreclose (O.C.G.A. § 16-8-3(b)(1)&(2)), when they intentionally prevented Plaintiff from acquiring information pertinent to the disposition of subject property by concealing the true identity of the creditor and secreting unrecorded property transfers (O.C.G.A. § 16-8-3(b)(3))[8], when they sold and/or transferred property intentionally failing to disclose Plaintiffs' substantial and valid adverse claim, and the legal impediment to the enjoyment of the property (O.C.G.A. § 16-8-3(b)(4)).[9]

## 29.

Defendants committed the predicate offense, in violation of the Georgia RICO Act; O.C.G.A. § 16-

---

[7] Theft by deception § 16-8-3
(a) A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.
(b) A person deceives if he intentionally:
(1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false;
(2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed;
(3) Prevents another from acquiring information pertinent to the disposition of the property involved;
(4) Sells or otherwise transfers or encumbers property intentionally failing to disclose a substantial and valid known lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not a matter of official record.
[8] See, Adams v. State, 249 Ga. App. 730, 732, 549 S.E.2d 539, 541 (2001) (preventing victim from acquiring information pertinent to the disposition of [her] property" violates O.C.G.A § 16-8-3(b)(3))
[9] See, King v. State, 177 Ga. App. 281, 283, 339 S.E.2d 353, 355 (1985)

Exhibit N

000179

8-102[10] by filing with the official registrar of deeds of Henry county a document that defendants knew contained a deliberate misstatement, misrepresentation, and omission. Specifically, defendants violated O.C.G.A. § 16-8-102 when they filed the advertisement with the legal organs of Henry County containing the deliberate misstatements.

### 30.

Defendants committed the predicate offense, violative of the Georgia RICO Act; Theft in violation of O.C.G.A. §§ 16-8-2 through 16-8-4 by attempting to unlawfully appropriate Plaintiffs' property with the intention of depriving Plaintiffs of said property.

### 31.

Defendants committed the predicate offense, violative of the Georgia RICO Act; violation of 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud)[11] by committing acts which are indictable under same.

### 32.

Plaintiffs were injured in business and property by the defendants' predicate acts, establishing a direct nexus between Plaintiffs' injury and defendants' criminal acts, Plaintiffs have suffered substantial damages to be determined at trial.[12]

### 33.

By reason of the Defendants' violation of Ga. Code Ann., § 16-14-4, Plaintiffs are entitled, pursuant to Ga. Code Ann., § 16-14-6, to threefold the damages sustained, punitive damages, and reasonable attorney's fees in connection herewith.[13] Since the punitive damage award herein is

---

[10] Residential mortgage fraud pursuant to Code Section 16-8-102 (GA ST § 16-14-3)
A person commits the offense of residential mortgage fraud when, with the intent to defraud, such person:
(5) Files or causes to be filed with the official registrar of deeds of any county of this state any document such person knows to contain a deliberate misstatement, misrepresentation, or omission.
[11] Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." Pelletier, 921 F.2d at 1498." Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 906 (11th Cir. 1996). Defendants, on several occasions, utilized both mails and wires in furtherance of their scheme to defraud Plaintiffs of both money and property.
[12] Plaintiffs must show a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury it purportedly sustained. "To establish this nexus, the Plaintiffs must show that one of the predicate acts directly harmed it, not a third party." (Punctuation and footnote omitted.) Schoenbaum Ltd. Co. v. Lenox Pines, 262 Ga.App. at 470(8)(c), 585 S.E.2d 643." Smith v. Morris, Manning & Martin, LLP, 293 Ga. App. 153, 165-66, 666 S.E.2d 683, 695-96 (2008)., See Also, Pollman v. Swan, 314 Ga. App. 5, 723 S.E.2d 290 (2011) (When a court evaluates a Racketeer Influenced and Corrupt Organizations Act (RICO) claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the Plaintiffs' injuries. West's Ga.Code Ann. § 16-14-3(8) et seq.)
[13] "Evidence sufficient to show a RICO violation necessarily also demonstrates the "intent to cause harm" that removes the cap to a punitive damage award. The conduct proscribed under RICO shows "an interrelated pattern of criminal activity motivated by or effect of which is [to derive] pecuniary gain." O.C.G.A § 16-14-2(b). Herein, the

Exhibit N

based upon an intentional conduct, any award is not subject to the $250,000 cap of O.C.G.A. § 51-12-5.1(g).[14]

## THIRD CLAIM FOR RELIEF

### 34.

Plaintiff hereby incorporates by reference paragraphs 1 through 17 as if same were fully set forth at length herein.

### 35.

Defendants above actions placed Plaintiff in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends and the general public.

### 36.

By such publishing and circulating untrue and derogatory statements concerning the Plaintiff/borrower's financial condition defendants exposed the Plaintiff/borrower to public hatred, contempt or ridicule.

### 37.

The conduct of Defendants was the direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above.

## FOURTH CLAIM FOR RELIEF

### 38.

Plaintiff hereby incorporates by reference paragraphs 1 through 17 as if same were fully set forth at length herein.

### 39.

Defendants had a duty to abide by the terms of the underlying Note and Security Deed in connection with any effort to foreclose on the Plaintiffs' subject property. Defendants have failed to

---

facts demonstrated a pattern of racketeering activity...which amounted to intentional theft by deception and fraud. Accordingly, it is applicable to triple the amount of punitive damages awarded to the Plaintiffs. Additionally, the finding of specific "intent to cause harm" pursuant to O.C.G.A § 51-12-5.1(f) is inherent in the essential elements of such an intentional fraud. *McDaniel v. Elliott*, 269 Ga. 262, 497 S.E.2d 786 (1998).
[14] *McDaniel v. Elliott*, supra. Speir v. Krieger, 235 Ga.App. 392, 402, 509 S.E.2d 684, 692

Exhibit N

000181

abide by the terms of the underlying Security Deed as shown above.

**40.**

Before and during the maintenance of the foreclosure proceedings against the Plaintiffs' property, the Defendants, CALCON and RUBIN have continuously ignored the Plaintiffs' concerns regarding errors in the published advertisement and repeated statements from the inaccuracies in the real estate records and is attempting to prematurely foreclosure on the subject property.

**41.**

The Defendants', CALCON and RUBIN, foreclosure proceedings of the Plaintiffs' property are not being done good faith.

**42.**

The Plaintiff have been damaged by the Defendants' wrongful conduct in an amount to be proven at trial.

**43.**

Defendants have acted in bad faith, have been stubbornly litigious and have put Plaintiff through unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial

## FIFTH CLAIM FOR RELIEF

**44.**

Plaintiff hereby incorporate by reference the paragraphs 1 through 17 as if same were fully set forth at length herein.

**45.**

The Plaintiff and Defendants have a contractual relationship as evidenced by the Security Deed.

**46.**

Defendants breached its contractual relationship with Plaintiff by failing to conduct the foreclosure of the Property fairly.

**47.**

Defendants' repeated breaches of contract have cause Plaintiff to be damaged.

**48.**

Defendants failed to satisfy the contractual requirements to provide notice before exercising the power of sale. These provisions regarding the power of sale contained in the security deed are

Exhibit N

000182

matters of contract and must be enforced as written.

**49.**

Specifically, Defendants, pursuant to the security deed, was required to give notice as well as meet several other conditions prior to exercising the power of sale. CALCON failed to comply with these contractual conditions.

**50.**

Defendants have acted in bad faith, has been stubbornly litigious and has put Plaintiff to unnecessary trouble and expense entitling them to an award of attorney's fees and costs pursuant to O.C.G.A. § 13-16-11 in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

**51.**

Plaintiff hereby incorporate by reference the paragraphs 1 through 17 as if same were fully set forth at length herein.

**52.**

The proximate results of defendants' intentional and reckless conduct which was of an extreme and outrageous nature, as hereinabove alleged, Plaintiffs suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body. The defendants' conduct was so extreme in degree, as to go beyond all possible bounds of decency, and utterly intolerable in a civilized community.[15]

**53.**

---

[15] Georgia has long recognized a cause of action for intentional infliction of emotional distress. To prevail, a Plaintiffs must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. Racette v. Bank of Am., N.A., A12A1499, 2012 WL 5205684 (Ga. Ct. App. Oct. 23, 2012).

Exhibit N

000183

Breach of defendants' statutory[16] duties and pattern of deceit is a tort compensable at law.[17]

## PETITION FOR DECLARATORY JUDGMENT

### 54.

A declaratory judgment is not an equitable action but, an action at law. *See*, Felton v. Chandler, 201 Ga. 347(2, 3, 4), 39 S.E.2d 654; Glover v. Glover, 172 Ga. App. 278, 279, 322 S.E.2d 755, 757 (1984) A declaratory judgment action is the proper procedural vehicle to resolve the parties' dispute as "[d]isputes concerning ownership of ... land are classic candidates for resolution via declaratory judgment. [Cits.]" J.M. Huber Corp. v. Ga. Marble Co., 239 Ga.App. 271, 273(1), 520 S.E.2d 296 (1999). See, Smith v. Jones, 278 Ga. 661, 604 S.E.2d 187, 188 (2004); Loftis v. Johnson, 249 Ga. 794, 294 S.E.2d 511, 512 (1982) (Suit was filed seeking declaratory judgment that warranty deed was null and void by reason of the incompetency of the parties' mother.)

---

[16] 'A tort is a legal wrong committed upon the person or property of another independently of contract. Such a wrong may, however, arise from a violation of some private obligation, by which damages accrue to the individual; and if the breach complained of is not mere neglect of a duty expressly provided for by the terms of the contract itself, the complaining party may elect as to his remedy, and rely either upon his right under the contract or proceed for damages as for a tort.' " *Rawls Bros. Co. v. Paul*, 115 Ga.App. 731, 733, 155 S.E.2d 819 (1967). "The rule which affords an election to sue ex delicto or ex contractu in cases involving a breach of a duty implied by reason of a contractual relation has been applied to contractual relations between principal and agent, attorney and client...and possibly other well recognized relations. [Cits.]" *Mauldin v. Sheffer*, 113 Ga.App. 874, 878-9, 150 S.E.2d 150 (1966)."[I]n order to maintain an action ex delicto because of a breach of duty growing out of a contractual relation the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself. [Cits.] This is consistent with the definition of a tort set forth in [O.C.G.A § 51-1-1 (formerly Code Ann. § 105-101) ]. 'Duty imposed by law' as used in this context means, of course, either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of the appellate courts of the State or jurisdiction involved.... *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411, 413-14, 306 S.E.2d 340, 342 (1983) aff'd, 252 Ga. 149, 311 S.E.2d 818 (1984)

[17] See, e.g., Curl v. First Federal Savings & Loan Assn., 243 Ga. 842, 843-844(2), 257 S.E.2d 264 (1979) (affirmed the award of damages for mental pain and aggravation and punitive damages in an action for wrongful foreclosure); Decatur Investments Co. v. McWilliams, 162 Ga.App. 181, 182(2), 290 S.E.2d 526 (1982) (affirmed an award of punitive damages in a wrongful foreclosure action); Where there is a physical injury or *pecuniary loss*, compensatory damages include recovery for accompanying 'mental pain and suffering' even though the tortious conduct complained of is merely negligent. See Montega Corp. v. Hazelrigs, 229 Ga. 126, 189 S.E.2d 421 (1972). Compare Chapman v. Western Union Telegraph Co., 88 Ga. 763, 15 S.E. 901 (1882). Westview Cemetery, Inc. v. Blanchard, 234 Ga. 540, 543, 216 S.E.2d 776, 779 (1975). See, Hamilton v. Powell, Goldstein, Frazer & Murphy, 252 Ga. 149, 150, 311 S.E.2d 818 (1984) (when claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury).

12 | Page

Exhibit N

000184

The facts alleged in this case present the most nearly perfect basis for the application of declaratory judgment jurisdiction. They show an actual controversy between parties that have an antagonistic interest, consisting of a claim of right to legal title on one side and denial on the other. They show a justifiable controversy and a protectable legal interest. The danger or dilemma of the petitioner is present and does not depend on a contingency or the happening of a hypothetical future event, and the fact that the defendant has currently instituted an action on its claim makes petitioner's rights to a declaratory judgment not dependent on a contingency. The petitioner's right to relief from uncertainty and insecurity with respect to his right to title and his legal relations with the defendant are present, real and urgent. He is entitled to know whether he is default and has the right to enforce the contractual terms of the security deed or if the adverse party can create a default and foreclose on his property, whether he owns the land and can use it or sell it or whether he is and has been and will continue to in effect be the property owner, or whether defendants are trespassing. And, so far as the facts show this action is the exclusive remedy. This petition is not based solely on a question of fact primarily, the question of the right to reinstate and satisfy his indebtedness to defendants. Legal title, interests and relationships are at stake and the mere circumstance that a fact determines what they are is incidental. In Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 57 S.Ct. 461, 465, 81 L.Ed. 617, the court stated: 'That the dispute turns upon questions of fact does not withdraw it... from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is everyday practice.' The suitability of application for relief by prayer for a negative declaration is clear from the Act of 1945, pp. 137, 139, Ga.Code Ann. § 110-1111. To call such a prayer negative has been called a

Exhibit N

colloquialism, and has been said to describe a positive declaration that no right exists on the part of the defendant. Borchard, p.229. For citations of other cases involving findings of fact as incidental to legal conclusions, See Borchard, pp. 396, 629. A debtor, faced with the *unfounded claim of a creditor*, has a sufficient legal interest to justify a declaratory adjudication that such indebtedness has no basis. Borchard, Declaratory Judgments 2d Ed., p. 55. Suppose H alleges that S owes him $1,000 which S denies. Without waiting for H to commence suit, S may assert his right to relief from the insecurity of an unfounded claim by obtaining a declaratory judgment.' 'That, of course, is a situation different from what we have here. There, the purpose of the action would be to get a determination of whether the status of debtor and creditor existed between the parties, not determination of how much S owes H growing out of that status.' See 16 Am.Jur. §§ 31 & 32 and 1950 Pocket Parts for authority for declaring rights and status where the validity of deeds and contracts are in question. Bond v. Ray, 83 Ga. App. 817, 819-21, 65 S.E.2d 30, 31-32 (1951).

## STATEMENT OF FACTS

Plaintiff shows that there is an actual controversy between the Plaintiffs and Defendants, growing out of the following statement of facts, to-wit:

### 55.

The subject real property is located at 250 Montrose Drive, McDonough, GA 30253 (hereinafter the "Subject Property") having a legal description described in Exhibit B attached hereto. *See* **Exhibit A.**

### 56.

The plaintiff acquired the subject property through a Warranty Deed on March 24, 2017. This Deed

Exhibit N

is filed and recorded in the Superior Court of Henry County Real Estate Records at Deed Book

15151 Page 281. *See* **Exhibit B.**

**57.**

On or about, January 15, 2017, plaintiff applied for a loan with the defendant, Calcon Mutual

Mortgage LLC.

**58.**

At some time prior to March 24, 2017, plaintiff applied for a mortgage loan with Calcon. The

application was submitted via a phone interview. During the phone interview Calcon asked plaintiff

various questions concerning his finances.

**59.**

During the aforementioned phone interview, defendants filled out a loan application allegedly based

on the phone interview by plaintiff. Plaintiff did not see the loan application created by defendants.

**60.**

Sometime before March 24, 2017, defendants notified plaintiff that he was qualified and approved

for the aforementioned loan.

**61.**

On March 24, 2017, plaintiff appeared at defendants' attorney's office to execute the required

documents to complete the closing of the aforementioned loan.

**62.**

After March 24, 2017, plaintiff made each and every payment as mandated by the aforementioned

Note and Security Deed executed at closing.

**63.**

On or about December 1, 2018, defendants refused to accept plaintiff's timely payments as

Exhibit N

000187

presented.

### 64.

On or about December 18, 2018, defendants sent plaintiff a Notice of Default alleging that plaintiff

was in violation of paragraphs 8 and 22 of the aforementioned Security Deed.

### 65.

Paragraph 8 of the aforementioned Security Deed states,

"**Borrower's Loan Application**.   Borrower shall be in default if, during the Loan

application process, Borrower or any persons or entities acting at the direction of the

Borrower or with Borrower's knowledge or consent gave materially false, misleading, or

inaccurate information or statements to Lender (or failed to provide Lender with material

information) in connection with the Loan.   Material representation include, but are not

limited to, representations concerning Borrower's occupancy of the Property as Borrower's

principal residence."

### 66.

Plaintiff has consistently and unequivocally stated that his cash assets were distributed between

Bank of America, Wells Fargo and cash.   Furthermore, plaintiff did not have knowledge nor give

consent nor personally give any materially false, misleading or inaccurate information or statements

to lender in connection with the loan, nor did plaintiff advise any person or entities at the direction

of plaintiff to provide such information.

### 67.

For reasons unknown, the defendants decided to unilaterally create fraudulent bank statements to

establish that plaintiff's cash assets were only deposited at Bank of America, when the defendants

were well aware that plaintiff's assets were distributed between two Banks; Wells Fargo and Bank

Exhibit N

000188

of America.  The creation of these fraudulent documents by the defendants were unilaterally created without knowledge of plaintiff.

### 68.

Furthermore, the fraud of the defendants was of no material effect, as plaintiff's cash assets on deposit at Wells Fargo and Bank of America exceeded the fraudulent bank statements created by defendants.

### 69.

Defendants have taken the position that plaintiff cannot reinstate his loan pursuant to paragraph 22 unless he authenticates the fraudulent bank statements that were created by defendants.  Defendants are well aware this is an impossibility as they created the fraudulent bank statements.

### 70.

Paragraphs 8, 19, and 22 of plaintiff's Security Deed explicitly states that plaintiff has an unqualified right to reinstates his loan if he did not give materially false, misleading, or inaccurate information or statements to Lender in connection with the Loan.

### 71.

Defendants have taken the position that the only way plaintiff can comply with the reinstatement provisions of paragraphs 8, 19 and 22 of the Security Deed is to authenticate the fraudulent statement(s) created by defendants.

### 72.

Defendants' position that plaintiff should suffer loss of property because of the fraudulent acts of defendants is unconscionable and contrary to American jurisprudence.

### 73.

If defendants' illegal, unconscionable and fraudulent acts are allowed to stand, plaintiff would suffer

Exhibit N

000189

an unconstitutional deprivation of property.

<div align="center">74.</div>

Plaintiff is not in default and has the absolute right to enforce the terms of the Security

Deed as written.

<div align="center">75.</div>

Plaintiff has absolute right to enforce the terms of the contract. Plaintiff is not in default as he never

violated paragraph 8 of the aforementioned Security Deed.

<div align="center">76.</div>

Plaintiff applied for a loan through a phone interview, he freely and truthfully provided all

information requested by defendants, but defendants unilaterally decided to create fraudulent

documents and misstate several issues during the phone loan application.

<div align="center">77.</div>

Because any and all misstatements or inaccuracies contained in the loan application derived from

the fraudulent conduct of defendants, plaintiff is not in violation of paragraph 8 of the

aforementioned Security Deed.

<div align="center">78.</div>

Plaintiff request a declaration finding that plaintiff is not in default as defined by paragraph 8 of the

subject Security Deed and that plaintiff has the right to reinstate pursuant to paragraphs 19 and 22 of

the subject Security Deed.

<div align="center"><b><u>DEMAND FOR JURY TRIAL</u></b></div>

Plaintiffs demand a trial by jury on any and all issues triable by a jury. The law in Georgia regarding

the right to trial by jury is clear. In civil actions, the right to trial by jury exists only where the right

<div align="center">Exhibit N</div>

existed prior to the adoption of the first Georgia Constitution.[18] The 1983 Georgia Constitution and O.C.G.A. § 9-11-38 assure that this right shall remain inviolate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for judgment against all Defendants, and each of them as follows:

A.   As to *first claim of relief*, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

B.   As to *second claim of relief*, pursuant to Ga. Code Ann., § 16-14-6, Plaintiff is entitled to threefold the damages sustained, punitive damages, and reasonable attorney's fees in connection herewith;

C. As to *third claim of relief*, prayer as pled above;

D.   As to *fourth claim of relief*, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

E.   As to *fifth claim of relief*, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

F.   As to *sixth claim of relief*, compensatory and punitive damages in an amount to be determined at time of trial, attorney's fees;

G. As to all counts, that a jury awards a different measure of damages on each and every claim as the evidence establishes several distinct torts.

H. As to all counts, attorney's fees as allowed by law, prejudgment interest at the statutory rate and all other costs of this proceeding allowed by law;

I.  For other and further relief as Plaintiffs may be entitled as provided under Georgia law.

J.  That Plaintiffs have such other and further relief as is just and proper.

This 5th day of July 2020.                    Respectfully submitted,

**ROBERTS LAW, LLC**                    */s/Grady Roberts*
4470 Satellite Blvd., Suite 101          Grady Roberts
Duluth, Georgia 30096                    Attorney

---

[18] Dept. of Transp. v. Del-Cook Timber Co., 248 Ga. 734(8), 285 S.E.2d 913 (1982); Bell v. Cronic, 248 Ga. 457(1), 283 S.E.2d 476 (1981); Strange v. Strange, 222 Ga. 44(2), 148 S.E.2d 494 (1966); Metropolitan Cas. Ins. Co., etc. v. Huhn, 165 Ga. 667(2), 142 S.E. 121 (1927).

Exhibit N

000191

Phone: (404) 794-7000                    Georgia Bar No.: 609540
Facsimile: (404)794-7001
Email: groberts@robertslawllc.com

Exhibit N

000192

BK: 15151 PG: 281
Filed and Recorded Mar-27-2017 03:01:07PM
DOC#: D2017-007890
Real Estate Transfer Tax Paid $670.00
0752017002160
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

Return Recorded Document to:
Brockstein & Bantley, P.C.
827 Fairways Court, Suite 100
Stockbridge, GA 30281

## LIMITED WARRANTY DEED

**STATE OF GEORGIA**

**COUNTY OF Henry**                                                File #:21630851

THIS INDENTURE, made the 24th day of March, 2017, between R.I.G. of Georgia, LLC, party of the first part, and LeMarcus Allison, party of the second part,

WITNESSETH That: the said party of the first part, for and in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) and other goods and valuable considerations in hand paid, at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said party of the second part, his heirs and assigns, the following described property:

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said bargained premises.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said party of the second part, his heirs and assigns, forever, in FEE SIMPLE.

AND THE SAID party of the first part, for his heirs, executors and administrators, will warrant and forever defend the right and title to the above described property, unto the said party of the second part, his heirs and assigns, against claims of all persons owning, holding or claiming by, through or under the said party of the first part.

IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal, the day and year above written.

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Notary Public

R.I.G. of Georgia, LLC

_____
By: Susan Clowdus, Closing Agent

ALBERT G BANTLEY
MY COMMISSION EXPIRES
MAY
11
2017
HENRY CO. GEORGIA
NOTARY PUBLIC

2017 MAR 27 AM 10:09
RECEIVED IN OFFICE
HENRY COUNTY
CLERK OF SUPERIOR COURT

BB File No.: 21630851

BK: 15151 PG: 291

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 47 of the 6th District, Henry County, Georgia, being Lot 9, Block F, Eagles Landing, Unit II, as per plat recorded in Plat Book 18, page 173, Henry County, Georgia records, which plat is incorporated herein and made a part hereof by this reference.

Exhibit N